## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JANE DOE,**

> **Plaintiff,**

**v.**                                                                 **No. _____**

**THE NEW MEXICO BOARD OF
BAR EXAMINERS, and THE NATIONAL
CONFERENCE OF BAR EXAMINERS,** *et al.,*

> **Defendants.**

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
### AND VIOLATIONS OF THE ADA

Plaintiff, Dr. Jane Doe, resides in Baton Rouge, Louisiana, and brings this action against Defendants, who are working for or on behalf of the New Mexico Board of Bar Examiners ("NMBBE"), in their official capacities and in their individual capacities for monetary damages to redress civil rights violations and due process violations.  Plaintiff brings her action under the Constitution of the United States, Title II and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 et seq., and the New Mexico State Constitution, for violations suffered as a result of the Defendants' actions. This is a civil action seeking damages against Defendants for committing acts under the color of law and depriving Dr. Jane Doe ("Plaintiff") of rights secured by the Constitution of the United States and the New Mexico State Constitution.

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction exists in this Court under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act pursuant to 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction exists for the Plaintiff's claims under the New Mexico Statutes, Chapter 28, cited as the "New Mexico Human Rights Act," Articles 1, 7, and 10 pursuant to 28 U.S.C. § 1367.

2.      Under 28 U.S.C. § 1391(b)(1)-(2) and (c)(2), the venue is proper in this district because the Plaintiff experienced a substantial part of the discriminatory unlawful events giving rise to the claims that occurred in the District of New Mexico, and the substantial part of the property that is the subject of the action is situated in this District where the Plaintiff suffered, and continues to suffer, from the unremitting wrongdoings and consequences of Defendants' abuse of authoritative power and discriminatory actions.

3.      This action is also brought for compensatory damages, punitive damages, and Attorney's fees pursuant to 42 U.S.C. §1983 and §1988 for violations of Plaintiff's Civil Rights, as secured by federal statutes and the Constitution of the United States.  Plaintiff further invokes the pendent and supplemental jurisdiction of the Court to decide claims arising under Federal and State laws.

## PARTIES

4.      Plaintiff is a United States citizen residing in the East Baton Rouge Parish of Louisiana; she is a qualified individual with permanent and terminal disabilities entitled to accommodations as a bar examination candidate under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973

("Section 504"), the New Mexico State Constitution Article II, Bill of Rights, Section 18, and the New Mexico Human Rights Act, Articles 1, 7, and 10 pursuant to 28 U.S.C. § 1367.

5.    Defendant, NMBBE,  is a Municipal Corporation and political subdivision of the State of New Mexico and is organized under the laws of the State of New Mexico. This Defendant can be served at its place of business located at 2440 Louisiana Avenue, Albuquerque, New Mexico, 87710.

6.    All the unlawful acts alleged herein were committed by Defendants acting within the scope of their employment, or as Board Members of the Defendants, NMBBE, under the color of state law.

7.    All individual Defendants are being sued in their official and individual capacities.

8.    Defendant, Former Executive Director Sophie Martin (Esq.), of the NMBBE and current Board Member of the NMBBE and/or employee of the State of New Mexico Sophie Martin is being sued in her official capacity, former official capacity, and her individual capacity. In 2019, Sophie Martin, Esq., was the Executive Director of the NMBBE. As of 2021, Sophie Martin, Esq., is a board member.

9.    Defendant, Howard Thomas, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

10.     Defendant, Cindy Lovato-Farmer, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

11.     Defendant, Honorable Nan Nash, a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

12.     Defendant, Mateo Page, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

13.     Defendant, Honorable Henry Alaniz, a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

14.     Defendant National Conference of Bar Examiners ("NCBE") is a multimillion-dollar corporation that owns, develops, and controls various tests relating to the licensing of law school graduates seeking admission to the bar.  Its mission includes assisting bar admission authorities by providing standardized for the testing of applicants for admission to the practice of law.  The NCBE is headquartered in Madison, Wisconsin, a jurisdiction of automatic bar licensure via diploma privilege, but composes and offers the MPRE and MBE in most jurisdictions, including New Mexico.  NCBE determines the formats (print, Braille, electronic document, etc.) in which the MPRE and MBE are offered and the accommodations that are available to examinees with disabilities. The NCBE also grades and scores all examinations under its purview.

15.     Defendant, Ari Biernoff, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

16.     Defendant, Victoria Garcia, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

17.     Defendant, Margaret Graham, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

18.     Defendant, Torri Jacobus, Esq. a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

19.     Defendant, Rosalyn Nguyen, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

20.     Defendant, Dylan O'Reilly, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

21.     Defendant, Olga Serafimov, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

5

22.     Defendant, Lucinda Silva, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

23.     Defendant, Honorable Barbara Vigil, a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

24.     Defendant, Concepcion Flores, Esq., a Board Member of the NMBBE, New Mexico and/or employee of the State of New Mexico is being sued in her official capacity and her individual capacity.

25.     All of the unlawful acts of the Defendants alleged herein were committed by the said Defendants while acting within the scope of employment with the Defendants, NMBBE and NCBE.

26.     Contributory Defendant, National Conference of Bar Examiners, is known as a non-profit entity via public and tax records, with a relationship to jurisdictions that choose to distribute one or more NCBE exams as part of their state bar admission processes, as the NCBE is accountable to, per its mission and the NCBE publication:[1]

   a) Develop and produce the licensing tests used by most US jurisdictions for admission to the bar: the Multistate Bar Examination (MBE), the Multistate Essay Examination (MEE), and the Multistate Performance Test (MPT);

   b) Coordinate the Uniform Bar Examination (UBE), which results in score portability;

---

[1] See the Mission, Vision, Core Values, and Mission Fulfillment of the National Conference of Bar Examiners at https://www.ncbex.org/about/.

c)  Develop the Multistate Professional Responsibility Examination (MPRE) required for admission to the bar by most US jurisdictions;

d)  Score the MBE and the MPRE and report scores to the jurisdictions;

e)  Provide support to jurisdiction exam administrators before, during, and after each exam administration;

f)  Provide psychometric consulting, research, and data forensics services to jurisdictions;

g)  conduct character and fitness investigations on behalf of jurisdictions;

h)  provide score services and other admission-related services to applicants on behalf of jurisdictions;

i)  offer study aids for applicants, both free of charge and for purchase;

j)  sponsor a wide range of educational events for jurisdiction bar examiners and bar admission administrators, legal educators, and states' highest courts, including the Annual Bar Admissions Conference and other conferences, seminars, and workshops throughout the year;

k)  provide training for jurisdiction graders, including grading workshops for the MEE and MPT following each exam administration;

l)  publish the quarterly _Bar Examiner_ magazine, the annual Comprehensive Guide to Bar Admission Requirements, and other information about the bar admissions process; and

m)  maintain comprehensive admissions information for all US jurisdictions on the NCBE website.

26.    Defendants, John Doe 1 through 20, are fictitious names of other NMBBE officers, employees, agents, or representatives who participated in any way in the discrimination and/or other ADA violations of Plaintiff, were responsible for the hiring, training, supervision, and/or retention of Defendants; were responsible for any other act or acts alleged in this Complaint.

27.    Defendant, National Conference of Bar Examiners ("NCBE") is an organization that develops, maintains, and applies reasonable uniform standards, education, and testing for the United States in all jurisdictions administering the exam.

28.    Defendants identified, or to be identified, that aided and abetted and/or conspired with each other to deprive Plaintiff of her rights, under the laws of the United States and the State of New Mexico. The designation, "Defendants," refers to all above named Defendants and unnamed Defendants including John Does 1 through 20.

## FACTUAL ALLEGATIONS

29.    Plaintiff is a minority woman from a family of diverse heritage. Despite being born with permanent pulmonary disabilities, Plaintiff attended the University of South Carolina (initially prelaw), Regent University, Capella University, and Cornell University to earn double bachelorette degrees, a master's degree, a doctorate degree, and post-doctoral certification.

30.    She earned a career in Higher Education before focusing on her long-term goal of becoming an attorney as an encore career.

31.    In October 2014, after her father's death from medical malpractice, Plaintiff began law school as a student in the Inter-Institutional Cooperative Program at

Southern University, Louisiana State University, and Tulane University, which all provided reasonable ADA academic course and examination accommodations every scholastic term.

32.  On May 12, 2018, Plaintiff graduated with pro-bono honors while her health continued to decline. She diligently prepared to become an attorney by completing and passing the Multistate Professional Responsibility Exam (MPRE) and Uniform Bar Examinations (UBE) with contracted accommodations, per her protected rights under the ADA.

33.  However, the NCBE repeatedly refused reasonably accommodating the Plaintiff for testing.

34.  June 5, 2018, the NCBE denied the Plaintiff reasonable ADA accommodations for the MPRE.  The NCBE's denial was unlawful because a legal reasoning was not provided. In July 2018, the Plaintiff became visually impaired. Still, she completed the MPRE on August 11, 2018—yet extremely disruptive testing irregularities by examinees occurred at the exam center. Consequently, the NCBE invalidated the compromised exam. Despite that turmoil, the Plaintiff earned a passing MPRE score acceptable in all United States jurisdictions in a subsequent MPRE conducted on November 5, 2018.

35.  By August 10, 2018, as reported to the NCBE,  completed the UBE in Washington, but again, there was failure to ensure reasonable accommodations, such as inoperative restroom facilities and consistent commotion.

36.     On September 19, 2019, the Plaintiff applied to complete the bar exam as a
        Courtesy Seater in New Mexico.  Again, the Plaintiff encountered difficulties
        ensuring reasonable accommodations.

37.     Under the ADA, the Plaintiff applied to complete the UBE as a Courtesy Seater
        with physician-prescribed testing accommodations as follow:

        a)      To wear warm clothing (hat, jacket, etc.);

        b)      To wear a medical mask;

        c)      Seating alone in a distraction free room away from air vents and
                minimal exposure to bacteria;

        d)      50% additional testing time that concludes daily by 4pm; ed) Use of
                medical aids such as an inhaler, magnifier, or eye drops with (ability
                to keep medicine on person;, i.e. Physical Prompts)

        e)      18 point18-point font on printed materials; and

        f)      Writing multiple choice answers on a sheet of paper.

38.     In November 2019, Defendant Martin communicated that the medically
        prescribed recommendations were not feasible in an accommodations contract.

39.     Such denial of accommodations occurred despite the NMBBE's and the NCBE's
        policy of ensuring the feasibility of accommodations that are medically supported
        via ADA recommendations and requests.

40.     Additionally, in September 2019, the NMBBE administration failed to initially
        process application materials correctly, which caused redundant complications
        before the exam.

41.     For example, the Plaintiff applied with payment as a Courtesy Seater to complete the UBE in New Mexico by the proper deadline. However, the NMBBE failed to properly process the payment three times.

42.     Then, the NMBBE repeatedly requested a Federal Bureau of Investigation (FBI) and State Fingerprint Report, which was completed and sent to the NMBBE, as verified by the fingerprinting corporation, Gemalto, Inc.  However, the NMBBE constantly sent notices that the Plaintiff could not sit for the exam because the criteria were unfulfilled.

43.     On October 7, 2019, the investigation and report were correctly completed by the Plaintiff and initially submitted rightly.  Gemalto, Inc. supported the Plaintiff by reiterating to the NMBBE the Plaintiff's punctuality in fulfilling the criteria.

44.     A reply from the NMBBE was not forthcoming.

45.     The NMBBE failed to respond in October 2019 and November 2019 but sustained requesting the Plaintiff repay for the investigative fingerprint report or be denied the opportunity to sit for the exam.   In December 2019, Gelmato, Inc., management communicated again that the Plaintiff fulfilled the criteria. The NMBBE failed to access the information by the established deadline.

46.     The board did not update the Plaintiff's records until December 30, 2019.

47.     Likewise, in October 2019 and November 2019, Defendant Martin invasively questioned the Plaintiff concerning past test accommodations, in direct violation

of the ADA.[2]  The questioning involved the Plaintiff's purpose of testing in New Mexico and the Plaintiff's goal to earn a transferrable exam score.

48.   Then, in December 2019, the NMBBE continued to send duplicate transcript records requests from the law school the Plaintiff attended, though the law school had already certified that transcript records had been sent to the NMBBE when first requested in the Fall of 2019.

49.   The habitual unprofessional miscommunication or lack of communication by the NMBBE elevated by January 1, 2020.

50.   In January 2020, when the Plaintiff immediately notified the NMBBE of potential emergent accommodations because two terminal health diagnoses that are life-threatening conditions were medically advised, she obtained no reply.

51.   The Plaintiff conformed to the requirement in Section C of the NMBBE's Testing Accommodations Policy, as both terminal illnesses impacted previous permanent composite disabilities.

52.   The Plaintiff indicated she still intended to test in the notification.  The NMBBE still did not respond.

53.   Pertinent test information in an admission exam ticket was not provided by the NMBBE until February 17, 2020. Though NMBBE staff communicated in 2019 to the Plaintiff that the exam likely would be at the modernized and updated Albuquerque Convention Center,[3] the admission ticket information was contrary.

---

[2] For ADA candidates testing, excessive and burdensome documentation demands, inclusive of invasive questioning, are prohibited for high-stakes tests that are gateways to professional opportunities. See the United States Department of Justice, Civil Rights Division, Disability Rights Section.

[3] Vonage Holdings Corporation transcription services obtained records of communication submitted by the New Mexico NMBBE of Bar Examiners staff in 2019-2020.

54.    On February 25, 2020, the NMBBE began testing ADA examinees in the Uptown Tower under construction for structural renovations at 2440 Louisiana Avenue, Albuquerque, New Mexico, 87710. The Defendants decided to test non-accommodated examinees at the Albuquerque Convention Center.

55.    The NMBBE guaranteed, miscarried, and breached the following ADA testing accommodations contracted for February 25, 2020, until February 28, 2020:

a)    To wear warm clothing (hat, jacket, etc.);

b)    To wear a medical mask;

c)    Seating alone in a distraction free room away from air vents and minimal exposure to bacteria;

d)    50% additional testing time that concludes daily by 4pm;

d)    Use of medical aids such as an inhaler, magnifier, or eye drops with ability to keep medicine on person; (ability to keep medicine on person, i.e. Physical Prompts)

e)    18 point font of printed materials;

f)    Writing multiple choice answers on a sheet of paper.

56.    Despite physicians submitting meticulous testing recommendations beyond the basic requirements to satisfy ADA protocols,[4] Defendant Martin knowingly

---

[4] Any documentation if required by a testing entity in support of a request for testing accommodations must be reasonable and limited to the need for the requested testing accommodations. Requests for supporting documentation should be narrowly tailored to the information needed to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. Depending on the particular testing accommodation request and the nature of the disability, however, a testing entity may only need one or two of the above documents to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. If so, a testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation. See the United States Department of Justice, Civil Rights Division, Disability Rights Section, ADA Testing Accommodations Requirements.

failed and continued to fail to remedy not reasonably accommodating the Plaintiff.

57.   The NMBBE could have simply and reasonably applied relocation to a renovated floor and room as a remedy but did not.

58.   On February 25 through 28, 2020, the Plaintiff filed unaccommodated testing complaints were filed immediately at the Uptown Tower with the NCBE Test Administrator and NMBBE UBE Test Proctor. The staff submitted these grievances daily via telephone, or in person on another floor in the building, to Defendant Martin.

59.   The NCBE Test Administrator assured that Defendant Martin, would contact the Plaintiff to discuss the grievances before exam scoring commenced. The NCBE Test Administrator instructed the Plaintiff to email her grievances to affirm the exam irregularities, which was completed on February 29, 2020. Additionally, these grievances were mailed via the United States Post Office in March 2020.

60.   The NCBE's legal counsel, Brad Gilbert, communicated in September, October, and November of 2019 that the NMBBE is solely responsible for the ADA violations and remedies. Per Attorney Gilbert's instruction, multiple grievances were filed with the NMBBE. Grievances were sent to the NMBBE via email, telephone, facsimile, United States Post Office, and FedEx Corporation.

61.   On April 14, 2020, the Plaintiff received an NMBBE exam score report *prior to any attempt* by the NMBBE and NCBE to substantially address the February 2020 testing grievances.

62.     According to procedures communicated by the NCBE Test Administrator, because testing irregularities reported in grievances would be addressed before the exam was scored, the NMBBE failed to substantially address the grievances, and the scoring was improper by NCBE guidelines.

63.     Further, the scoring was improper for compound reasons, such as the NMBBE exam report being radically variant from previous exam scores, transcription services, and technicalities with the exam software. The reasons were reported to the NMBBE and NCBE by summer 2020.

64.     The Defendants continue to discriminate against the Plaintiff because the Defendants maintain official records of the Plaintiff's bar exam with inaccurate score results that were obtained under discriminatory conditions without recourse. The Defendants have taken no affirmative steps to undo the harm the NMBBE's conduct caused and continues to cause.

65.     To date, the NMBBE and NCBE failed to properly score the Plaintiff's bar exam and address testing accommodations 'grievances.[5]

66.     The NMBBE continually fails to substantially address civil rights violations committed against the Plaintiff, which equates to over a year and a half without resolve.

67.     Overall, the NMBBE and NCBE grotesquely and repeatedly failed to accommodate the Plaintiff from the onset of her application.

---

[5] The NCBE scores bar exams and scores bar exams on behalf of jurisdictions. See the Mission, Vision, Core Values, and Mission Fulfillment of the National Conference of Bar Examiners at https://www.ncbex.org/about/.

68.   The Defendant's gross deviations from a reasonable standard of care by a State

Board of Bar Examiners must be remedied under Federal and State laws.

## FIRST CAUSE OF ACTION

### FIRST CLAIM FOR RELIEF:

#### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

(42 U.S.C. §§ 12101 et seq. & Violation of Due Process Rights)

69.   Plaintiff Jane Doe realleges and incorporates by reference set forth in paragraphs

1-68.

70.   On April 30, 2020, Defendants violated the Plaintiff's Constitutional due process

rights.   As a direct and proximate result of Defendants' actions, Plaintiff was

deprived of her rights to due process, the privileges and immunities secured to

her under the Constitution of and laws of the State of New Mexico, including, but

not limited to her rights under the New Mexico Human Rights Act.

71.   The Plaintiff is a Visually Impaired individual with multiple permanent and

terminal disabilities. Her permanent disabilities include physical impairments that

substantially limit the major life activities of learning, studying, reading,

communicating, test-taking, concentrating, and recalling.

72.   The Plaintiff is a qualified disabled individual because she was eligible to and did

complete the bar examination offered by the Defendants.

73.   By excluding and failing to accommodate the Plaintiff during the exam, the

Defendants discriminated against the complainant, who was an otherwise

qualified applicant for an accommodated exam because she has impairments that

substantially limit one or more major life activities, has substantive records of the

impairments [6], and was recognized by the Defendants prior as having the impairments.  42 U.S.C. §§ 12102, 12111, 12112; 29 C.F.R. §§ 1630.2, 1630.4.

74.   The NMBBE:

    a.   administers a professional licensing examination, as

    b.   a public entity, and as

    c.   a state instrumentality subject to the nondiscrimination requirements of Title II and Title III of the Americans with Disabilities Act.

*PROFESSIONAL LICENSING EXAMINATION NCBE TEST ADMINISTRATOR*

75.   Professional licensing examinations are governed by statutes and regulations prohibiting the NMBBE and NCBE from discriminating on the basis of disability.

76.   The NMBBE has specific functions on behalf of a government authority at the direction of the NCBE to administer the exam. Hence, an NCBE Test Administrator was at the premises of the bar exam.

77.   Among other things, NMBBE agents and employees are charged with the obligation to ensure the NMBBE avoids discriminating based on disability.

*PUBLIC ENTITY UNDER TITLE II*

78.   The NMBBE is a public State Agency because it administers a professional licensing exam as an administrative unit of government activity organized as an extension or commission of the State with Federal or State funding.

---

[6] If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate.  So, for example, a person with a disability who receives a testing accommodation to sit for the SAT should generally get the same testing accommodation to take the GRE, LSAC, or MCAT. See the United States Department of Justice, Civil Rights Division, Disability Rights Section, ADA Testing Accommodations Requirements.

79.   Public entities and state instrumentalities are subject to the nondiscrimination requirements of Title II of the Americans with Disabilities Act.

80.   Public entities must reasonably modify their policies, practices, conduct, or procedures to avoid discrimination, including inaccessibility due to the composition or structure of buildings. If there are alterations, revisions, or changes to buildings, the entities must make the altered or modified portions readily accessible for ADA patrons.

81.   Under the ADA's requirement to make reasonable modifications in policies and procedures, the NMBBE is required to form modifications unless the NMBBE can establish that making the modifications would be unreasonable or would "fundamentally alter" its program. 28 C.F.R. §35.130(b)(7).

82.   Plaintiff's accommodations would not have "fundamentally altered" the NMBBE's exam administration or program.

83.   The NMBBE violated the Plaintiff's civil and protected rights to have reasonable accessibility modifications required under Federal Law and the Plaintiff suffered damages as a result.

*STATE INSTRUMENTALITY UNDER TITLE III*

84.   The NMBBE is the only entity in New Mexico that offers the Uniform Bar Examination as a passage and prerequisite for the practice of law in New Mexico and in jurisdictions accepting portable Uniform Bar Examination scores. *See* 42 U.S.C. §12189.

85.   The NMBBE, as a public entity and state instrumentality, is prohibited from any conduct of discrimination by the requirements of Title III of the Americans with Disabilities Act. The ADA public accommodations provisions permit individuals *to allege discrimination* based on a reasonable belief that discrimination is *about to occur before it literally manifests*.

86.   The resolution of ADA challenges in a timely manner prior to inaccessibility occurring or immediately when failure to accommodate occurs is a responsibility of public entities.

87.   The NMBBE failed to fulfill this obligation as a public entity and state instrumentality.

88.   The NMBBE's lack of a timely substantial response coupled with the deprived reasonable accommodations constitutes a denial of equal opportunity and of equal treatment in an examination setting for people with multiple disabilities.[7]

89.   Thus, the Plaintiff's civil rights were and continue to be violated.

90.   The ADA imposes strict standards of conduct on State Boards of Bar Examiners and similar entities because in their power to license adults, those NMBBEs and entities hold extremely esteemed keys to professional careers or to valuable professional opportunities.[8]

91.   Section 309 of Title III provides that:

   a)   "Any person that offers examinations of courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations

---

[7] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, ADA Testing Accommodations Requirements.
[8] The Department of Justice encouraged people with disabilities to be self-sufficient and efficient. See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities.

or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

b)   The preamble to the Title III regulations explains:

"Section 309 is intended to fill the gap that is created when licensing, certification, and other testing authorities are not covered by section 504 of the Rehabilitation Act or Title II of the ADA. Any such authority that is covered by section 504, because of the receipt of Federal money, or by Title II, because it is a function of a State or local government, must make all of its programs accessible to persons with disabilities, which includes physical access as well as modifications in the way the test is administered, e.g., extended time, written instructions, or assistance of a reader."

93.   As an entity that offers examinations related to professional licensing, certification, or credentialing, the Defendants are required to ensure that the examination is administered to best ensure examination results for individuals with disabilities accurately reflect (i) individuals' aptitudes, (ii) achievement levels, or (iii) other factors the examination purports to measure rather than reflecting the individuals' disabilities and lack of reasonable reliant aids during the process.

94.   The Defendants 'acts, policies, omissions, and practices discriminate against individuals with disabilities, including those who have cognitive and physical disabilities that require additional time, stop-clock breaks, separate testing areas, medication on the person, preferential seating, distraction free testing areas, visual aids, supplemental attire, and adequate temperature, which is generally required in public buildings by City and County Health Codes. Adequate heat is

required t by State Health Departments [Health Code Laws], State Building Codes [for commercial buildings], Labor Laws, and Federal Laws.[9]

95. A space with professionals testing or working is required by law to have an environment free of extremes with temperatures that are too cold or too hot, particularly for disabled individuals who can be adversely impacted by health and building codes in Albuquerque, New Mexico.

96. The Defendants discriminated against the Plaintiff on the basis of disability by denying necessary reasonable accommodations.

97. Individuals with disabilities must not be excluded from participation in or be denied programs, services, assistance, or activities by a public entity, particularly when the accommodations present no undue hardship or burden.

98. The Defendants failed to make reasonable modifications, as the NMBBE agreed to contractually, so that its policies and practices ensured the Plaintiff does not encounter discrimination because of her disabilities.

99. The Defendants failed to ensure the Plaintiff's performance on the examination was representative of her abilities rather than her disabilities.

100. As the result of Defendants' discrimination, the Plaintiff must now disclose reasons for the expanded postponement when asked in job interviews regarding Civil Rights Violations of NMBBE—despite the violations not being of her fault and being the NMBBE's and NCBE's failure.

---

[9] See public information available via government web pages regarding State Health Departments [Health Code Laws] for New Mexico, State Building Codes [for commercial buildings] for New Mexico, Labor Laws for New Mexico, and Federal Laws. Researching the data qualitatively using county information is recommended. See the State of New Mexico Regulation and Licensing Department and New Mexico Administrative Code at https://www.newmexico.gov/other-affected-services/regulation-and-licensing-department/.

101.   Declaratory and injunctive relief is necessary to obtain rational resolution and to fairly compensate for the exhausting distress and unfair burden the Defendants caused the Plaintiff by avoiding the requirement of Due Process for over a year, which impeded the Plaintiff's advancement and encore vocation.

102.   The Plaintiff positively seeks declaratory relief that will ensure that the Defendants properly comprehend their State and Federal obligations with respect to future applicants under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the New Mexico State Constitution, and the New Mexico Human Rights Act.

103.   As a result of the aforesaid violations of the Plaintiff's rights subject to the ADA, the NMBBE caused severe and permanent injuries including, but not limited to, (i) emotional distress, (ii) the incurrence of medical costs with a devastating decline to her personal health, (iii) the loss of a promising prompt encore career, and (iv) the loss of reasonably timely gainful employment as an attorney.

104.   Wherefore, Plaintiff demands judgment against the Defendants as follows:

   a)   compensatory damages;

   b)   punitive damages;

   c)   attorneys fees;

   d)   interest; and

   e)   for such other relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION

#### SECOND CLAIM FOR RELIEF:

#### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

29) **(29** U.S.C. §794 et seq.)

105.    Plaintiff realleges and incorporates by reference set forth in paragraphs 1-104.

106.    Plaintiff is a Visually Impaired individual with multiple permanent and terminal disabilities. Her permanent disabilities include physical impairments that substantially limit the major life activities of learning, studying, reading, communicating, test-taking, concentrating, and recalling.

107.    The NMBBE, as a State Agency, is a recipient of federal funding;[10] therefore, the NMBBE's activities and decisions are subject to the anti-discrimination requirements of Section 504 of the Rehabilitation Act, which the NMBBE failed to lawfully fulfill at the NCBE's direction.

108.    The Defendants 'blatant disregard of the Plaintiff's health and procedural rights in ADA testing requests breached the contractual agreement the Defendants formed to accommodate the Plaintiff during testing. The breach that the Defendants unlawfully made, under Federal and State laws, caused the Plaintiff not to be afforded the necessary accommodations for testing and left her with devastating career and health consequences.

---

[10] Congress made clear in the Civil Rights Restoration Act of 1987 that immunity waiver under § 504 is intended to be expansive. *See* Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, sec. 4, 102 Stat. 28, 29 (1988) (codified at 29 U.S.C. § 794) ("1988 Amendments"). Under the amended Rehabilitation Act, Congress defined "program or activity" to mean "*all* of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . *any part of which* is extended Federal financial assistance." 29 U.S.C. § 794(b) (emphasis added). Moreover, the 1988 Amendments further expanded the definition of "program or activity . . . to include not only a state or local entity *originally* receiving [federal] assistance, but also each department or agency to which [the recipient entity] 'extend[s] 'that assistance." *Bartlett v. N.Y. State Bd. of L. Exam'rs*, 156 F.3d 321, 330 (2d Cir. 1988) (emphasis added) (quoting 29 U.S.C. § 794(b)(1)(B)); *see also id.* ("[R]egulations promulgated under the Rehabilitation Act define a 'recipient 'as including 'any instrumentality of a state . . . to which Federal financial assistance is extended directly *or through another recipient*." (quoting 45 C.F.R. § 84.3(f).

109.   The NMBBE must, by Federal Law, administer the exam reasonably so that ADA candidates do not sacrifice their health in the examination environments.   The NMBBE was required by the direction of the NCBE and ADA to administer the bar exam so that the Plaintiff's health is not obstructed to have her aptitude, achieve abilities, and skills proper for law licensure measure rather than her impairments. The NMBBE was also required by law to avoid purposefully or negligently constructing obstacles to her impairments.

110.   The Defendants 'actions were those of intentional discrimination.

111.   The Defendants failed and admitted failing via the NCBE Test Administrator of the bar exam in February 2020, to make accommodations to their policies, conduct, and practices to best safeguard that the Plaintiff did not encounter discrimination because of her disabilities, yet the Defendants have not remedied the continued wrongdoings.

112.   The admission of past and current wrongdoings that continue requires remedy.

113.   The Plaintiff punctually communicated grievances.[11]

114.   The Defendants' failure to remediate its laborious discrimination against the Plaintiff continues to harm the Plaintiff's health and employment.

115.   The NMBBE and licensed attorneys are required by law and the New Mexico Rules of Professional Conduct, as cited in Article 4.16 (401-404)  and Article 8.16 (801-805), to substantially reply within a reasonable time to ADA testing

---

[11] The United States Department of Justice, Civil Rights Division, indicates to communicate feedback or complaints and to have resolve within or before one testing cycle.

accommodation feedback, and indubitably by 30 to 60 days is reasonable or before the next testing cycle.

116.   The reasons the requisite is to reply within a testing cycle is (i) to ethically prevent callously or unnecessarily delaying progress of the candidate's career, as candidates seek vocation using professional licensure, which can decrease fiscal burdens to state and federal agencies, and (ii) information retained for testing is reasonably retained in a cycle of testing versus years later from successive delays.

117.   Additionally, since all test candidates are not likely to have proverbial memories, long and short-term memory can be significant factors to consider in the exam process for ADA candidates. For example, if ADA test candidates repeat an exam, retention should not be an issue due to unnecessary delays by a testing entity to substantially respond to inquiries.

118.   Not replying at all, or replying momentarily at the request of the Supreme Court, is not lawful because the NMBBE was required by Federal and State laws to substantially reply to any questions, inquiries, complaints, or grievances from an ADA test-taker within a testing cycle, but the NMBBE did not.[12]

119.   The NMBBE failed to be sure the Plaintiff's examination results would be reflective of her abilities, or skillfulness, and not a result of her disabilities—and then the NMBBE failed to lawfully address the chaos it created.

120.   Wherefore, Plaintiff demands judgment against the Defendants as follows:
a)   compensatory damages;

---

[12] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities.

b) punitive damages;

c) attorneys fees;

d) interest; and

e) for such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### THIRD CLAIM FOR RELIEF:

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

(42 U.S.C. §§ 12101 et seq.)

### VIOLATIONS OF THE
### NEW MEXICO BOARD OF BAR EXAMINERS
### TESTING ACCOMMODATIONS AGREEMENT

121.   Plaintiff realleges and incorporates by reference paragraphs 1-120.

122.   "The New Mexico of Bar Examiners Accommodations Agreement," ("Agreement") contractually guaranteed accommodations in 2019 to the Plaintiff during the February 2020 bar exam.

123.   The NMBBE requested an Affidavit to execute the contract, which was submitted with an addendum document containing updated medical content and accommodations requested not clarified in the "Agreement."

124.   Defendant Martin failed to address the Plaintiff's questions communicated before the deadline to submit the contract, Affidavit, and updated content. The Plaintiff still submitted the documents punctually, and Defendant Martin and NCBE staff agreed through subsequent emails or telephone calls exchanged with the Plaintiff

to amend some accommodations due to the lack of clearness in the "Agreement" by the conclusion of December 2019.

125.   Defendant Martin indicated via email that ADA adjustments could be made once at the testing center. [13]

*Violations of Medical Accommodations Relating to Asthma and Susceptibility to Cold*

126.   However, NMBBE's the adjustments were not feasible or practical given that the environment lacked adequate accommodations.

127.   For the February 2020 Uniform Bar Examination, the NMBBE agreed to provide the Plaintiff with the following accommodations in addition to the policies and Federal and State laws required to uphold:

1. You will receive time and one-half for the Multistate Essay Examination (MEE), Multistate Performance Test (MPT), and Multistate Bar Examination (MBE) portions of the bar exam and will complete the exam in four days with one 4.5-hour session on each day.

2. You will be placed in a private testing room. A proctor will be present in that room at all times. To the extent possible, the testing room will be quiet and low-distraction. You will be given time before each exam section to adjust, to the extent possible, your proximity to the room's vents and/or the vent settings.

3. The exam questions will be provided in 18-point font.

4. You may mark your MBE answers directly into the MBE test booklet. A proctor will transfer your answers from the booklet onto the scantrons at the end of each MBE section. You may elect to be present during the transfer or you may waive physical presence during the transfer; no changes to your answers will be permitted during the transfer period.

5. You may bring eye drops, medication, snacks and beverages into the exam room. Please be sure to place any beverages on the floor next to your desk; **snacks may not be noisy** and must be unwrapped before the start of the exam. You may

---

[13] Read Cover Memo file emailed April 2021 and in 2020 that each member of the NMBBE obtained directly but did not respond to via United States Certified Mail confirmation, as the email data is in the content. The lack of response violates Due Process Rights.

also bring and wear a medical face mask, hat, layered clothing, a jacket without a hood, and a scarf.

6. For the MEE questions on Tuesday, February 25, you will receive an average of 45 minutes per question for a total of 4.5 hours for the entire session. You will receive all six questions at the same time. **This session will start at 8:00 a.m. on Tuesday.**

7. For MBE questions 1-100 on Wednesday, February 26, you will receive 4.5 hours for the entire session. **MBE questions 1-100 will begin at 8:00 a.m. on Wednesday.**

8. For MBE questions 101-200 on Thursday, February 27, you will receive 4.5 hours for the entire session. **MBE questions 101-200 will begin at 8:00 a.m. on Thursday.**

9. For the MPT questions on Friday, February 28, you will receive an average of 2.25 hours per question for a total of 4.5 hours for the entire session. You will receive both questions at the same time. **This session will start at 8:00 a.m. on Friday.**

10. You may use your laptop computer and Examplify for the MEE and MPT sections. You must upload your answers to the MEE and MPT questions no later than 10:00 p.m. on Friday, February 28.

11. Information of the testing location, which may or may not be at the Albuquerque Convention Center, will be provided with your admission ticket.[14]

128.    Despite the Agreement, the testing center was unaccommodating. The contractual

"Agreement" does not indicate that the Plaintiff, of multiple disabilities, agreed

to test in a distracting environment with frigid temperatures in 20-to-40-degree

winter weather, unsafe broken electrical wires, electrical shortages, sparking light

fixtures, no heat, plenty of mold spores, visible mildew, dim flickering

fluorescent lights, abruptly expiring lights, ostentatiously loud HVAC noise, and

airborne contaminants blowing directly on the Plaintiff from air conditioning of

the furnace.

---

[14] Vonage Holdings Corporation transcription services can confirm communication submitted by the New Mexico NMBBE of Bar Examiners staff.

129.     Then, when the Plaintiff filed ADA grievances starting daily in February 2020

during the exam, and as instructed by the NCBE and required in compliance with

the ADA, the NMBBE purposefully did not respond for over a year and a half.

130.     The NMBBE disregard breached its statutory duty outlined in Section 309 of Title

III requiring that:

"Any person that offers examinations of courses related to applications, licensing,
certification, or credentialing for secondary or post-secondary education,
professional, or trade purposes shall offer such examinations or courses in a place
and manner accessible to persons with disabilities or offer alternative accessible
arrangements for such individuals."

131.     The NMBBE committed civil rights violations against the Plaintiff as an ADA

Courtesy Seater for the UBE in the 2019 Testing Accommodations "Agreement"

inclusive of, but not limited to,[15] nearly each contract term.

132.     Starting February 25, 2020, the NMBBE breached the "Agreement" because the

NMBBE guaranteed the Plaintiff a private uninterrupted testing environment with

additional time for testing, which is also a requirement by the direction of the

NCBE and under the ADA.[16]

133.     However, the Uptown Tower was a noisy and contaminated construction zone

each test day.

134.     The NMBBE fully knew of the construction occurring at the Uptown Tower and

of the derelict setting of certain floors, as the NMBBE selected to have an office

---

[15] Read Cover Memo file emailed April 2021 and in 2020 that each NMBBE member obtained directly but did not respond to via United States
Certified Mail confirmation, as the content shares this data specifically. The lack of response violated Due Process Rights.

[16] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, ADA Testing Accommodations Requirements.

in the same building on a floor fully renovated. The Plaintiff learned of the noisy and disruptive construction upon her arrival to the test location.

135. The construction workers and maintenance personnel worked in the Uptown Tower on a different floor throughout each of the days of the exam.

136. The NMBBE disregarded physicians 'recommendations for the Plaintiff to avoid triggers for her pulmonary diseases and placed the Plaintiff in construction dust and containments.

137. The containments caused the Plaintiff hives and were distractions that disrupted the Plaintiff's exam time and medical sustainability.

138. The "Agreement" stipulates that the NMBBE would send information about the testing location before the Plaintiff's physical arrival and travel to test at the location.

139. The NMBBE failed to fully inform of the exam setting by omitting the unaccommodating conditions in a construction setting lacking *any* access to ventilation available entirely.

140. The NMBBE failed to prepare for the Plaintiff to be accommodated.  The reason the specific floor was picked for testing, per the NCBE Testing NCBE Test Administrator, is because it was empty and available at the 'last-minute 'since they started renovations were incomplete on that floor level of the building.

141. The NCBE Test Administrator politely admitted that the 'last-minute 'selection of the floor and lack of reviewing the Plaintiff's accommodations in depth were errors on their part with the NMBBE.

142. A 'last-minute decision 'by the NMBBE to not thoroughly review the medical documentation and "Agreement" guaranteed to properly accommodate is unlawful under the ADA.

143. The NMBBE to failed to satisfy being in compliance with the State Health Department [Health Code Laws], State Building Codes [for commercial buildings].

144. The NMBBE did not recommend or attempt, simply, a reasonable solution of relocating to a different renovated floor or relocation to a setting in a building with proper accommodations and was therefore negligent in performing its duties.

145. The NMBBE failed, since September 2019, to select and review a testing area for the Plaintiff in a timely manner the exam began in February 2020.

146. The NMBBE obtained communication from physicians and the Plaintiff in advance lucidly noting airborne allergies must be avoided as much as feasible and precisely from air vents. Dust, mold, and mildew visibly in the room are not avoidance of the elements and are not reasonably accommodating for someone with Severe Extrinsic Asthma, which is only one of the Plaintiff's Chronic Respiratory Diseases.

147. The NMBBE is not of Qualified Professionals with medical credentials to form decisions that counter accommodations requested and medically recommended for an ADA candidate. The NMBBE is not qualified to determine health issues and impacts from adverse environmental conditions under the ADA.[17]

---

[17] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities. "A testing entity should generally accept such documentation and provide the recommended testing accommodation without further inquiry…"

31

148. The direct environmental detriments to the Plaintiff's health in the derelict testing rooms not optional to avoid if selecting to complete the exam because the NMBBE failed to curtail placing the Plaintiff in a slovenly setting.

149. The NMBBE forced the Plaintiff to either: (i) not take the exam or (ii) to take the exam in a setting that did not accommodate her needs.  Either choice violates the Plaintiff's Civil Rights due to a lack of fairness and equitable consideration with testing accommodations for professional licensure.

*Violations of Provision Requiring Exam Proctor*

150. The NMBBE additionally breached the "Agreement" by failing to ensure the presence of an exam proctor at all times.

151. The NMBBE test proctor departed from the freezing cold room during the Plaintiff's exam to warm up in the bathroom and the hallways due to the frigid temperature of the testing room. The NCBE Test Administrator was in another room or not visibly in the testing areas on the same floor at times when the NMBBE test proctor left the room. Additional test proctors were in separate rooms monitoring testing at times, so they could not substitute.

152. The NMBBE did not provide substitutions for the departure of the NMBBE test proctor at all times when she was not available in the room; the Plaintiff was left by herself at times.

153. The NCBE Test Administrator was in another room or not visibly in the testing areas on the same floor at times when the NMBBE test proctor left the room. Additional test proctors were in separate rooms monitoring testing at times.

*Violation of Accommodation of Visual Impairments*

154.    Proper lighting should exist in an environment for a Visually Impaired tester requesting large font adjustments to be able to see and try to read the content.

155.    The NMBBE lacked providing appropriate lighting for the Plaintiff during the exam.

156.    The flickering fluorescent dim lights that expired during testing were not accommodating.

157.    The lighting problems were distracting and disrupted testing time when staff attempted to form lighting adjustments during the examination. The lighting problems were not resolved.

158.    When a primary light expired in the original testing room on February 25, 2020, the light remained broken and was not repaired by the last day of testing on February 28, 2020.

159.    A lack of Visual Impairment aids, coupled with the lack of lighting, caused further detriment because the Plaintiff is Visually Impaired and requires physical prompts.

160.    The NMBBE failed to provide the proper 18-point font adjustments that were requested on all booklets, which required supplemental assistance from the test proctor and NCBE Test Administrator for the Plaintiff to attempt to read or

visibly attempt to legibly see since the Plaintiff is Visually Impaired and lacks tracking depth.[18]

161.   The NCBE Test Administrator was limited in assisting, which conclusively was not beneficial. The process was stressfully overwhelming and caused Chronic Retinal and Ocular Migraines for the Plaintiff because the lack of proper bright stable lighting and font issues led to the Plaintiff straining to see the exam content.

162.   The NMBBE's failure to accommodate the Plaintiff with adequate lighting and font size caused parts of the exam not to be wholly seen well without eye strain.

163.   Dim lighting intensified the Plaintiff's straining caused asthenopia, which could have been resolved with proper lighting and large 18 font on all printed exam materials.

164.   The Plaintiff attempted to read aloud the content for clarity, and she used lubricating eye drops for support to no avail because the replication of the optical strain daily during testing was significant and led to further Chronic Migraine pain.

165.   The Plaintiff suffered from an increase of optical fatigue during the testing dates because she is Visually Impaired with intermittent blindness from auras and malfunctioned tracking.

166.   While she remained professionally polite and maturely mannerly in the demeanor while testing, she was relieved to return to her hotel daily and the local pharmacy

---

[18] *See* 28 C.F.R. §§ 36.303(b), 36.309(b)(3) (providing non-exhaustive lists of auxiliary aids and services) via the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities.

often for medical aids because she was in chronic pain. The habitual pain did not ease, as she required extra medical care upon traveling back to Louisiana.

167. The NMBBE caused the Plaintiff to suffer daily, and the suffering was inclusive of visual vertigo by late afternoons due to the impact of the font not being adjusted with the lighting being faint before expiring. The light remained expired daily during testing.

168. The "Agreement" is supported by supplement communication post and pre-2019[19] of physical prompts, and Defendant Martin admitted via email to' overlooking ' portions of the medical requests for physical prompts before the exam.

169. The provision of the physical prompts[20] being disregarded by the NMBBE infringed on the Plaintiff's ADA testing rights.

*Violations of Privacy Under ADA*

170. The NMBBE's invasive inquiries that violated the Plaintiff's civil rights under the ADA,[21] resulted in information being shared that Defendant Martin did not utilize to accommodate the Plaintiff.

---

[19] Read Cover Memo file emailed April 2021 and in 2020 that each member of the NMBBE obtained directly but did not respond to via United States Certified Mail confirmation, as exchanges of communication regarding Executive Director Sophie Martin, Esq. are in the content. The lack of response violates Due Process Rights.

[20] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities.

[21] "**Testing entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations.** Qualified professionals are licensed or otherwise properly credentialed and possess expertise in the disability for which modifications or accommodations are sought. Candidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation.  A testing entity should generally accept such documentation and provide the recommended testing accommodation without further inquiry." Quoting from the United States Department of Justice, Civil Rights Division, Disability Rights Section, ADA Testing Accommodations Requirements.

171.   Defendant Martin, acting as an agent of the NMBBE, violated Federal law by being exceedingly intrusive of the Plaintiff's prior testing experiences when the medical documentation submitted to the NMBBE had not been carefully and entirely read by the Director.

172.   The ADA , per the DOJ, has made clear in no uncertain terms in no uncertain terms that "proof of past testing accommodations in similar test settings is generally sufficient to support a request for the same testing accommodations for a current standardized exam or other high-stakes tests."[22]

173.   "A testing entity may only need one or two … documents to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. A testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation."[23]

174.   The ADA, like the Health Insurance Portability and Accountability Act (HIPAA), protects the medical privacy of patrons against discrimination and disclosure, as intrusiveness can cause apprehension for ADA test takers, which is why the appendage information is prohibited.

175.   The NMBBE's inquiries appeared to be a supplementary form of 'flagging 'by annotating prior test experiences that contributed to scores reported from

---

[22] See "Final Report of the Best Practices Panel" at www.ada.gov/lsac_best_practices_report.docx.

[23] Quoting from the document entitled "Testing Accommodations" from the U.S. Department of Justice Civil Rights Division *Disability Rights Section.*

unaccommodated exams contracted for accommodations by the ADA. Contact information was also inquired of with an exactness of details regarding what occurred during those experiences, and all the extensive inquiries were prohibited by the ADA.[24]

176.   Defendant Martin was mandated by law to use the information plainly detailed in the application and supplement materials.

177.   Defendant Martin's intrusive inquiries caused the Plaintiff damage and continue to do so.

*Violations of Noise-Free Requirements*

178.   The noisy environment lacking appropriate operable heat as required by law for a public building in addition to being a necessity for the Plaintiff's disabilities not to regress.

179.   The NMBBE's relocation of the Plaintiff twice during the exam noisier and more disruptive than snacks unwrapped or wrapped, per the "Agreement," indicating snacks cannot be of noise and must be unwrapped upon arriving to the testing site.

---

[24] **"Flagging policies that impede individuals with disabilities from fairly competing for and pursuing educational and employment opportunities are prohibited by the ADA.** Flagging" is the policy of annotating test scores or otherwise reporting scores in a manner that indicates the exam was taken with a testing accommodation. Flagging announces to anyone receiving the exam scores that the test-taker has a disability and suggests that the scores are not valid or deserved. Flagging also discourages test-takers with disabilities from exercising their right to testing accommodations under the ADA for fear of discrimination. Flagging must not be used to circumvent the requirement that testing entities provide testing accommodations for persons with disabilities and ensure that the test results for persons with disabilities reflect their abilities, not their disabilities." Quoting from the United States Department of Justice, Civil Rights Division, Disability Rights Section, ADA Testing Accommodations Requirements.

180.   The NMBBE failed to provide a noise free setting to decrease distractions because of physically relocating a permanently and terminally disabled test taker with all her:

   a)   medical belongings

   b)   physical prompts,

   c)   big square table to use as a desk,

   d)   utensils,

   e)   computer,

   f)   testing booklets, and

   g)   supplement papers

181.   The NMBBE failed to apply a reasonable simple solution to relocate the Plaintiff to a room renovated floor renovated or to the Albuquerque Convention Center where ADA test takers previously tested in former years.

182.   The NMBBE guaranteed a quiet and distraction-free room in the "Agreement," via email, and by telephone even after the "Agreement" was signed; the parol evidence also assured that the testing environment would not have a warmth issue.  For example, Defendant Martin communicated a white noise machine to help resolve some distractive noise would be in the Plaintiff's testing room, but the machine was absent from the room, with no explanation.

183.   The testing center where the Plaintiff was placed was extremely noisy due to air vents and construction projects.

184.    As a result, the Plaintiff was unable to focus and suffered damages as a result.

*Relocation Disruption*

185.    The structure and infrastructure of the rooms could not be accommodating for ventilation because the vents bordered the room walls on each adjacent side in a square architecturally except for by the door. The glass windows were not insulated, and the winter weather with the wind outside of the window further chilled the test environment.

186.    The glass windows in the testing environment decreased test privacy that was to be provided by the NMBBE, per the "Agreement," and the windows were not insolated, as condensation, mold, and mildew were visible on the glass. The Plaintiff is allergic to mold and mildew. One wall in the room was sole of windows on the top half with the HVAC on the bottom that structurally bordered the room walls. The freezing cold could also be felt from the uninsulated glass windows daily during testing.

187.    There were no rooms or portions of rooms readily accessible for the Plaintiff, as per the "Agreement."

188.    The NMBBE, midway through the exam, attempted a relocation of the Plaintiff's examination room, to no avail.

189.    The "accommodated" testing room was worse than the original testing room.

190.    When the NMBBE unaccommodated the Plaintiff correctly initially in the first room, the room was predetermined and preselected with the Plaintiff's name on

the door upon arrival to the Uptown Tower of 7 stories; the alternate decrepit room offered by the NCBE Test Administrator and at minimum was worse.

191.   After continuing the exam in the "alternate" testing room, the NCBE Test Administrator asked the Plaintiff to move back to the original dilapidated room to continue the exam.  the Plaintiff agreed to vacate the alternate room to comply with the NCBE Test Administrator's guidance because the Heating, Ventilation, and Air Conditioning (HVAC) would not stop making a brash noise and started slowly dripping water, which is not a low distraction or norm in a quiet testing area, per the "Agreement."[25] The movement caused a raucous.[26]

192.   If there was an extent of heat and vent proximity given to non-accommodated testing candidates, the NMBBE was reasonably required by the ADA to provide the same for the Plaintiff.

193.   The test proctor assigned to the Plaintiff's testing room departed routinely during testing to get warm due to the bitterness of the temperature and obtained a bright red nose due to the frigidity. The test proctor leaving to survive the frigidity is evidence of extreme cold, and the activity creates noise and commotion from the door opening and closing.

---

[25] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities. "A testing entity must respond in a timely manner to requests for testing accommodations so as to ensure equal opportunity for individuals with disabilities. Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test.[6]  In addition, the process should provide applicants with a reasonable opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle. Failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities."

[26] Read Cover Memo file emailed April 2021 and in 2020 that each NMBBE member obtained directly but did not respond to via United States Certified Mail confirmation, as the content shares this data specifically. The lack of response violated Due Process Rights.

194. The NMBBE contract the Plaintiff agreed to and signed in 2019 does not have any content stating she agreed to be in a decrepit testing center during renovation, such as the Uptown Tower, without heat during a freezing winter so that she could further deteriorate her health.

195. If the location was going to be void of heat or lack recommended ventilation, the NMBBE should have responsibly sent notice to the Plaintiff in advance given her being that warmth is medically necessary for the Plaintiff's health maintenance, according to more than legally adequate academic and medical documentation submitted starting September 2019 to the NMBBE.

196. The NMBBE breached the contract by requiring the Plaintiff, an ADA Courtesy Seater for a bar exam, to choose between two iniquities instead of simply providing the proper accommodations initially contractually required to be fulfilled before the arrival of the Plaintiff to test.

197. The room was not cold. The room was frigid and extremely cold until the Plaintiff's fingers and feet were numb, though she continued to write or type as necessary to complete her exam. The frigidity caused flares in her Chronic pulmonary conditions that required supplement medication daily after testing to sustain.

198. The NMBBE promised in the "Agreement," a testing room that was:

    b)  quiet of low distraction, and

    b)  Where vent proximity could be adjusted so that the Plaintiff would not be further exposed to airborne problems while testing.

232. The NMBBE provided none of the elements listed above in the "Agreement."

233. Apparently, the loud HVAC system is the reason the alternate room offered was not originally used and was vacant. The raucous from the brash HVAC and relocation to and from insolvent rooms in the Uptown Tower twice during the exam is unaccommodating, per the contract.

234. That raucous behavior:

   a) decreased her testing time allocated proportionally as an accommodated examinee to the testing session;

   b) disrupted her concentration during the middle of the exam;

   c) eliminated The Plaintiff's ADA right to a quiet testing environment, because of the ostentatiously loud HVAC due to the unfortunate relocation to yet another unaccommodating room. The test proctor correspondingly admitted that repairs were not able to be completed by any other NMBBE staff or maintenance when the Plaintiff asked, as the NMBBE staff and maintenance workers were in the same building on a different floor.

235. Conversely, the NMBBE failed to fulfill reasonable requests in the "Agreement" and demonstrated wrongful conduct violating Federal and State laws to put disabled test candidate with permanent and terminal diseases regarding her lungs in a room with air conditioning in the dead cold of winter. The Plaintiff wears layers of clothing year around with a medical face mask and head covering, as she has more than one lung disease with extreme allergens and anemia.

236.   Unquestionably, having the Plaintiff in frigid temperatures would induce her disabilities declining. The Plaintiff wearing layers of clothing was not to provide a direct source solely of heat because the NMBBE relocated to a building under construction with a broken HVAC system in certain rooms.

237.   Clothing can supplement *individual* temperatures but do not replace a lack of operational heating equipment in a room in a commercial building during an extremely cold winter of 20 to 40 degree temperatures. The test proctor wore a winter coat, boots, gloves, hat, and scarf daily when present for testing and remained bitter cold.

238.   Relocating the Plaintiff while testing is an admission by the NMBBE and NCBBE of breaching the "Agreement." Irrespective of where the Plaintiff tested, the environment was required to be accommodating. This is a chief constituent and obligation by the ADA that the NMBBE violated in the "Agreement."

239.   The NMBBE breached the contract to accommodate the Plaintiff in an exam environment decently sterile of quietness and cleanliness. Construction cones and yellow hazard taped rooms with exposed wires are not proper or safe for a professional licensure exam setting, yet each was part of the Uptown Tower on the floor of ADA testing.

240.   The realtors and property owners who were leasing the spaces formerly can affirm the conditions, as can the state due to permits necessary to make the renovations

in winter 2019.[27] The specific building floor conditions were horrid while planning for renovations.

241.   The NMBBE recklessly risked the health of the Plaintiff during testing because the medical documentation submitted clearly indicated the Plaintiff was a patron of multiple disabilities suffering daily from her permanent illnesses but wears layered clothing with a medical face mask customarily to help give protection from airborne or averse irritants that cause flares and further health impairments.

*Technical Issues*

242.   The NMBBE breached the "Agreement" because of technicalities that occurred during the exam when the Plaintiff submitted answers to exam questions.

243.   The violation of the Plaintiff's Civil Rights to have accuracy in the use of technology and testing is significant, as the NMBBE failed to address that element of the Testing Accommodations contract previously, which is the custom in testing jurisdictions.[28]

244.   Technicalities with accessing, submitting, and scoring exam answers occurred that was immediately reported to the NMBBE test proctor by the NCBE test administrator.

245.   The Plaintiff was referred to contact the testing software manufacturer for assistance.

---

[27] See realtor information available to the public and approved renovations with pictorials regarding site development city or county code approvals on record for 2440 Louisiana Blvd. NE, Albuquerque, New Mexico, 87110. See the State of New Mexico Regulation and Licensing Department and New Mexico Administrative Code at https://www.newmexico.gov/other-affected-services/regulation-and-licensing-department/ and https://casetext.com/regulation/new-mexico-administrative-code.

[28] See Exhibit F previously sent in the Cover Memo file emailed April 2021 and in 2020 that each NMBBE obtained directly but did not respond to via United States Certified Mail confirmation. The lack of response is a violation of Due Process Rights.

246.    The NMBBE Test Proctor and NCBE Test Administrator struggled to help solve the technicalities, but resolution did not occur.

247.    Further, the NMBBE was not to score the Plaintiff's exam without a reply from Defendant Martin per feedback obtained at the testing site by the NCBE test administrator.

248.    Nevertheless, the exam was scored.

249.    Currently, the scoring inquiry and improves requires resolve.

250.    The NMBBE's specious scoring of an unaccommodated exam with technicalities further supports a pattern of flawed conduct protracted to the exam scoring.[29]

251.    The inappropriate scoring is incongruous and further discriminatory given that the Plaintiff was legally entitled to accurate scoring of her exam, as she was legally entitled to complete the exam without technicalities occurring and with accommodations.[30]

252.    The exam is being requested to be of apropos scoring immediately.[31]

---

[29] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities."

[30] See Exhibit E previously sent in the Cover Memo file emailed April 2021 and in 2020 that each NMBBE obtained directly but did not respond to via United States Certified Mail confirmation. The lack of response violates Due Process Rights.

[31] See the United States Department of Justice, Civil Rights Division, Disability Rights Section, Revised Final Regulations for State and Local Government Services and Public Accommodations and Commercial Facilities. "Under Section 309 of the ADA, any person (including both public and private entities) that offers examinations related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes must offer such examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.  Under regulations implementing this ADA provision, any private entity that offers such examinations must "assure that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual´s aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual´s impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309.  Likewise, under regulations implementing title II of the ADA, public entities offering examinations must ensure that their exams do not provide qualified persons with disabilities with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, 28 C.F.R. § 35.130(b)(1)(iii), and may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(6).  Both the title II and title III regulations also require public and private testing entities to provide modifications and auxiliary aids and services for individuals with disabilities unless the entity can demonstrate an applicable defense.  28 C.F.R. §§ 35.130(b)(7), 35.160(b), 35.164; 28 C.F.R. §§ 36.309(b)(1) (iv-vi), (b)(2), 36.309(b)(3)."

*Failure to Respond to Timely Inquiries*

253. The NMBBE also breached the "Agreement" by failing to respond to timely inquiries from the Plaintiff.," when Defendant Martin specifically communicated in the contract, "If you have any questions, please do not hesitate to contact me."

254. A grievance was orally filed at the testing location daily of the unaccommodating conditions with the NCBE Test Administrator and NMBBE test proctor, and both indicated the initial oral complaints were being shared daily with Defendant Martin.

255. Complaints were also submitted in written form to the NMBBE in a timely fashion.

256. The denotation of a grievance is a complaint.[32] A synonym for a grievance is a complaint. Grievances of test irregularities were filed orally at the physical testing site, affirmed in writing via email or mail carrier services after the exam, and a substantial response for immediate resolve was requested from the NMBBE.

257. The NCBE Test Administrator directed the Plaintiff to send an email of testing affirmations regarding the bar exam irregularities after the test concluded to Defendant Martin to confirm and resolve the grievances.

258. The NCBE Test Administrator, who executed instructions on behalf of the NMBBE, assured:

   a) Defendant Martin would reply within 48-72 hours to resolve the grievances, and

---

[32] A collegiate dictionary contains the definition of the word.

b)   that the grievances were communicated via texts or

discussions to Defendant Martin who had an office on a different renovated floor in the building but never came to offer resolve during the unaccommodated exam as required, per the ADA.

256.   The NMBBE failed to reply.

257.   The written grievances were shared with the NMBBE in February 2020, March 2020, and April 2020, before being submitted to the National Conference of Bar Examiners (NCBE).

258.   The Plaintiff sent repeated grievances to the NMBBE and then the NCBE regarding the lack of accommodations and scoring irregularities, in accordance with the ADA. The initial emailed grievance was also mailed via the United States Postal Service.

259.   According to feedback the Plaintiff obtained from the NMBBE in the Slack, Inc. forum, a letter was to arrive within a week from the NMBBE to address the ADA testing irregularities.  However, the NMBBE did not send that letter.[33]

260.   In Spring 2020, Fall 2020, Winter 2020, Winter 2021, and Spring 2021,[34] formal complaints were stated, emailed, messaged, mailed, and confirmed with receipts to each board member of the NMBBE, supplement parties, and the NCBE.

261.   The NMBBE failed, repeatedly, to reply.

---

[33] See Exhibit C in the Cover Memo file emailed April 2021 and in 2020 that each member of the NMBBE obtained, but did not respond to, via United States Postal Service Certified Mail. The Slack discussion is enclosed in the memo file and was in relativity to a letter Executive Director Sophie Martin, Esq. obtained via United States Postal Service. The lack of response is a violation of Due Process Rights.

[34] See Cover Memo file emailed April 2021 and in 2020 that each member of the NMBBE obtained directly but did not respond to via United States Certified Mail confirmation, as the content shares various dates, times, and specifics of time-stamped complaints. The lack of reply is a violation of Due Process Rights.

262.     If procedures alternatively existed for Courtesy Seaters in New Mexico to file ADA test grievances or complaints, the NMBBE failed to publish the procedures in 2019 and 2020 as required.[35] The NMBBE failed to ask questions if there was in doubt of the numerous documentation mailed as grievances. There is no substantiation of unintentional communication from the Plaintiff.

263.     The NCBE attributed the NMBBE members and constituents for the violations.

264.     The NMBBE members failed to uphold being duty-bound to respond before over a year later.

265.     The NMBBE failed, under the direction of the NCBE, to reply to numerous ADA complaints during testing and post-testing to offer remedy.

266.     Even prior to testing, the NMBBE failed to administer competent preparation for the Plaintiff's exam accommodations.

267.     The prohibited comportment was reported during the exam. The test proctor indicated the prohibition, which she also personally observed to affirm, would be reported to the NCBE Test Administrator, and then to the NMBBE.

268.     The report was unfairly marginalized and unaddressed as required by NMBBE testing policies for cheating and behavior; the policies were emphasized numerously by the NMBBE before the exam.[36]

269.     Medical practitioners can still attest to the Plaintiff's current health conditions and subsequent declining health conditions because of this distressing legal matter.

---

[35] See the New Mexico NMBBE of Bar Examiners protocols published online in printable format for 2019 and 2020, which were also noted in the Cover Memo file emailed April 2021 and throughout 2020, which each member of the NMBBE obtained directly but did not respond to via United States Certified Mail confirmation and FedEx Corporation. The lack of response is a violation of Due Process Rights.
[36] See the Americans with Disabilities Act (ADA).

270. The NMBBE caused egregious burdensome extremities by not lawfully accommodating the Plaintiff, which could have been done by easily applying various solutions. Instead, the Plaintiff had to obtain supplement medicine daily during testing to sustain her health to a recuperative status that would allow her to endure all four days of testing during the entire exam session after she left the Uptown Tower.

271. The NMBBE is responsible for consequential health costs in 2020 from breaching the 2019 "Agreement."

272. The Plaintiff suffered and remained to test is because she was of near-exact preparation and fully prepared to pass the exam.

273. However, the NMBBE abused its authority and power as a state entity by intentionally inflicting further harm on the Plaintiff when the NMBBE selected not to respond so that due process appropriately occurred, as required duty-bound by law to respond and inform before over a year later by the ADA and New Mexico Statutes.

274. The NMBBE has continued to intentionally inflict such harm to date.

275. Members of the NMBBE also failed to satisfy the tenets for the New Mexico Rules of Professional Conduct per Article 4.16 (401-404)  and Article 8.16 (801-805) to reply to communication in a timely manner.

## FOURTH CAUSE OF ACTION

### FOURTH CLAIM FOR RELIEF:

### BREACH OF THE RESTATEMENT (SECOND) OF CONTRACTS

### OF THE NEW MEXICO BOARD OF BAR EXAMINERS

**TESTING ACCOMMODATIONS POLICY**

**UNDER THE AMERICANS WITH DISABILITIES ACT**

(42 U.S.C. §§ 12101 ET SEQ.)

276.    The NMBBE, under the direction of the NCBE, breached its contract with test

takers in the "Testing Accommodations Policy," *as its own procedure* because the

NMBBE guaranteed nondiscriminatory conduct in administering the exam and

failed to perform as guaranteed.

277.    The "Testing Accommodations Policy," published to examinees indicated:

It is the policy of the New Mexico Board of Bar Examiners ("Board") to
administer the bar examination and all other services provided by its office in a
manner that does not discriminate against a qualified applicant with a disability.
An applicant with a disability who is otherwise eligible to take the bar
examination may file a request for reasonable testing accommodations if, by
virtue of a disability, the applicant cannot demonstrate under standard testing
conditions that the applicant possesses the knowledge and skills to be admitted to
the State Bar of New Mexico.

278.    The NMBBE and the NCBE are joint promisors of the policy under the ADA, as

the NMBBE functions by the supervision of NCBE, which provides support to

jurisdiction exam administrators before, during, and after each exam

administration; provides psychometric consulting, research, and data forensics

services to jurisdictions; provides admission-related services to applicants on

behalf of jurisdictions; sponsor a wide range of educational events for jurisdiction

bar examiners and bar admission administrators, legal educators, and states'

highest courts, including the Annual Bar Admissions Conference and other

conferences, seminars, and workshops throughout the year; and provides training for jurisdiction for each exam administration and process.[37]

279. The NMBBE failed to perform its legal duty and obligation under the ADA to avoid discriminating in any manner toward disabled test takers because the NMBBE is a professional licensure entity and governmental state agency subject to Title II and Title III of the ADA.

280. The NMBBE's prejudicial misconduct to not render information fairly demonstrated an inadequacy in the fairness of publishing information for test candidates to prepare for the exam.

281. The NMBBE failed to offer performance once it did not render performance properly, as the NMBBE did not reply to the Plaintiff's previous inquiries by sharing the testing location in September 2019-December 2019.

282. The test location was not to be published until the admission ticket was mailed, per the NMBBE policy and direct communication via telephone and email. The information communicated in advance helps to prevent supplement costs and travel extremities for the Plaintiff before, during, and after the exam.

283. The NMBBE's failure to share the testing location information was material to the Plaintiff's travel from a different state to the test site and from the other side of the city daily in the morning via paratransit to the test site. Travel to the test site involved unwarranted costs and extra medical care because of the health necessity to prepare for and to decrease complications with travel.

---

[37] See the Mission, Vision, Core Values, and Mission Fulfillment of the National Conference of Bar Examiners at https://www.ncbex.org/about/ that explicitly details the management it has of jurisdictional procedures for the bar exam.

284.   The Plaintiff did not deserve the injustice of the financial and health consequences from not having germane information in advance that benefitted other test candidates, but not her, in particular since the information was not to be published until the admission ticket was mail to each candidate, per the NMBBE policy.

285.   The NMBBE discriminated by giving testing location information months in advance to other examinees which was an inequitable dissemination of pertinent public exam information, who were then able to obtain lodging within walking distance of the Uptown Tower in advance of the exam (the peers lodged in a hotel physically next door to the tower). The Plaintiff learned her first day of testing upon arrival at the Uptown Tower.

286.   At the Uptown Tower in February 2020, peers taking the exam with the Plaintiff indicated having confirmation by Fall and Winter 2019 of the testing location; the NMBBE shared, per the peers, hotel information in advance permitting lodging to be obtained by the peers adjacent to the testing site. Peers were within walking distance of the Uptown Tower daily as a result.

287.   The NMBBE was discriminatory in conduct by not giving the Plaintiff the same testing center information peers obtained in Fall and Winter of 2019, though she inquired. The Plaintiff tried to seek clarity since September 2019 of the testing location because the temperature and accommodations requested for the environment greatly and rigorously impact her multiple disabilities.

288.   The NMBBE caused the Plaintiff to pay for extra services via ADA reciprocity in New Mexico as a visiting paratransit rider certified from Louisiana under the laws of the Federal Transit Administration (FTA).

289.     The NMBBE's discriminatory dissemination of information to test candidates resulted in supplement paratransit costs and assistance for the Plaintiff's transport to and from the testing center of the Uptown Tower in February 2020. Paratransit is a federally regulated[38] program as a bus service for certified eligible disabled individuals.

290.     The service requires scheduling starting at 14 days in advance in some jurisdictions and not less than 2 days from the date of travel, as the times for pickup and returns typically vary are 1 hour to 2 hours in advance to impartially accommodate riders due to factors such as how many buses are available, how many people are riding at the time, etc.

291.     The NMBBE's discrimination caused the Plaintiff to pay for extensive paratransit services; the Plaintiff was scheduled by at least 5:30am for pick up to arrive at the Uptown Tower for testing by 6-6:15am in February 2020 to ensure arrival before testing started, as agreed in the contract. The timing was not optional due to the guidelines of paratransit at the time, service routes available in the morning, and the number of passengers being transported. The Plaintiff had to awake hours early before the exam, travel across town on paratransit purchased for, and arrive hours early to the testing site in the freezing winter weather.

---

[38] The Americans with Disabilities Act (ADA) requires public transit agencies that provide fixed-route service to provide service to people with disabilities who cannot use the fixed-route bus or rail service because of a disability. The ADA regulations specifically define a population of customers who are entitled to this service as a Civil Right. The regulations also define minimum service characteristics that must be met for this service to be considered equivalent to the fixed-route service it is intended to complement. Paratransit services are meant to provide a transportation option for those individuals who are unable to use the fixed-route bus or rail system serving their location, and these services are flexible in their scheduling and routing, allowing them to accommodate the specific needs of their riders. See https://www.nadtc.org/about/transportation-aging-disability/ada-and-paratransit/.

292.   The extra emotional, mental, and physical distress on the Plaintiff's body due to excessive travel combined with the testing site surroundings did not offer equitable testing as that of correctly accommodated testers for their individual disabilities or non-accommodated test candidates.

293.   The NMBBE violated and breached the contractual "Agreement" based solely on medical recommendations to avoid such detriments during traveling to the test. For example, the Plaintiff took extraordinary precautions while traveling; for instance, she purchased flights based on times that would not cause her health to decline and to help maintain some level of eustress.

294.   The NMBBE failed to inform the Plaintiff of the location knew of the definite location once the admission ticket was obtained in February 2020, near a week prior to the exam, because the Plaintiff was not privy to learning the test location in Fall and Winter 2019—unlike other ADA examinees.

295.   Conclusively, scheduling travel and accommodations in advance was not an option for the Plaintiff to prepare well as it was for peers testing, which is discriminatory.

## FIFTH CAUSE OF ACTION

### FIFTH CLAIM FOR RELIEF:

### BREACH OF THE RESTATEMENT (SECOND) OF CONTRACTS

### OF THE NEW MEXICO BOARD OF BAR EXAMINERS

### WHAT TO BRING AND WHAT NOT TO BRING PROHIBITION POLICY

### UNDER THE AMERICANS WITH DISABILITIES ACT

### (42 U.S.C. §§ 12101 ET SEQ.)

296.   The NMBBE breached the "What to Bring and What Not to Bring" prohibition

policy below under 42 U.S.C. §§ 12101 et seq. by not equitably adhering to its

own rules daily for all test candidates during the exam:

**Prohibited Items**

Examinees are not allowed to bring any items to the test exam building* other
than those items specifically allowed (see above). The following are examples of
prohibited items:

**Any electronic device, including but not limited to:**

- Cell, smart, or mobile phones (unless stored through cell phone storage
  program)
- Fitness trackers, watches, smart watches, clocks, or timers
- Bags of any kind, including briefcases, handbags, suitcases, laptop bags or
  sleeves, or backpacks
- Written materials (including books and notes), scratch paper, post-its,
  newspapers, or magazines or paper of any kind
- Media players or tablets
- Calculators
- Headphones, ear buds, ear plugs
- Language translators
- Picture-taking devices
- Data storage devices
- Mouse pads, pens, pencils, highlighters, rulers, or erasers
- Earmuffs, hats, scarves, headbands, and/or hoods (except pre-authorized
  religious apparel)
- Food or beverages (unless pre-authorized for medical reasons)
- Firearms or other weapons

**Other prohibited items, including but not limited to:**

- Food, gum, candy (except in lunch bag)
- Uncovered beverages or beverages greater than 12 oz. –water and coffee will
  be provided at the test center
-

**\* PLEASE NOTE**: The exam building is the building in which the exam is
administered. There is no storage available in the exam building; if an item is
prohibited, you may not bring it into the exam building, although you may leave
it in a car in the convention center parking garage. Please plan accordingly.
**Testing staff is not responsible for lost or stolen items.**

In addition, on WEDNESDAY, no laptops.

Rev. 2/2020

**Notice to Examinees: Prohibited Behaviors**

The National Conference of Bar Examiners (NCBE) holds the copyright to the UBE and its content, and exam content may be considered for reuse in future exams or in copyrighted educational materials. Both disclosure of exam content and cheating on a test are prohibited, as such practices undermine the integrity and fairness of the examination process.

The following conduct is prohibited and may result in immediate dismissal from the test center and/or cancellation of the examinee's score:

- bringing prohibited electronic devices (whether turned on or off) or other prohibited items to the exam building
- taking test materials, prohibited electronic devices, or other prohibited items out of the exam room during any scheduled or unscheduled break or at the conclusion of the testing period
- causing a disruption or disturbance
- copying answers from another examinee or sharing answers with another examinee
- continuing to type, write, or erase after a supervisor has instructed examinees to stop

323.    If examinees observe rule violations, examinees must ethically report the transgressions or could be penalized.

324.    The NMBBE and NCBE did not ethically resolve the prohibition, yet the Plaintiff demonstrated integrity by reporting the prohibition. The NCBE is responsible for the training of jurisdiction graders following all exams administered and for providing score services with other admission-related services to applicants before, during, and after the bar exams.

325.    Starting February 25, 2020, the NMBBE failed to address daily prohibited conduct reported by the Plaintiff and that NMBBE test proctor, Juanita, also observed.  The Plaintiff reported that the examinee in the adjacent room with a glass window in the hallway by the front door had prohibited item(s). For

example, the test taker brought and utilized a hard shell laptop sleeve during the exam, which is not permitted along with other laptop covers of any type by the regulations.

326.    The purpose of the policy rule is to deter cheating, as laptop shells or cases can hide information beneficial for exam answers, which is dishonest.

327.    Defendant Martin emailed definite feedback on February 21, 2020, at 11:23 AM CT enforcing and asserting the rules.

328.    Therefore, the Plaintiff verbally cited the policy and inquired of the status of the prohibited conduct February 25-28, 2020, as the candidate showed to test daily with the prohibited item during the exam.

329.    The Plaintiff removed her laptop sleeve of the exact colorful hard shell with affixed Visual Impairment devices (AIs) not approved prior to the exam.

330.    However, the NMBBE passed the examinee and did not investigate the official report accordingly.[39] Thus, the NMBBE, which performs by the direction of the NCBE, breached the Restatement (Second) of Contracts under the ADA.

331.    The NMBBE, as a government agency, materially breached fairly performing the policy because the government agency failed to address the prohibition, so there was not a result of immediate dismissal from the test center and/or cancellation of that examinee's score.

332.    The examinee's name was published on the NMBBE's web page as passing for the Bar Exam once the NMBBE eventually repaired the web page. The first

---

[39] See *What to Bring and What Not to Bring, Notice to Examinee: Prohibited Behaviors published by the New Mexico NMBBE of Bar Examiners Revised 2/20.* Read Cover Memo file emailed April 2021 and in 2020 that each NMBBE member obtained directly but did not respond to via United States Certified Mail confirmation, as exchanges of communication regarding Executive Director Sophie Martin, Esq. are in the content. The lack of response is a violation of Due Process Rights.

weblink the NMBBE formed and published malfunctioned.  The second weblink the NMBBE distributed published the data, which is part of the NMBBE's administrative incompetence pattern harmfully incessantly to the Plaintiff.[40]

333.   The continual prohibition caused resulted in inequitable treatment of the Plaintiff among other test candidates and nonperformance by the NMBBE.

334.   The NMBBE prohibited comportment reported during the exam was unfairly marginalized and unaddressed as required by the NMBBE's 2020 "What to Bring and What Not to Bring, Notice to Examinee" prohibition policy.

335.   February 28, 2020, the NMBBE Test Proctor informed that she reported the prohibition to the NCBE Test Administrator and Defendant Martin As a new proctor, she was unsure of the policies and said that she was not trained in how to handle issues of this nature and did not obtain a copy of the policies prior to the copy supplied at the testing location. The proctor informed the Plaintiff to, "...discuss the violation with Ms. Martin when she contacts you in a few days."

336.   To date, the NCBE, NMBBE supplement members, and Defendant Martin. have not contacted the Plaintiff regarding the prohibition.

## SIXTH CAUSE OF ACTION

### SIXTH CLAIM FOR RELIEF:

### VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT

(New Mexico Statutes, Chapter 28, cited as the "New Mexico Human Rights Act," Articles 1, 7, and 10)

---

[40] See previous Cover Memo file emailed April 2021 and in 2020 that each of the NMBBE obtained directly but did not respond to via United States Certified Mail confirmation, as the content shares damages and violations correlatively. See the updated Cover Memo file with damages pursued through April 2021. The lack of response is a violation of Due Process Rights.

337.  Plaintiff Jane Doe realleges and incorporates by reference set forth in paragraphs 1-336.

338.  The Defendants offer the Uniform Bar Examination in New Mexico and make determinations about accommodations that will be provided and permitted for individuals with disabilities who will test, such as the Plaintiff.

339.  The Plaintiff is an individual with a disability by the denotation expressed in the New Mexico Human Rights Act, New Mexico Statute § 28-1-2.

340.  Defendants deliberately discriminated against the Plaintiff on the basis of her disability by denying her Due Process and proper accommodations during a professional licensing exam, and disabled individuals must be afforded an equal opportunity to demonstrate her aptitudes and achievement levels.

341.  The Defendants willfully failed to provide reasonable accommodations. New Mexico Human Rights Act, New Mexico Statute § 28-1-7.

342.  The Defendants continue to discriminate against the Plaintiff insofar as the Defendants denied her Due Process for over a year and a half (over 365 days) and the Defendants have made no affirmative steps to undo the harm their conduct has caused. New Mexico Human Rights Act, New Mexico Statute § 28-1-10.

343.  Further, the NMBBE, as a government actor, abused its authority and power under the New Mexico Civil Rights Act (House Bill 4); while the Act may not apply to pre-dated legal claims, the Act is significant by indicating a specific need to have a federal law doctrine prohibiting a public body, or those acting on the public body's behalf, from eliminating the abuse of power.

344. Congress imposed strict ADA standards of conduct on State NMBBEs of Bar Examiners and similar entities to avoid abuse of their powers to license adults, and the Defendants failed to comply.

345. The Defendants failed to act in good faith.

346. The Defendants 'failure to remediate its discrimination continues to compromise the Plaintiff's career and health regarding the attainment of employment and distress of the discriminatory practices. The Defendants maintain records of the Plaintiff's performance under discriminatory conditions, and those records hinder Plaintiffs 'job search and career prospects.

Wherefore, Plaintiff demands judgment against the Defendants as follows:

a) Compensatory damages;

b) Punitive damages;

c) Attorney fees;

d) Interest, and

e) For such other relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION

**SEVENTH CLAIM FOR RELIEF:**
**VIOLATIONS OF THE NEW MEXICO CIVIL RIGHTS ACT**
(New Mexico Civil Rights Act 10:6-2)

347. Plaintiff incorporates by reference the allegations contained in paragraphs 1-346 as if the same were fully set forth herein.

348. At all times herein mentioned Defendants were acting under the color of State law as employees of the Defendants, NMBBE and NCBE.

349.    The New Mexico NMBBE of Bar Examiners are therefore responsible and liable for the acts of its employees, agents, and representatives under the principle of Respondeat Superior is committed within their scope of employment.

350.    The aforementioned acts in this Complaint violated the New Mexico Civil Rights Act because under the color of state law Defendants violated Plaintiffs Constitutional Rights of ADA Violations and other violations of the New Mexico Civil Rights Statute and New Mexico and the Constitution of the United States.

351.    As a direct and proximate result of the Acts alleged herein, Plaintiff was caused and will continue in the future because to experience pain and suffering and permanent physical, mental and emotional injury. Furthermore, as a result of said acts by Defendants, the Plaintiff has incurred and will continue to incur significant medical and vocational expenses until the wrongdoings are remedied.

352.    Wherefore, Plaintiff demands judgment against the Defendant as follows:

a)  Compensatory damages;

b)  Punitive damages;

c)  Attorney fees;

d)  Interest, and

e)  for such other relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

### EIGHTH CLAIM FOR RELIEF:

(Section 1983 Conspiracy)

353.    Plaintiff incorporates by reference all allegations contained in the paragraphs 1-352.

354.    Defendants conspired to violate Plaintiff's constitutional rights.

355.    Defendants conspired and acted in bad faith in violation of 42 U. S. C. Section 1983 and section 1986; the 4th, 5th, 8th, and 14th amendments in the Constitution of the United States; and the New Mexico State Constitution of interrelated state laws.

356.    As a direct and proximate result of the acts alleged therein, Plaintiff was caused and will continue in the future to be caused to experience pain and suffering and permanent physical, mental and emotional injury.

357.    Wherefore, Plaintiff demands judgment against the Defendants as follows:

   a)  Compensatory damages;

   b)  Punitive damages;

   c)  Attorney fees;

   d)  Interest, and

   e)  for such other relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

### NINTH CLAIM FOR RELIEF:

(Failure to Intervene)

358.    Plaintiff repeats, reiterates, and realleges each allegation contained in paragraphs 1-357.

359.    Defendants had an affirmative duty to intervene on behalf of Plaintiff whose constitutional rights were being violated in the presence of other employees.

360.    The Defendants failed to intervene to prevent the unlawful conduct described herein.

361.  As a result of the foregoing, Plaintiff's liberty was restricted for an extended period due to medical care required post the exam; she was subjected to violations of her state and federal rights.

362.  Wherefore, Plaintiff demands judgment against the Defendant as follows:

   a)  Compensatory damages;

   b)  Punitive damages;

   c)  Attorney fees;

   d)  Interest, and

   e)  for such other relief as the Court deems just and proper.

## TENTH CAUSE OF ACTION
### TENTH CLAIM FOR RELIEF:
(Municipal Liability)

363.  Plaintiff incorporates by reference the allegations contained in paragraphs 1-362.

364.  Defendants, collectively and individually, while acting under the color of state law, engaged in conduct that contained a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

365.  The aforementioned customs, policies, usages, practices, procedures, and rules of the NMBBE included, but were not limited to, discriminating against individuals needing ADA accommodations without due process.

366.  In addition, the NMBBE engaged in policies, customs, and practices of screening, hiring, training, retraining, and supervising its employees, which was the moving force behind the violation of Plaintiff's rights as described herein.

367.   As a result of the failure of the NMBBE to properly recruit, screen, train, discipline, and supervise its members, including the individual Defendants, Defendants have tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

## ELEVENTH CAUSE OF ACTION

### ELEVENTH CLAIM FOR RELIEF:

(Attorney's Fees)

368.   Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 367 as if the same were fully set forth herein.

369.   Plaintiff alleges that the facts set forth herein above support a Cause of Action to enforce 42 U. S. C. 1983, et seq., And as such Plaintiff is entitled to Attorney's Fees from Defendants pursuant to 42 U. S. C. §1988.

370.   Wherefore, Plaintiff demands judgment against the Defendants as follows:

a)   Compensatory damages;

b)   Punitive damages;

c)   Attorney fees;

d)   Interest, and

e)   for such other relief as the Court deems just and proper.

## CONCLUSION

371.   The NMBBE and NCBE:

a)   failed to provide the accommodations reasonable to accomplish;

b)   admitted unlawfully and purposefully ignoring multiple grievances filed for over a year;

    c)  caused further decline to Jane Doe's health from the distress of the maltreatment; and

    d)  derailed Jane Doe's encore career she prepared to begin.

372. The foregoing customs, policies, usages, practices, procedures and rules of the Defendants constituted deliberate indifference to the well-being, and constitutional rights of Plaintiff and were the direct and proximate cause and the moving force of the constitutional violations suffered by Plaintiff as alleged herein.

373. Defendants, collectively and individually, were directly and actively involved in violating Plaintiff's constitutional rights.

374. Wherefore, Plaintiff demands judgment against the Defendant as follows:

    a)  Compensatory damages;

    b)  Punitive damages;

    c)  Attorney fees;

    d)  Interest, and

    e)  for such other relief as the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Jane Doe prays the Court grant the following for relief:

Declaratory relief, finding that the Defendants violated the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the New Mexico State Constitution Article II, Bill of Rights, Section 18, and the New Mexico Human Rights Act, Articles 1, 7, and 10 pursuant to 28 U.S.C. § 1367.

a)      Enter a judgment for compensatory damages in favor of the Plaintiff in the amount proven at trial before a jury that would fully compensate the Plaintiff for the alleged injuries resulting from the Defendants' mal conduct.

b)      Enjoin the Defendants from sustaining and from reporting unverified records of improper examination results asserted to be the Plaintiff's received under discriminatory conditions.

c)      Alleviation by the Defendants because of their continuing consequences for their discriminatory test administration, processing, scoring, and reporting wrongfully encumbering the Plaintiff's encore vocation.

375.   Award reasonable attorneys' fees and court costs for Plaintiff.

376.   Grant such other relief as it deems just and equitable.

## **JURY DEMAND**

377.   Plaintiff hereby demands a trial by jury on all issues.

Dated: July 30, 2021

Respectfully submitted,

*/s/ Taylor Zangara, Attorney at Law*
Taylor Zangara, Esq.
Zangara Law Office, P. A.
215 Beimer Street
Taos, New Mexico 87571
+1 (575) 770 4770
taylor@zangaralaw.com

*and*

_/s/ Lisa Cleveland, Attorney at Law_
Lisa Cleveland, Esq.
Cooke Chevalier, LLC
2626 East 14th Street
Suite 205
Brooklyn, NY 11235
+1 (917) 971 0401
lisac@cookechevalier.com
_Counsels for the Plaintiff_