IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DR. PERRY SPANN,

    Plaintiff,

v.                                              No. 1:21-CV-00709-MIS-SCY

THE NEW MEXICO BOARD OF
BAR EXAMINERS, and THE NATIONAL
CONFERENCE OF BAR EXAMINERS, *et al.*,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION REGARDING THE NCBE DEFENDANTS' MOTION TO DISMISS

Plaintiff Perry Spann brings this lawsuit against the New Mexico Board of Bar Examiners ("NMBBE") and its individual members, and the National Conference of Bar Examiners ("NCBE") and its individual members, alleging discrimination and other violations following her sitting for the bar exam. Presently before the Court is a Motion to Dismiss, filed by the NCBE[1] and the 14 individual defendants[2] associated with the NCBE. Doc. 109; *see also* Doc. 118 (response); Doc. 119 (reply). The Honorable Margaret Strickland referred this matter to me

---

[1] In the caption of her complaint, Plaintiff refers to "The National Conference of Bar Examiners Board of Trustees and Officers," but in the body of her complaint she exclusively refers to the "National Conference of Bar Examiners." *See generally* Doc. 38. The Court therefore refers to the entity defendant as "the National Conference of Bar Examiners."

[2] Those individual defendants are Suzanne Richards, Hulett H. Askew, Timothy Wong, John McAlary, Judith Gundersen, Scott Bales, Arlene Coleman, Solomon Oliver, Augustin Rivera, Darin Scheer, Anthony Simon, Ann A. Scott Timmer, Marilyn Wellington, and Brad Gilbert. Sophie Martin is listed as a defendant twice, associated with both the NCBE and the NMBBE. Doc. 38 ¶¶ 9, 46. As such, in this PFRD I will only consider the claims against Defendant Martin in her role with the NCBE. Lastly, Plaintiff sues the individual defendants in their individual and official capacities. Doc. 38 ¶ 7.

pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 128.

The NCBE Defendants move to dismiss all counts brought against them in Plaintiff's complaint on alternative grounds: (1) under Rule 12(b)(2) because this Court lacks personal jurisdiction over those defendants; (2) under Rule 8 because Plaintiff's complaint fails to provide a short and plain statement of her claims; or (3) under Rule 12(b)(6) because Plaintiff's complaint fails to state a claim against them on any count. I agree with Defendants that this Court lacks personal jurisdiction over them. Without jurisdiction over the Defendants, this Court cannot render a ruling on the merits of the case. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) ("Because a court without jurisdiction over the parties cannot render a valid judgment, we must address Defendants' personal jurisdiction argument before reaching the merits of the case."). As such, I recommend that the Court grant the NCBE's motion to dismiss for lack of personal jurisdiction and not address Defendants' alternative arguments for failure to state a claim.

**FACTUAL BACKGROUND**

In Plaintiff's Third Amended Complaint (Doc. 38),[3] she alleges the following. She resides in Baton Rouge, Louisiana and has permanent pulmonary disabilities. Doc. 38 ¶¶ 4, 60. She began law school in October 2014 and graduated in May 2018. *Id.* ¶¶ 62, 63. Plaintiff prepared to take the Multistate Professional Responsibility Exam ("MPRE") and the Uniform Bar Examination ("UBE") in order to become a licensed attorney. *Id.* ¶ 63. She requested

---

[3] At the direction of the Court, Plaintiff refiled her Third Amended Complaint, using her real name instead of a pseudonym. Doc. 103. Other than adding her name, the later filing does not change the third amended complaint, and so the Court will cite the allegations made in her original Third Amended Complaint (Doc. 38).

accommodations for the August 11, 2018 MPRE, which the NCBE denied. *Id.* ¶¶ 64-66. She took the test anyways and afterwards, contacted Brad Gilbert, counsel for NCBE, and Judith Gunderson, CEO/President of NCBE to report disruptive testing irregularities. *Id.* ¶¶ 66-67. In September 2018 "a requirement from the Law School Admission Counsel, which partnered with the NCBE to administer the exam then, caused the NCBE to via Brad Gilbert, Esq. to reply to [sic] invalidate the compromised exam." *Id.* ¶ 68. On November 5, 2018, Plaintiff retook the MPRE and earned a passing score acceptable in all United States jurisdictions. *Id.*

On August 10, 2019, Plaintiff took the UBE in Washington but "there was failure to ensure reasonable accommodations, such as inoperative facilities and consistent commotion." *Id.* ¶ 69. She reported these problems to Brad Gilbert, but he failed to respond. *Id.* ¶ 70.

In September 2019 Plaintiff applied to complete the bar exam as a Courtesy Seater[4] in New Mexico, with certain testing accommodations—to wear warm clothing, to wear a medical mask, seated alone in a distraction free from away from air vents, minimal exposure to bacteria, 50% additional testing time that concludes daily by 4:00 p.m., use of medical aids such as an inhaler, magnifier, or eye drops, 18 point font on printed materials, and writing multiple choice answer on a sheet of paper. *Id.* ¶¶ 71, 73. In November 2019, Sophie Martin communicated that the accommodations were not feasible.[5] *Id.* ¶ 74. Plaintiff alleges that, although the NMBBE did

---

[4] Plaintiff's complaint does not define Courtesy Seater, but in their motion, the NCBE Defendants explain that "[w]hen permitted by a jurisdiction, courtesy seating allows an applicant to sit for the UBE in a jurisdiction without having the intention to seek admission in that jurisdiction, as long as the applicant is a bona fide candidate for admission in another jurisdiction that has adopted the UBE." Doc. 109 at 15 n. 9.

[5] Plaintiff does not clarify in her complaint whether Defendant Martin was acting in her capacity as member and Executive Director of NMBBE or as director of Communications and Education with the NCBE when she failed to offer Plaintiff the accommodations Plaintiff requested for the NM bar exam. *See* Doc. 38 ¶¶ 74, 83. However, the following allegations in the complaint discuss the NMBBE's failure to offer Plaintiff's requested accommodations, with no mention of the NCBE, *id.* ¶¶ 76-86; *id.* at 15-16 ¶¶ 71-77, so it is reasonable to infer that the allegations

agree to offer her many of her requested accommodations, it ultimately failed to offer her all necessary accommodations for the bar exam (which took place from February 25-28, 2020) and that the NMBBE caused other complications before the bar exam. *Id.* ¶¶ 76-86, 153; *id.* at 15-16 ¶¶ 71-77.[6]

Specifically, Plaintiff alleges that the testing room was cold with "frigid temperatures in 20-to-40 degree winter weather", had unsafe broken electrical wires, electrical shortages, sparking light fixtures, no heat, mold spores, visible mildew, dim flickering fluorescent lights, abruptly expiring lights, loud HVAC and construction noises, and airborne contaminants blowing directly on Plaintiff from the air conditioning furnace. *Id.* ¶¶ 154, 159, 161. Plaintiff was relocated to a different room during the testing, but it was not any better than the last. *Id.* ¶¶ 207, 217-18. Unlike other accommodated peers, Plaintiff was not told ahead of time the testing center's location, making it difficult and expensive for her to plan lodging and transportation. *Id.* ¶¶ 282-83, 285-86, 288, 290-91. Lastly, the test booklets did not all contain 18 point font. *Id.* ¶ 186.

During the exam, Plaintiff filed daily testing complaints with the on-site NCBE Test Administrator and NMBBE UBE Test Proctor. *Id.* at 16-17 ¶ 78; *id.* ¶ 98. The NCBE Test Administrator instructed Plaintiff to email her grievances, which she did on February 29, 2020. *Id.* at 17 ¶ 80; *id.* ¶¶ 254-55. The NCBE Test Administrator assured Plaintiff that Defendant Martin would contact her to discuss the grievances before exam scoring began, but Plaintiff

---

against Defendant Martin in paragraphs 74, 83, 76 (on page 16) relate to her capacity with the NMBBE.

[6] Plaintiff's complaint repeats the numbers 71-86 in her numbered allegations. *See* Doc. 38 at 13-18. When referring to the numbers used for the second time, I will include the page number along with the paragraph number.

received her score on April 14, 2020, before either the NMBBE or the NCBE addressed her testing grievances. *Id.* at 17 ¶¶ 79, 82-83. Plaintiff also asserts that during the testing in February 2020, she reported a fellow examinee for violating the NMBBE's policy on what was allowed in the testing room—the examinee had a hard laptop shell, which was a prohibited item—but NMBBE did not investigate her report and that examinee passed the bar exam. *Id.* ¶¶ 300, 305. Lastly, Plaintiff alleges that the scoring of her bar exam was improper, which she reported to the NMBBE and the NCBE in the summer of 2020. *Id.* at 17 ¶ 84. The NCBE's legal counsel, Defendant Brad Gilbert, informed Plaintiff in September, October, and November of 2020 that the NMBBE is responsible for accommodations and ADA violations. *Id.* at 17 ¶ 81. To date, the NMBBE and the NCBE have failed to properly score Plaintiff's bar exam and failed to address her grievances regarding testing accommodations and the prohibited item brought to testing by a fellow examinee. *Id.* at 18 ¶ 86; *id.* ¶¶ 257-58, 312.

Plaintiff's complaint brings 14 counts against all Defendants: (1) Violations of the Americans with Disabilities Act ("ADA"); (2) Violation of Section 504 of the Rehabilitation Act; (3) Violations of the ADA and Violations of the NMBBE's Testing Accommodations Agreement; (4) Breach of the Restatement (Second) of Contracts of the NMBBE's Testing Accommodations Policy Under the ADA; (5) Breach of Restatement (Second of Contracts) of the NMBBE's What to Bring and What Not to Bring Prohibition Policy Under the ADA; (6) Tortious Conduct of Negligent Hiring; (7) Conflict of Interest; (8) Continuing Violations Doctrine; (9) Violations of the New Mexico Human Rights Act; (10) Violations of the New Mexico Civil Rights Act; (11) Section 1983 Conspiracy; (12) Failure to Intervene; (13) Municipal Liability; and (14) Attorney's Fees.

## MOTION FOR SURREPLY

As an initial matter, following briefing on the motion to dismiss, Plaintiff filed a Motion for Leave to File Surreply, Doc. 123, attaching her proposed surreply, Doc. 123-1. The NCBE Defendants oppose her request to file a surreply. Doc. 125. "The filing of a surreply requires leave of the Court." D.N.M. LR-Civ. 7.4(b). "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." *Navajo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell*, 110 F. Supp. 3d 1140, 1180 (D.N.M. 2015).

Plaintiff points to four arguments that she asserts Defendants raised for the first time in reply: (1) that "Plaintiff is not consistent with Federal Rule of Civil Procedure 1"; (2) that Plaintiff must come forward with her own sworn testimony; and (3) and (4) that the Court lacks general jurisdiction. Doc. 123 at 2. But these arguments are not new. First, Defendants cite Rule 1 in their reply simply to argue that the Court should dismiss claims against the NCBE Defendants consistent with Rule 1 "to secure the just, speedy, and inexpensive determination of every action." Doc. 119 at 3. This is an introduction to the same arguments Defendants made in their opening brief. Second, in arguing that Plaintiff did not come forward with her own affidavits, Defendants were pointing out a deficiency in Plaintiff's response rather than raising a new argument. Indeed, Defendants could not have anticipated in their opening brief how Plaintiff might respond to their affidavits and so also could not have addressed how Plaintiff's yet-to-be-filed response would be deficient.[7] Lastly, Defendants discussed general jurisdiction in their opening brief, even titling that section of their brief, "The Court lacks general jurisdiction over the NCBE Defendants." Doc. 109 at 12. In her surreply (attached to her motion for leave to file

---

[7] In Plaintiff's proposed surreply, she still does not include an affidavit to controvert Defendants' affidavits. Instead, Plaintiff argues, contrary to Tenth Circuit case law, that "the complaint trumps the affidavits." Doc. 123-1 at 9.

surreply), instead of addressing the "new" arguments she pointed out in her motion, Plaintiff repeats many arguments she previously made, such as that the NCBE owns the MPRE and UBE, that the Court has specific and general jurisdiction, and that her complaint survives scrutiny under Rules 8 and 12. Doc. 122-1 at 2, 4, 10. She also makes a new argument herself, that discovery is necessary before a ruling on this motion. *Id.* at 2.

Because Plaintiff points to no new arguments in the reply that necessitate a surreply, I recommend denying her motion for surreply. If the presiding judge disagrees and grants the motion for surreply, I have reviewed the proposed surreply and it does not change my recommendations regarding personal jurisdiction.

## LEGAL STANDARD

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* A district court may determine whether the plaintiff has made a prima facie showing without holding an evidentiary hearing. *OMI Holdings*, 149 F.3d at 1091. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 733. "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*

7

As a starting point, Plaintiff's complaint alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 over her claims arising from the American with Disabilities Act, the Rehabilitation Act, Section 1983, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over her claims arising from the New Mexico Human Rights Act.[8] Doc. 38 ¶ 1. "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (internal quotation marks and citations omitted). In federal question cases "where jurisdiction is invoked based on nationwide service of process", the court must look to the due process considerations under the Fifth Amendment. *Id.* at 1318. That is, "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (internal quotation marks and citation omitted).

The parties make no argument, and I am aware of no authority, that the applicable federal statutes (the ADA, Rehabilitation Act, and Section 1983) authorize nationwide service. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) ("Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims, Fed.R.Civ.P. 4(k)(1)(A) refers us to the New Mexico long-arm statute, which is coextensive with constitutional limitations imposed by the Due Process Clause."); *Diaz-Oropeza v. Riverside Red X, Inc.*, No. 11-2012-JTM, 2011 WL 2580167, at *2 n.2 (D. Kan. June

---

[8] In response to the motion to dismiss, Plaintiff argues that the Court has diversity jurisdiction. Doc. 118 at 8-9. However, no allegations of diversity jurisdiction appear in her complaint.

28, 2011) ("Additionally, the Americans with Disabilities Act does not provide for nationwide service of process."). Without federal statutory authorization for nationwide service, the Court need not conduct a Fifth Amendment analysis. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006).

"In the absence of federal authorization for nationwide service, the district court turn[s] to state law." *Id.* at 1233 (10th Cir. 2006); *see also* Fed. R. Civ. P. 4(k)(1) (authorizing service under a state's long arm statute). New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 48 P.3d 50. Thus, the Court "need not conduct a statutory analysis apart from the due process analysis." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (internal quotation marks omitted). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Additionally, the due process analysis requires the court to ensure that that exercise of jurisdiction over a defendant "does not offend 'traditional notions of fair play and substantial justice.'" *Marcus Food Co.*, 671 F.3d at 1167 (quoting *World-Wide Volkswagon Corp*, 444 U.S. at 292).

"The 'minimum contacts' standard may be met in two ways"; namely, by establishing general or specific jurisdiction. *Intercon, Inc.*, 205 F.3d at 1247. General jurisdiction requires "affiliations with the State [that] are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *see also Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) ("Because

9

general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.").

"Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008). In other words, a defendant must "'purposefully avail[]' himself of the protections or benefits of the state's laws and 'should reasonably anticipate being haled into court there.'" *Marcus Food Co.*, 671 F.3d at 1166 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76 (1985)). "The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 904 (internal quotation marks and citations omitted). The Supreme Court has made clear that specific jurisdiction "demands that the suit arise out of *or* relate to the defendant's contacts with the forum", meaning a causal link is not required between the plaintiff's injuries and the defendant's forum-related activities. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1019 (2021) (internal quotation marks and citation omitted) (emphasis added); *see id.* at 1026 ("But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.,* proof that the plaintiff's claim came about because of the defendant's in-state conduct.").

As to traditional notions of fair play and substantial justice, the Court must consider five factors in determining whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Marcus Food Co*, 671 F.3d at 1167.

## ANALYSIS

As an initial matter, Defendants focus their argument on minimum contacts and do not discuss traditional notions of fair play and substantial justice. Because, as discussed below, I recommend finding that the NCBE Defendants do not have sufficient minimum contacts with New Mexico to support either general or specific jurisdiction, I also recommend that the Court need not address traditional notions of fair play and substantial justice.

Additionally, as an initial matter, the NCBE Defendants attached affidavits from the individually named Defendants in order to support their arguments that they do not have sufficient minimum contacts with the forum state (New Mexico). Docs. 109-1 to 109-14. Plaintiff argues that Defendants tried to "make-up" affidavits to defeat jurisdiction, but she fails to state which information in the affidavits she believes is false. She also argues that the Court must accept all well-pleaded allegations in the complaint as true. Plaintiff would be correct if the Court were considering Defendants' 12(b)(6) arguments for failure to state a claim. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) ("[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." (internal quotation marks and citation omitted)). But when addressing personal jurisdiction, a defendant may submit affidavits or other written material and "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 733. To that end, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Id.* However, here,

11

Plaintiff did not provide any conflicting affidavits, so the Court should accept as true the allegations in her complaint only to the extent they are not controverted by Defendants' affidavits.

1. **General Jurisdiction**

Looking first at the NCBE itself, the complaint alleges that the NCBE is headquartered in Madison, Wisconsin, that it composes the components of the Uniform Bar Exam ("UBE"), and that it "scores all examinations under its purview." Doc. 38 ¶¶ 50-52, 55-56. Indeed, Defendants confirm in affidavits that the NCBE is incorporated in Illinois and headquartered in Wisconsin. Doc. 109-1 ¶ 3 (Gundersen Aff.); Doc. 109-2 ¶ 2 (Gilbert Aff.). The NCBE does not own or lease property in New Mexico and has only two employees who live in New Mexico and work remotely.[9] Doc. 109-1 ¶ 4. Defendants further clarify that, contrary to the allegations in the complaint, the bar exam components are purchased from the NCBE by more than 50 jurisdictions and the specific jurisdictions, not the NCBE, administer their bar exams, including the UBE. Doc. 109-1 ¶¶ 6-8, 11; Doc. 109-2 ¶¶ 5-8. New Mexico is one of many jurisdictions that purchases bar exam components from the NCBE as part of New Mexico's bar exam. Doc. 109-1 ¶ 7. Unlike the UBE, the NCBE does administer the MPRE and administers it in every United States jurisdiction. Doc. 109-1 ¶¶ 14-15.

---

[9] Plaintiff asserts that "[b]y the NCBE admitting it has remote employees working in New Mexico . . . the state of New Mexico has jurisdiction to adjudicate this legal matter." Doc. 118 at 9 n.5. To the extent Plaintiff is arguing that this Court has general jurisdiction over the NCBE Defendants because two NCBE employees work remotely from New Mexico, I recommend rejecting this argument. Plaintiff provides no authority to support such a proposition and Supreme Court precedent indicates that two remote employees in the state does not make the NCBE "at home" in New Mexico. *See Ford Motor Co.*, 141 S. Ct. at 1024 (reiterating that a corporation is subject to general jurisdiction in its place of incorporation and principal place of business, with the "possibility that in an exceptional case a corporation might also be 'at home' elsewhere").

None of these activities show that the NCBE has systematic and continuous contact with New Mexico. Plaintiff's *only* argument regarding general jurisdiction is that "if the Court selected to favor general jurisdiction, the NCBE does have continual business operations in New Mexico that are so substantial to justify this suit, as there is little that would be more substantial than licensing individuals to 'oversee' society through the profession of law." Doc. 118 at 7. But administering the MPRE in New Mexico, and in other United States jurisdictions, and selling the UBE to New Mexico, and to over 50 other jurisdictions, does not create "continual business operations" in New Mexico such that the NCBE is essentially at home in New Mexico.

The Eastern District of New York reached a similar conclusion in a case against the NCBE, holding that subjecting the NCBE to jurisdiction in New York because it develops and administers bar-related exams that are used in New York "would subject the NCBE to limitless general jurisdiction across the country." *Doe v. Nat'l Conf. of Bar Examiners*, No. 1:16-CV-264 (PKC), 2017 WL 74715, at *6 (E.D.N.Y. Jan. 6, 2017). "The mere sale of exams to the New York bar authority, without any other physical presence in the State and without the sale constituting a large percentage of revenue for the NCBE, is insufficient to establish general jurisdiction under *Daimler* . . . ." *Id.* Such a conclusion also holds true here.

Regarding the NCBE individual Defendants, none live or work in New Mexico. *See* Docs. 109-1 to 109-14 (Affs. of individual NCBE Defendants). Plaintiff's complaint makes no allegations that they have continuous and systematic contact with New Mexico or that any are domiciled in New Mexico. *See Daimler AG*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (internal quotation marks and citation omitted)). Indeed, the complaint makes no allegations at all regarding most of the individual NCBE Defendants, other than to say that they are officers and trustees of the

13

NCBE.[10] Doc. 38 ¶¶ 31-46. Plaintiff also make no further arguments in the briefing regarding the individual defendants and general jurisdiction.

For these reasons, I recommend finding that Plaintiff has failed to make a prima facia case that the NCBE and the NCBE individual Defendants are subject to general jurisdiction in this Court.

### 2. Specific Jurisdiction

Because specific jurisdiction requires that the NCBE Defendants purposefully directed activities to New Mexico and that Plaintiff's injuries arise out of or relate to Defendants' forum-related activities, I will address the various facts in the complaint as they bear on the NCBE Defendants' activities. Plaintiff first alleges that she requested reasonable accommodations when sitting for the MPRE, which the NCBE denied. Doc. 38 ¶¶ 64-66. She also alleges that she reported disruptive testing irregulates from her MPRE sitting to Defendants Brad Gilbert and Judith Gundersen. *Id.* ¶¶ 67-68. The NCBE is responsible for administering the MPRE, including processing and deciding all requests for accommodations. Doc. 109-1 ¶¶ 14-15 (Gundersen Aff.); Doc. 109-2 ¶ 12(Gilbert Aff.). However, as Defendants point out and Plaintiff does not dispute, Plaintiff took the MPRE twice, both times in Louisiana. Doc. 109-2 ¶¶ 20-21. Further, when requesting accommodations for the MPRE, she interacted with NCBE staff who were located in Wisconsin. Doc. 109-2 ¶ 27. The NCBE's alleged failure to accommodate for the MPRE thus has no connection to the forum state, New Mexico, and the NCBE Defendants did not purposefully direct activities to New Mexico.

---

[10] The only specific allegations the complaint makes regarding individual NCBE Defendants is that Plaintiff reported MPRE irregularities to Defendants Brad Gilbert and Judith Gundersen, Doc. 38 ¶¶ 67-68, 70, that Defendant Gilbert blamed the NMBBE for any accommodation problems, *id.* ¶ 320, and that Defendant Gilbert has a conflict of interest, *id.* ¶ 334. None of these allegations demonstrate continuous and systematic contact with New Mexico.

14

Plaintiff's complaint next alleges that she took the bar exam in August 2019, that "there was a failure to ensure reasonable accommodations", that she reported these problems to Defendant Brad Gilbert, and that he failed to respond. Doc. 38 ¶¶ 69-70. But as Plaintiff alleges in her complaint, she took the August 2019 bar exam in Washington, not New Mexico. *Id.* ¶ 69. Thus again, Plaintiff does not allege that the NCBE Defendants purposefully directed activities to New Mexico related to her claims for failure to accommodate during the August 2019 Washington bar exam.

The thrust of Plaintiff's complaint alleges that Defendants failed to offer her proper accommodations during her sitting for the February 2020 bar exam in New Mexico. Looking first to the NCBE's forum-related activities, Defendants clarify in affidavits that the NMBBE, not the NCBE, is responsible for administering the New Mexico bar exam, including processing, and approving requests for accommodations. Doc. 109-2 ¶¶ 8-10 (Gilbert Aff.) Indeed, Plaintiff's complaint almost exclusively focuses on her dealing with the NMBBE to receive accommodations, Doc. 38 ¶¶ 74-86; *id.* at 15-16 ¶¶ 71-77, including an allegation that "[t]he NMBBE guaranteed, miscarried, and breached [] ADA testing accommodations," *id.* ¶ 75. Plaintiff makes no similar allegations regarding the NCBE. And the NCBE Defendants provide affidavits, which Plaintiff did not controvert in any conflicting affidavit or with other evidence, confirming that no NCBE employee was involved in accommodating Plaintiff for the New Mexico bar exam. Doc. 109-1 ¶ 11 (Gundersen Aff.); Doc. 109-2 ¶¶ 28-29 (Gilbert Aff.).

Plaintiff does allege in her complaint that she filed daily testing complaints with an on-site NCBE Test Administrator and NMBBE UBE Test Proctor and, following the exam, reported to the NMBBE and NCBE that the scoring of her exam was improper. Doc. 38 at 16-17 ¶¶ 78, 84. She alleges that, to date, the NMBBE and the NCBE have failed to properly score her bar

15

exam and failed to address her grievances regarding the testing. *Id.* at 18 ¶ 86; *id.* ¶¶ 257-58, 312. Defendants respond with affidavits disputing these allegations and explain that "[n]o NCBE staff members were involved in administering, supervising, or proctoring any part of the New Mexico bar examination taken by Ms. Spann in New Mexico, or in performing any other test-administration activities in New Mexico relating to Ms. Spann's taking the New Mexico bar examination." Doc. 109-2 ¶ 29 (Gilbert Aff.). Plaintiff presents no affidavit or other evidence to counter Defendants' affidavits. Instead, her complaint confirms that Defendant Brad Gilbert informed Plaintiff in September, October, and November of 2020 that the NMBBE is responsible for ADA violations and remedies. Doc. 38 at 17 ¶ 81.

In her briefing, Plaintiff asserts that this Court has specific jurisdiction over the NCBE Defendants because the NCBE "purposefully directed its activities at the forum state of New Mexico, which the NCBE did by decisively intending for their exams to be administered in New Mexico." Doc. 118 at 6. That is, Plaintiff alleges that this Court has personal jurisdiction over the NCBE because the NCBE contracted with the NMBBE for the sale of the bar exam, even if by the internet. Doc. 118 at 7, 9. Assuming without deciding that the NCBE Defendants did purposefully direct activities at New Mexico residents by selling bar exam components to the NMBBE, Plaintiff still fails to meet her burden on the second part of the specific jurisdiction test—Plaintiff's alleged injuries do not arise out of or relate to the NCBE Defendants' forum-related activities. Said another way, Plaintiff does not allege injuries related to the sale or even the contents of the exam. She alleges injuries related to the administration of the exam, which the NCBE had no part in.

In sum, Plaintiff has failed to make a prima facia showing that any of Plaintiff's alleged injuries arose out of or were related to NCBE activities directed at New Mexico. As such, I recommend finding that the Court does not have specific jurisdiction over the NCBE Defendants.

3. **Transfer**

If that Court agrees with my finding that this Court lacks personal jurisdiction over the NCBE Defendants, it must evaluate, *sua sponte*, whether to dismiss the claims against the NCBE Defendants without prejudice or transfer the claims to a court that does have personal jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."); *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) ("A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice."). Indeed, in *Trujillo*, the Tenth Circuit found that the district court abused its discretion by dismissing without prejudice certain claims for lack of personal jurisdiction without first determining whether those claims should be transferred. 465 F.3d at 1222-23. The Tenth Circuit held that "factors warranting transfer rather than dismissal, at least under § 1631, include finding that the new action would be time barred; that the claims are likely to have merit; and that the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Id.* at 1223 (internal quotation marks and citations omitted).

Considering these factors on balance, I recommend declining to transfer the case. There is no information in the record as to whether Plaintiff filed her action after she realized or should

have realized the forum was improper, so that factor weighs neutral. Whether a new action would be timed-barred weighs slightly in Plaintiff's favor. Given that she took the MPRE in 2018, the Washington bar in 2019, and the New Mexico bar in 2020, some of her claims may be time bared if refiled now. However, it is unclear what the statute of limitation would be for some of her claims, such as conflict of interest (count 7), continuing violations doctrine (count 8), failure to intervene (count 12), municipal liability (count 13), and attorney's fees (count 14). The last factor—the merits of the claims—weighs against transferring the case. "[A] court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 108 (10th Cir. 2012).[11] Having taken a peek at the merits, I find that Plaintiff's claims against the NCBE Defendants likely have no merit for several reasons: other than Defendants Gundersen and Gilbert, Plaintiff fails to mention any action taken by any individual Defendants; the NMBBE, not the NCBE, was responsible for administering, proctoring, and accommodating Plaintiff regarding the New Mexico bar exam; Plaintiff does not state how the NCBE failed to accommodate her for the MPRE or the Washington bar exam; and many of her claims (such as conflict of interest, continuing violations doctrine) do not appear to be valid causes of action or claims upon which relief can be granted.

Additionally, even assuming transfer is warranted, it is not at all clear which court would have personal jurisdiction over the NCBE Defendants and therefore which court should receive the case. As discussed above, Wisconsin or Illinois likely have general jurisdiction over the

---

[11] I cite unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

NCBE itself, but the individual NCBE Defendants, employees and volunteers for the NCBE, reside and work in a wide variety of states, including Georgia (Doc. 109-3 ¶ 6, Askew Aff.), Arizona (Doc. 109-4 ¶ 6, Bales Aff.), New York (Doc. 109-6 ¶ 6, McAlary Aff.), Ohio (Doc. 109-7 ¶ 6, Oliver Aff.), Texas (Doc. 109-9 ¶ 6, Rivera Aff.), Wyoming (Doc. 109-10 ¶ 6, Scheer Aff.), Mississippi (Doc. 109-11 ¶ 6, Simon Aff.), Massachusetts (Doc. 109-13 ¶ 6, Wellington Aff.), and Minnesota (Doc. 109-14 ¶ 6, Wong Aff.), making the general jurisdiction determination more difficult. As to specific jurisdiction, as discussed above, Plaintiff's claims stem from activities in Louisiana (where she took the MPRE), Wisconsin (where NCBE employees communicated with her about MPRE accommodations) and Washington (regarding the August 2019 bar exam).

Thus, I recommend finding that transferring claims to another jurisdiction would not serve the interests of justice.

## RECOMMENDATION

For the reasons stated above, I recommend DENYING Plaintiff's Motion for Leave to File Surreply (Doc. 123). I also recommend GRANTING the Motion to Dismiss by Defendants National Conference of Bar Examiners and Related Individual Defendants (Doc. 109) and dismissing Plaintiff's claims against the NCBE Defendants[12] without prejudice.

---

[12] The NCBE Defendants include the National Conference of Bar Examiners (or the National Conference of Bar Examiners Board of Trustees and Officers, as Plaintiff lists in the caption only), Suzanne Richards, Hulett H. Askew, Timothy Wong, John McAlary, Judith Gundersen, Scott Bales, Arlene Coleman, Solomon Oliver, Augustin Rivera, Darin Scheer, Anthony Simon, Ann A. Scott Timmer, Marilyn Wellington, Brad Gilbert, and Sophie Martin in her role as Director of Communications and Education with the NCBE.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**