**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DR. PERRY SPANN,

      Plaintiff,

v.                                                                No. 1:21-CV-00709-MIS-SCY

THE NEW MEXICO BOARD OF
BAR EXAMINERS, and THE NATIONAL
CONFERENCE OF BAR EXAMINERS, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Perry Spann brings this lawsuit against the New Mexico Board of Bar

Examiners ("NMBBE") and its individual members, and the National Conference of Bar

Examiners ("NCBE") and its individual members, alleging discrimination related to conditions

that existed when she took the New Mexico bar exam. Presently before the Court is her Motion

for Leave to File Fourth Amended Complaint. Doc. 157; *see also* Docs. 158 & 159 (responses);

Docs. 161 & 162 (replies). In briefing the motion to amend, Plaintiff and the NMBBE

Defendants rely on their arguments made in the pending motion for summary judgment as to

Plaintiff's claim for violation of Section 504 of the Rehabilitation Act. Thus, also before the

Court is "Motion by NMBBE-Related Defendants for Summary Judgment as to Second Cause of

Action" (Doc. 100; Doc. 110 (response); Doc. 115 (reply); Doc. 121 (surreply); Doc. 122

(objections to surreply)) and Plaintiff's Motion for Leave to File Surreply related to the Motion

for Summary Judgment (Doc. 124; Doc. 126 (response); Doc. 127 (reply)). The Honorable

Margaret Strickland referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) and

*Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 128. I

recommend granting the motion to amend in part, allowing Plaintiff to file a fourth amended

complaint that contains only the one count I find not to be futile, and granting summary judgment. Because I recommend granting the motion to amend in part, I also recommend that the Court deny as moot the pending motions to dismiss and related motions directed at the operative third amended complaint.

## INITIAL MATTERS

I begin this Proposed Findings and Recommended Disposition ("PFRD") by disposing of two initial matters. First, the NMBBE Defendants argue that Plaintiff violated Local Rule 7.1(a) by failing to confer before filing her motion to amend. Doc. 158 at 7. I recommend that the Court consider Plaintiff's motion on the merits rather than decline to do so based on a Rule 7.1(a) violation. Second, Plaintiff filed a motion to strike the NCBE's response to her motion to amend. I recommend that the Court deny this motion. I will address each in turn.

### 1.  Local Rule 7.1(a)

In their response to the motion to amend, the NMBBE Defendants argue that the Court should summarily deny Plaintiff's motion to amend because Plaintiff violated Local Rule 7.1(a). Doc. 158 at 7. Under that rule, the "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M. LR-Civ. 7.1(a).

I agree with Defendants that Plaintiff did not comply with Local Rule 7.1(a). In her motion to amend, Plaintiff recites that she "asked Defendants' attorneys via email if they would agree to the dismissal of the complaint without prejudice so that the Plaintiff could amend her complaint." Doc. 157 at 4. Plaintiff acknowledges that she did not confer with Defendants before filing her motion. Doc. 161 at 11-12. She explains, however, that because Defendants opposed

her request to dismiss her complaint without prejudice, she "determined that the Defendants would not concur to the filing of the motion to amend." *Id*. at 11.

Even though it might have been reasonable for Plaintiff to assume that Defendants would oppose her motion to amend, Plaintiff nonetheless also had a duty to confer before filing her motion in an attempt to narrow/clarify any disputes before bringing them to the Court. *See Sanders v. USAA Cas. Ins. Co.*, No. 19-CV-0895 KWR/SMV, 2020 WL 486978, at *4 (D.N.M. Jan. 30, 2020) ("Local Rule 7.1(a) . . . helps narrow the scope of briefing to the most important issues, promoting judicial efficiency and improving the quality of the briefs."). Asking Defendants if they would agree to her dismissing the operative complaint without prejudice so that she could amend is different than showing Defendants the motion to amend, with the actual proposed fourth amended complaint. Nonetheless, the Court retains discretion to decide a motion on its merits, despite a Rule 7.1(a) violation. *See* D.N.M. LR-Civ. 1.7 ("These [local] rules may be waived by a Judge to avoid injustice."). I recommend that the Court exercise such discretion and consider Plaintiff's motion on its merits.

### 2. Plaintiff's Motion to Strike

After the NCBE filed its response to Plaintiff's motion to amend, Plaintiff filed a "Motion to Strike Defendant NCBE's Opposition to Motion to Amend and For Sanctions." Doc. 163. As background, in her motion to amend, Plaintiff alleges that, on November 16, 2022, she retained a new attorney, Laurel J. Francoeur, to represent her. Doc. 157 at 1. In its response, the NCBE asserts, in a footnote, that Ms. Francoeur is "not a 'new attorney' for Ms. Spann with regard to events that Ms. Spann has referenced in this case" because Ms. Francoeur wrote a letter to the NCBE in 2018 as counsel for Plaintiff. Doc. 159 at 2 n.1. In the present motion to strike, Plaintiff argues that Ms. Francoeur is indeed new to the case. Plaintiff thus moves to strike the

entirety of the NCBE's response to the motion to amend under Rule 11 "as the document was maliciously filed with the intent of libeling, embarrassing and harassing Attorney Francoeur without any basis in fact." Doc. 163.

> Federal Rule of Civil Procedure 11(b) provides that
>
> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Plaintiff does not specifically state which section of Rule 11 she believes the NCBE violated, but I recommend finding that the NCBE did not violate any part of Rule 11.[1]

Plaintiff argues that the NCBE "suggests incorrectly that Attorney Francoeur has been working on Plaintiff's case continuously since 2018." Doc. 163 at 1. Plaintiff alleges that counsel for the NCBE did not contact Ms. Francoeur before making such a statement in the response brief and therefore "made no meaningful inquiry into the accuracy of validity of the claims

---

[1] Plaintiff also fails to explain how one statement, made in a footnote to a 7-page brief, justifies striking the entire brief.

before he put them in a public pleading." Doc. 163 at 2 (cleaned up). Plaintiff then presents her argument as to why attorney Francoeur is "new" to her case. Doc. 163 at 1-2.

I disagree that the NCBE made an incorrect statement. The NCBE stated that, although Plaintiff alleges she retained Ms. Francoeur on November 16, 2022, the NCBE received a letter from Ms. Francoeur in 2018 on behalf of Plaintiff and that "[t]he extent of [Ms. Francoeur's] involvement in this lawsuit (if any) prior to entering an appearance is unknown, but she clearly is not a 'new attorney' for Ms. Spann with regard to events that Ms. Spann has references in this case, relating to Ms. Spann's request for accommodations on the [MPRE]." Doc. 159 at 2 n.1. In other words, the NCBE reasonably used the information it had in its possession to dispute Plaintiff's characterization of Ms. Francoeur as Plaintiff's "new" attorney. Further, even assuming the NCBE should not have characterized Ms. Francoeur as Plaintiff's "new" attorney, such characterization would not constitute grounds to strike the NCBE's brief.

Plaintiff also "objects to [the NCBE's counsel] putting Attorney Francoeur's name in quotation marks which is offensive and done for the sole purpose to embarrass and harass Attorney Francoeur by insinuating that either Attorney Francoeur is not an attorney or is not honest." Doc. 163 at 2 (citing Doc. 159 at 5). The part of the NCBE's response that Plaintiff cites read as follows: "The 'additional evidence' 'discovered' by 'Attorney Francoeur' purportedly shows that 'NCBE tightly controls the protocols of its UBE exam [(Uniform Bar Examination)] so that its administration in each state remains uniform,' and that 'defendant NMBBE could not have approved of Plaintiff's accommodations without first having received permission from Defendant NCBE to deviate from its established security protocols.' Pl. Motion at 1-2." Doc. 159 at 5. In context, it is clear that the NCBE did not put "Attorney Francoeur" in quotes to insinuate

anything against her, but instead put "Attorney Francoeur" in quotes, along with multiple other words, in order to indicate the phrases were directly from Plaintiff's motion.

In sum, I recommend finding that the NCBE reasonably used information in its possession to dispute the characterization of Plaintiff's attorney as new. Such an argument does not violate Rule 11 and the Court should therefore deny Plaintiff's motion to strike (Doc. 163).

## BACKGROUND

### 1. Procedural Background

Plaintiff filed her original complaint on July 30, 2021, naming the NMBBE and the NCBE.[2] Doc. 1. On August 17, 2021, before any Defendant entered the case, Plaintiff filed her first amended complaint.[3] Doc. 15.

On August 28, 2021, similarly before any Defendant entered the case, Plaintiff filed a motion for leave to file her second amended complaint. Doc. 21. The Court denied that motion without prejudice because Plaintiff failed to attach her proposed second amended complaint to her motion. Doc. 24. Thereafter, Plaintiff refiled her motion, this time attaching her proposed

---

[2] It is unclear if Plaintiff meant to name the individual Defendants in this complaint as she listed them in the body of the complaint as parties but not in the case caption. *See* Doc. 1 at 1, 3-6.

[3] As with the original complaint, this first amended complaint does not list the individual Defendants in the case caption. Doc. 15. It also does not contain a title, such as "First Amended Complaint." *Id.*

second amended complaint. Doc. 25. The Court granted this motion (Doc. 26)[4] and on

September 30, 2021, Plaintiff filed her second amended complaint (Doc. 34).[5]

On October 7, 2021, before any Defendant entered the case, Plaintiff filed a motion for

leave to file her third amended complaint (Doc. 36) and, instead of attaching her proposed third

amended complaint to her motion, she filed her third amended complaint on the docket (Doc.

38). On October 8, 2021, the Court granted her motion to amend and accepted her third amended

complaint (Doc. 38) as properly filed on the docket.[6] Doc. 39. Thus, Plaintiff's third amended

complaint (Doc. 38) is the operative complaint.[7]

On November 11, 2021, counsel appeared on behalf of the NMBBE and related

individual Defendants (Doc. 84) and filed a motion to dismiss Plaintiff's third amended

complaint for failure to state a claim based in part on qualified immunity (Doc. 86). The

NMBBE Defendants also moved to stay discovery, given the pending qualified immunity

motion. Doc. 93. The Court granted this motion, staying all discovery pending resolution of the

---

[4] Plaintiff failed to file her second amended complaint on the docket by the deadline set in the
Order Granting Leave to Amend and so the Court had to issue another order reminding Plaintiff
and setting another deadline for her to file her second amended complaint. Doc. 30.

[5] As with the original and first amended complaint, the second amended complaint does not list
the individual Defendants in the case caption. Doc. 34. It also does not contain a title, such as
"Second Amended Complaint." *Id.*

[6] As with her other complaints, the third amended complaint does not contain a title, so it is not
immediately apparent, until after examining the case history, that this document is the third
amended complaint. *See* Doc. 38.

[7] Plaintiff filed all her complaints under the pseudonym "Jane Doe." At the direction of the Court
(Doc. 6), she filed a Petition for Permission to File Anonymously (Doc. 12), which Defendants
later opposed (Docs. 92, 94). The Court denied Plaintiff's request to proceed anonymously and
order her to re-file her third amended complaint on the docket under her name. Doc. 96. Plaintiff
did so on December 3, 2021. Doc. 102. Other than adding Plaintiff's name, this latter filing does
not change the third amended complaint, and so I will treat the original third amended complaint
(Doc. 38) as the operative complaint.

7

motion to dismiss. Doc. 112. In response to the motion to dismiss, Plaintiff filed a motion to strike the motion to dismiss. Doc. 95. The NMBBE Defendants then filed a motion for summary judgment as to Plaintiff's second cause of action under the Rehabilitation Act (Doc. 100) and a second motion to dismiss related to Plaintiff's ADA claims (Doc. 129). After briefing those motions, Plaintiff filed a motion for leave to file a surreply regarding the motion for summary judgment (Doc. 124) and a motion to conduct discovery related the NMBBE Defendants' motion to dismiss (Doc. 135).

On November 16, 2021, counsel appeared on behalf of the NCBE and related individual Defendants. Doc. 88. Shortly thereafter, the NCBE Defendants filed a motion to dismiss for lack of personal jurisdiction. Doc. 109. On March 22, 2022, the Honorable Margaret Strickland referred this case to me (Doc. 128) and I entered a Proposed Finding and Recommended Disposition ("PFRD") on August 10, 2022 regarding the NCBE Defendants' motion to dismiss (Doc. 141). The Court adopted that PFRD and dismissed, without prejudice, the NCBE Defendants for lack of personal jurisdiction. Doc. 145.

Turning to motions related to the NMBBE Defendants, several motions are pending. These NMBBE-related motions can be categorized in two groups. The first category relates to the NMBBE Defendants' motions to dismiss directed at the third amended complaint and Plaintiff's related motions, namely: (1) the NMBBE Defendants' Motion to Dismiss Third Amended Complaint Based in Part on Qualified Immunity (Doc. 86); (2) Plaintiff's Motion to Strike the Motion to Dismiss Third Amended Complaint Based in Part on Qualified Immunity (Doc. 95); (3) Motion by the NMBBE-Related Defendants to Dismiss with Prejudice ADA Claims (Doc. 129); (4) Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Reply in Support of (Second) Motion to Dismiss with Prejudice ADA Claims (Doc.

133-1); and (5) Plaintiff's Motion for Leave to Conduct Discovery Limited to the Issue of

Jurisdiction (Doc. 135). The second category relates to the NMBBE Defendants' motion for

summary judgment and Plaintiff's motion to file a surreply, namely: (1) Motion by NMBBE-

Related Defendants for Summary Judgment as to the Second Cause of Action (Doc. 100); and

(2) Plaintiff's Motion for Leave to File a Surreply (Doc. 124).

 After all the above motions were filed, the Court temporarily lost jurisdiction in this case

as a result of an appeal Plaintiff filed with the Tenth Circuit (appealing the Court's Order as to

the NCBE Defendants). Doc. 146. The Court regained jurisdiction on November 9, 2022, when

the Tenth Circuit dismissed the appeal on an unopposed motion from the parties. Doc. 155.

Plaintiff then filed the present motion for leave to file a fourth amended complaint. Doc. 157.

The proposed fourth amended complaint attempts to bring claims against the NMBBE and

Defendant Sophie Martin (but drops all other NMBBE individual defendants) and the NCBE

(but drops all individual NCBE defendants). Doc. 157-1.

### 2. Focus of the Present PFRD

 Rather than addressing the various pending motions in the order they were filed, I focus

this PFRD on motions that relate to Plaintiff's motion to amend (to file a fourth amended

complaint) and the NMBBE Defendants' motion for summary judgment on Plaintiff's Section

504 of the Rehabilitation Act claim. I do so because if the presiding judge grants the pending

motion to amend, Plaintiff's operative complaint will become the fourth amended complaint,

thereby mooting the NMBBE Defendants' motions to dismiss and Plaintiff's related motions

directed at the third amended complaint. *See, e.g.*, *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320,

1323–24 (D. Colo. 2019) ("It is well-established that an amended complaint supersedes the

original complaint and renders the original complaint of no legal effect. Because the original

complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot.") (cleaned up).

When addressing the motion to amend, I will look separately at the claims in the proposed fourth amended complaint alleged against the NCBE and against the NMBBE Defendants. I do so because the Defendants are in different procedural postures—the Court has already dismissed the NCBE; in contrast, the NMBBE Defendants remain active participants. This difference impacts the amendment analysis (such as good cause and timeliness) as to each defendant.

Lastly, when addressing the motion to amend as to claims against the NMBBE Defendants, I will also consider the NMBBE Defendants' motion for summary judgment. The parties incorporate their summary judgment briefing into the present motion to amend. Specifically, the NMBBE Defendants argue Plaintiff's claim under Section 504 in the proposed fourth amended complaint is futile given the arguments in its summary judgment motion. And, granting Plaintiff's motion to file a fourth amended complaint will not moot the NMBBE Defendants' motion for summary judgment. Unlike a motion to dismiss, which requires the Court to accept the factual allegations in the complaint as true, *see Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012), and thus is dependent on the operative complaint, a motion for summary judgment relies on evidence in the record to reach undisputed material facts, *see* Fed. R. Civ. P. 56(c). Here, the NMBBE Defendants' motion for summary judgment is directed at Plaintiff's claim under Section 504 of the Rehabilitation Act (*see* Doc. 100) and that claim appears in her proposed fourth amended complaint against the NMBBE in the same form as it appeared in her third amended complaint. *Compare* Doc. 38 at 25-27, *with* Doc. 157-1 at

20-21. As such, the summary judgment analysis is intertwined with the futility analysis, making the summary judgment motion ripe for review in this PFRD.

Because recitation of the facts will vary depending on whether the facts are viewed through the lens of a motion to dismiss or a motion for summary judgment, I will discuss the factual allegations relevant to each motion below when addressing that specific motion.

### LEGAL STANDARD: MOTION TO AMEND

A plaintiff may amend her complaint once as a matter of course, after which she must seek consent from the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* The motivation underlying this rule is to "provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted). However, a court may deny leave based on reasons such as undue delay, bad faith, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (internal citation omitted).[8]

---

[8] As mentioned above, discovery in this case has thus far been stayed. Doc. 112. Consequently, there is no operative deadline to amend the pleadings, and it is not necessary to consider whether Plaintiff has established good cause to amend such a deadline. *Cf. Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014) (a party seeking to amend the pleadings after the scheduling-order deadline must both demonstrate good cause to amend the scheduling order as required by Federal Rule of Civil Procedure 16(b) and satisfy the requirements for amendment under Federal Rule of Civil Procedure 15(a)).

## MOTION TO AMEND AS TO THE NCBE

Although the Court has dismissed the NCBE from this case, Plaintiff now attempts to bring it back through her proposed fourth amended complaint and argues that she should be allowed to conduct jurisdictional discovery related to the NCBE. In the prior PFRD (as adopted by the Court) I found that the Court lacks personal jurisdiction over the NCBE Defendants because Plaintiff failed to make a prima facia showing that her alleged injuries arose out of or were related to NCBE activities directed at New Mexico. Doc. 141 at 17. In particular, the PFRD found that Plaintiff failed to controvert the NCBE Defendants' affidavits that the NMBBE, not the NCBE, was responsible for Plaintiff's accommodations for the New Mexico bar exam. *Id.* at 15. In her present motion to amend, Plaintiff argues that, on November 16, 2022, she retained a new attorney and that attorney found new evidence which indicates that the NCBE had control over the accommodations the NMBBE offered her. Doc. 157 at 1-2. Plaintiff also argues that the NCBE will not be prejudiced by the amendment because (1) the amendment will not cause a further delay of the proceedings given that discovery has not yet even begun, and (2) the claims against the NCBE were dismissed without prejudice so Plaintiff's right to bring a new complaint against the NCBE is preserved. *Id.* at 2-3.

The NCBE opposes the motion to amend, arguing that Plaintiff's attorney is not new to the case, as she sent a letter to the NCBE on behalf of Plaintiff in 2018,[9] and that the purported-newly discovered evidence is public-record evidence from a 2011 case. Doc. 159 at 2. Thus, it argues that Plaintiff has already had a sufficient opportunity to assert meritorious claims (in any or all of her four preceding complaints), that she has unduly delayed seeking to file the present

---

[9] Plaintiff makes clear that "[b]efore entering her appearance, Attorney Francoeur's only involvement with the Plaintiff was to write a letter for her in 2018 about the MPRE exam." Doc. 163 at 1-2.

fourth amended complaint, and that the amendment would prejudice the NCBE who has already

been dismissed from the case. *Id.* at 4. Finally, it argues that the claims against it in the proposed

fourth amended complaint would be subject to dismissal for lack of personal jurisdiction, as were

the claims in the operative third amended complaint. *Id.* at 5.

     As an initial matter, Plaintiff does not respond to the personal jurisdiction argument, but

instead argues that she should be allowed to conduct jurisdictional discovery as to the NCBE.

Doc. 162 at 2-4. Specifically, Plaintiff states that she "renews her request to conduct limited

discovery on the issue of personal jurisdiction of this Court over Defendant NCBE." Doc. 162 at

4; *see also* Doc. 157 at 2 n.1. But Plaintiff never previously made a request for discovery related

to the NCBE or personal jurisdiction. The prior request Plaintiff references is her "Motion for

Leave to Conduct Discovery Limited to the Issue of Jurisdiction." Doc. 135. That motion

specifically states that Plaintiff is seeking limited discovery in response to the NMBBE

Defendants' motion to dismiss based in part on qualified immunity (Doc. 86). *See* Doc. 135 at 1

("Plaintiff, Dr. Perry Spann ('Plaintiff), hereby files this MOTION TO CONDUCT

DISCOVERY LIMITED TO THE ISSUE OF JURISDICTION in response to Defendants' first

MOTION TO DISMISS THE THIRD AMENDED COMPLAINT BASED IN PART ON

QUALIFIED IMMUNITY (hereafter 'Motion') (Document 86) pursuant to Federal Rule of Civil

Procedure 12, as the Defense's Second Motion to Dismiss is prohibited and violative of Federal

Rules of Civil Procedure 12(b) (6), (G) (2), and (15) (d).") (emphasis in original). Never in that

motion or her reply to that motion does Plaintiff request discovery related to the NCBE or

personal jurisdiction.[10] *See* Docs. 135, 138.

---

[10] Plaintiff is correct that the Court has not yet ruled on this motion for discovery, as it has not
yet ruled on the NMBBE Defendants' motions to dismiss. As discussed more below, because I

Thus, contrary to Plaintiff's assertion, she has not previously requested limited discovery on the issue of the Court's personal jurisdiction over the NCBE. Thus, her present motion to amend can be fairly characterized as a request for a second bite at the apple: she seeks to amend her complaint to bring back claims against a dismissed defendant, obtain post-dismissal jurisdictional discovery as to that defendant, and then relitigate the issue of personal jurisdiction. *See* Doc. 162 at 5 ("The proposed complaint would afford Plaintiff a chance to conduct discovery on the jurisdictional question."). I recommend rejecting this request because Plaintiff already had an opportunity to request discovery and make arguments regarding personal jurisdiction in the prior briefing. Plaintiff provides no valid reason to resurrect the already-closed debate about personal jurisdiction and go back to square one in the litigation of that issue.

Turning to the merits of her request to amend, Plaintiff argues that she has "newly discovery information" showing that the NCBE did have control over accommodations offered by the NMBBE. Doc. 162 at 6; *see also* Doc. 157 at 1-2 (arguing that the NMBBE "could not have approved of Plaintiff's accommodations without first having received permission from Defendant [NCBE] to deviate from its established security protocols"). I assume Plaintiff is referencing two allegations from her proposed fourth amended complaint, which I will address in turn.

First, her proposed fourth amended complaint cites a 2011 article from the NCBE's website which states, "To ensure that testing conditions are as uniform as possible, the UBE jurisdictions follow the instructions set out in the *Supervisor's Manual* for administering the examination," and that manual sets procedures for things such as "maintain[ing] the security of

_____

recommend granting in part the motion to amend as to a claim against the NMBBE, I recommend denying as moot the motion for discovery, along with the motions to dismiss.

testing material, providing a suitable testing environment, deterring cheating, proctoring the

examination, deadline with disturbances, and reporting any irregularities that occur in the

administration of the exam." Doc. 157-1 ¶ 30 (citing Kellie Early, *The UBE: The Policies Behind

The Portability*, The Bar Examiner, September, 2011). The NCBE, however, attached affidavits

to its original motion to dismiss,[11] explaining that the "NCBE does not process requests for

accommodations . . .; decide whether available accommodations will be approved; make

arrangements for approved accommodations; or implement those accommodations. The

jurisdictions do so." Doc. 109-2 ¶ 9 (Gilbert Aff.); *see also* Doc. 109-1 (Gunderson Aff.) ("user

jurisdictions independently make decisions regarding when an examinee requests disability-

related testing accommodations"). As such, Plaintiff "would have submitted her requests for

accommodations on the NCBE exams used by that jurisdiction . . . to the New Mexico Board of

Bar Examiners, and the NMBBE would have evaluated her request, decided whether any

accommodations would be provided and what they would be, and then implemented any

approved accommodations." Doc. 109-2 ¶ 28.

     In response to these affidavits (which the NCBE filed long ago, in connection with its

December 13, 2021 motion to dismiss, Doc. 109), Plaintiff requested no discovery and presented

no conflicting affidavit or other evidence to show that the NCBE did indeed approve

accommodation requests (as she now alleges in her motion to amend). *See Behagen v. Amateur

Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (when addressing personal

jurisdiction prior to trial, "[t]he allegations in the complaint must be taken as true to the extent

they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits,

---

[11] In discussing futility, the NCBE cites the affidavits it filed with it previous motion to dismiss
for lack of personal jurisdiction. Doc. 159 at 6 n.2 (citing Docs. 109-1, 109-2).

all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party"). I issued a PFRD recommending that the Court grant NCBE's motion to dismiss on August 10, 2022 (Doc. 141) and Plaintiff filed objections on August 24, 2022 (Doc. 143). On September 16, 2022, the Court then granted the NCBE's motion to dismiss for lack of personal jurisdiction. Doc. 145. At no point during this personal jurisdiction litigation did Plaintiff present the article her proposed fourth amended complaint cites. And the article, published in 2011, is not "new information," but information available to her at the time of the prior briefing.

Even if she had previously cited the article, however, it goes on to state that "UBE jurisdictions continue to make their own decisions about whether to grant testing accommodations under the ADA, and NCBE plays no role in such decisions." Kellie Early, *The UBE: The Policies Behind The Portability*, The Bar Examiner, September, 2011, at 17. Thus, even if the Court were to consider Plaintiff's belated argument based on the information Plaintiff presents from the *Supervisor's Manual*, such an argument is futile as it does not controvert the NCBE's affidavits.

Second, Plaintiff's proposed fourth amended complaint offers what she calls "significant evidence that Defendant NCBE does in fact take an active role in the accommodation process for parts of the UBE." Doc. 157-1 ¶ 43. The "significant evidence" she attaches to her proposed amended complaint consists of declarations from a 2011 District of Columba lawsuit, *Bonnette v. D.C. Court of Appeals*, 796 F. Supp. 2d 164, (D.D.C. 2011). Doc. 157-1 at 29-62. At issue in that case was whether a plaintiff could have access to a computer-based version of part of the UBE. Doc. 157-1 ¶ 44. NCBE employees submitted the declarations, explaining the steps it would require to make such an accommodation as to the format of the test possible. Doc. 157-1 at 29-

16

62. Based on these declarations, Plaintiff alleges in the proposed fourth amended complaint that "[i]t is clear that Defendant NCBE holds a tight reign over how jurisdictions administer their exams and plays an active role in assuring that their security protocols are preserved. Thus, Defendant NMBBE cannot unilaterally allow any accommodations that would violate these protocols without first having permission from Defendants." Doc. 157-1 ¶ 51. The first basis for rejecting this evidence, as set forth above, is that Plaintiff could have, but did not, present it during litigation of the personal jurisdiction issue and so it is too late for her to present it now.

But, even if Plaintiff had timely presented this evidence, Plaintiff's conclusion misreads the declarations and makes several unsupported inferences. Nowhere in the declarations do the NCBE employees aver that state bar organizations must get permission from the NCBE to offer accommodations related to the testing location. Instead, the declarations in *Bonnette* mirror the affidavits in the present case. That is, the *Bonnette* declarations specifically state that the "NCBE does not make accommodation decisions regarding any part of the D.C. bar examination." Doc. 157-1 at 31 ¶ f; *see also* Doc. 157-1 at 35 ¶ c ("Applicants must also contact the jurisdiction for testing accommodations, because the decision about whether accommodations are appropriate and the arrangements for providing accommodations are made by the jurisdiction, not NCBE.").

Additionally, the underlying facts in *Bonnette* do not support Plaintiff's position. *Bonnette* involved "a legally blind law school graduate . . . seeking to require Defendants District of Columbia Court of Appeals ('Court of Appeals') and National Conference of Bar Examiners ('NCBE') to allow her to take the July 2011 Multistate Bar Exam using a computer equipped with an accessible screen-reading program called JAWS (which stands for Job Access With Speech) that is commonly used by individuals with visual impairments." 796 F. Supp. 2d 164, 167 (D.D.C. 2011). The declarations cited by Plaintiff do not state that the NCBE takes an active

role in accommodating the conditions of the rooms in which tests are administered, as Plaintiff suggests. *See* Doc. 157-1 ¶ 43. Instead, those declarations specifically addressed the difficulties and costs the NCBE would have in providing a test-taker an online version of the bar exam.[12] Doc. 157-1 at 43-47, 50-52, 59-61.

That is, the *Bonnette* case related to the format of the exam, which the NCBE controls. If Plaintiff's complaint similarly related to the format of the exam (say the NCBE refused to produce an exam booklet with larger font), *Bonnette* would be more relevant to the present lawsuit. But Plaintiff's complaints do not relate to the format of the exam.[13] They relate to the place of the exam and the conditions that existed at that place. Plaintiff presents no evidence that NCBE's control over the format of exam that it sells extends to the conditions that exist in the buildings where its customers administer the exam. Therefore, *Bonnette* and the declarations made in connection with that case are inapplicable to this case.

In sum, Plaintiff, who carries the burden of establishing personal jurisdiction, *see Behagen*, 744 F.2d at 733, has failed to show that the allegations in her proposed fourth amended complaint that bear on personal jurisdiction are timely and, even if they were, has failed to show those untimely allegations would not be futile for lack of personal jurisdiction over the NCBE. I therefore recommend denying her motion to amend as to claims against the NCBE.

## MOTION TO AMEND AS TO THE NMBBE DEFENDANTS

Unlike the NCBE, the NMBBE Defendants have not been dismissed from the case and the Court has not yet discussed the validity of the claims against them. Thus, instead of

---

[12] Of note, Plaintiff acknowledges that this lawsuit took place before the NCBE began using ExamSoft to allow test-takers a computer version of parts of the exam. Doc. 157-1 ¶ 44.

[13] Indeed, Plaintiff alleges in her proposed fourth amended complaint that she was provided the accommodation of having exam question in 18-point font. Doc. 157-1 ¶ 62.

attempting to resurrect claims against a dismissed defendant, Plaintiff's proposed fourth amended complaint seeks to clarify the claims against the NMBBE Defendants. The NMBBE Defendants oppose the motion to amend, arguing that the motion is vexatious. Doc. 158 at 1.

However, the proposed fourth amended complaint is much clearer and more succinct than her operative third amended complaint. The operative third amended complaint brings claims against the NMBBE and 21 individual defendants associated with the NMBBE (as well as against the NCBE and 15 individual defendants associated with the NCBE). Doc. 38. It brings 14 counts against those Defendants, without specifying which counts are alleged against which Defendants. Doc. 38. Many of those counts are not clear as to the cause of action and some seem to overlap. For example, count I is titled "Violations of the Americans with Disabilities Act" while count III is similarly titled "Violations of the Americans with Disabilities Act; Violations of the New Mexico Board of Bar Examiners Testing Accommodations Agreement." Doc. 38 at 18, 28. Two other counts—relating to conflict of interest and the continuing violations doctrine—are collapsed into one sentence each and provide no authority for the cause of action. *Id.* at 62-63. In contrast, Plaintiff's proposed fourth amended complaint brings only five distinct counts against the NMBBE and Sophie Martin (and the NCBE). Doc. 157-1.

Additionally, although Plaintiff's proposed fourth amended complaint would be the fifth iteration of her complaint, she filed the first four iterations before any Defendants appeared in the case. Thus, the NMBBE Defendants have not had to deal with a moving target or an ever-changing complaint. And, although the case is almost two years old, no discovery has been conducted. *See* Doc. 112.

The crux of the NMBBE Defendants' arguments in opposing the motion to amend, however, is not related to the timing of the proposed complaint. Instead, the NMBBE

Defendants' main argument appears to be that Plaintiff's proposed fourth amended complaint would be futile for failure to state a claim. I agree with the NMBBE Defendants that Plaintiff's proposed fourth amended complaint fails to state a claim against them as to count I (Title II of the ADA), count II (Section 504 of the Rehabilitation Act), count IV (Section 1983 against Defendant Martin), and count V (intentional infliction of emotional distress). Accordingly, I recommend that the Court deny Plaintiff's motion to file a fourth amended complaint as to those counts. I also recommend, however, that the Court allow Plaintiff to file the proposed fourth amended complaint with only count 3 (Title III of the ADA).

### 1. Factual Allegations

For the purposes of the motion to amend futility analysis, I accept the following facts in Plaintiff's proposed fourth amended complaint as to Defendants Sophie Martin and the NMBBE as true. Plaintiff Perry Spann is permanently disabled. Doc. 157-1 ¶ 1. The NMBBE is an agent of the Supreme Court of New Mexico and Sophie Martin worked for the NMBBE at all times relevant to this case. *Id.* ¶¶ 2-3. In September 2019, Plaintiff applied to take the February 2020 bar exam as a courtesy seater in New Mexico.[14] *Id.* ¶ 23. The NMBBE handled Plaintiff's application and accommodation request for the bar exam. *Id.* ¶ 38.

The NMBBE continually mishandled Plaintiff's application to take the bar exam. *Id.* ¶ 54. For example, it made multiple requests for her law school transcripts after it had already received her transcripts. *Id.* ¶ 54. It also requested that she pay for her fingerprint report after she had already paid for it. *Id.* ¶ 55.

---

[14] A courtesy seater means Plaintiff would take the bar exam in New Mexico even though she did not intend to become licensed to practice law in New Mexico. *Id.* ¶ 23.

Plaintiff requested certain accommodations for the bar exam including: 50% more time on all exams that conclude by 4 p.m.; nonconsecutive days of testing; "[p]referential seating not near air vents or other testing [sic] and in distraction free rooms"; ability to keep and use medical aids and additional warm clothes; frequent breaks as needed; 18 point font for all printed materials; writing multiple choice questions on plain paper to be transcribed onto scantrons by a test proctor; and use of a transcriber. *Id.* ¶ 56. Plaintiff had several communications with Defendant Martin about her requested accommodations in October and November 2019. During these conversations, Martin invasively questioned Plaintiff about past test accommodations and the reasons she wanted to take the bar exam in New Mexico. *Id.* ¶¶ 57-58. Martin also made inquiries to the administrators of Plaintiff's past exams. *Id.* ¶¶ 57-59. Plaintiff submitted extensive medical documentation to Martin explaining the nature and extent of her disabilities, which Martin admitted she failed to read. *Id.* ¶ 59.

Originally, Martin informed Plaintiff that her requested accommodations would not be feasible, but on November 19, 2019, the NMBBE, through Martin, agreed to the following accommodations: time and a half for each portion of the exam; four days to complete the exam with one 4.5 hour session each day; placement in a private testing room with a proctor present at all times; to the extent possible, a testing room that is quiet and low-distraction; time before each exam session to adjust the vents settings and proximity in the room to the vents; exam questions in 19-point font; ability to mark the multiple-choice answers directly in the booklet and agreement to have a proctor transfer the answers to a scantron at the end of that session; ability to bring eye drops, medication, a medical face mask, warm clothes, snacks and beverages to the exam room; and use of a laptop computer and the Examplify program for the writing portions of the exam. *Id.* ¶¶ 61-62. The NMBBE confirmed these accommodations in writing and Plaintiff

countersigned. *Id.* ¶¶ 63, 70. Martin also indicated that the exam room would have a white noise machine. *Id.* ¶ 66. Plaintiff was denied the accommodation of having frequent breaks and having five days between exams. *Id.* ¶ 64. Also, in January 2020, Plaintiff notified the NMBBE that she received two terminal health diagnoses and would need additional accommodations, but the NMBBE failed to answer this second request for additional accommodations. *Id.* ¶¶ 67-68.

Despite never receiving a response to her second request for accommodation, Plaintiff still decided to sit for the February 2020 bar exam. *Id.* ¶ 69. While the non-disabled exam takers were notified of the testing location as soon as they registered for the exam, Plaintiff was not notified of her exam location until eight days before the exam was scheduled to begin. *Id.* ¶¶ 73, 75. This gave Plaintiff little time to plan her lodgings and transportation. *Id.* ¶¶ 73-74. Plaintiff took the bar exam at the Uptown Tower while non-disabled exam takers took the exam at the Albuquerque Convention Center. *Id.* ¶¶ 76-77.

The Uptown Tower was in the process of being renovated during Plaintiff's exam sitting. *Id.* ¶ 78. Thus, the NMBBE failed to provide Plaintiff all the agreed-upon accommodations by placing her in a substandard testing room in a building that was undergoing construction. *Id.* ¶¶ 72, 78. Specifically, the testing room was cold and did not have proper heat; the room contained unsafe, broken electrical wires, sparkling and dim light fixtures, and had visible mildew; the room was not noise-free and the HVAC system blew contaminants directly on to Plaintiff; the room had no white noise machine; and the proctor left the room several times during the testing. *Id.* ¶¶ 79-81, 84-86. These issues caused Plaintiff problems such as eye strain, numbness in her fingers and feet, migraines, vertigo, and hives. *Id.* ¶¶ 79, 82, 86. Plaintiff also did not receive the physical prompts as promised, which Martin admitted having overlooked in an email sent to Plaintiff after the exam. *Id.* ¶ 83. Halfway through testing, the proctor decided to move Plaintiff

to a different room, but the second room was no better than the first. *Id.* ¶¶ 88-89. The NMBBE later admitted that Plaintiff's exam room was selected at the last minute and that it was fully aware of the construction in the building. *Id.* ¶ 90. The Albuquerque Convention Center, for its part, did not contain the same defects as Plaintiff experienced at the Uptown Tower. *Id.* ¶ 91.

Plaintiff filed grievances with the NMBBE at the end of each day, but the NMBBE ignored them. *Id.* ¶ 93. The NMBBE also failed to respond to Plaintiff's grievances before scoring her exam. *Id.* ¶ 94. As a result of subjective scoring and the lack of accommodations, Plaintiff received a score that did not accurately reflect her performance or abilities. *Id.* ¶ 96.

## 2. Legal Standard: Failure to State a Claim

As discussed above, a court may deny leave to amend based on reasons such as undue delay, bad faith, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). To withstand a motion to dismiss for failure to state a claim, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a motion to dismiss for failure to state a claim, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally

sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

### 3. Futility Analysis

Plaintiff's proposed fourth amended complaint brings five counts against the NMBBE and/or Sophie Martin: (1) violation of the Title II of the ADA against Defendant NMBBE; (2) violation of Section 504 of the Rehabilitation Act against Defendant NMBBE; (3) violation of Title III of the ADA against Defendant NMBBE; (4) violation of Section 1983 against Defendant Sophie Martin; and (5) intentional infliction of emotional distress against Defendants NMBBE and Martin. Doc. 157-1. The NMBBE Defendants oppose the motion to amend, arguing that all the claims against them are futile as they would be subject to dismissal for failure to state a claim. I will consider each count in turn.

### a. Individual NMBBE Defendants

As an initial matter, Plaintiff's proposed fourth amended complaint drops as defendants all individuals associated with the NMBBE, except Sophie Martin. In her reply to the motion to amend, Plaintiff explains that she intentionally removed the individual defendants "in an effort to promote judicial economy." Doc. 161 at 2. Thus, given that I recommend allowing Plaintiff to file the proposed fourth amended complaint (without certain counts), and given that Plaintiff has

indicated her intent to abandon claims against the individual NMBBE Defendants (except

Martin), I do not analyze the futility of the claims against those individuals.

In response to the motion to amend, the NMBBE Defendants do not oppose dismissal of

the individuals, but argue that dismissal should be with prejudice "in light of Plaintiff's

unreasonable litigiousness." Doc. 158 at 6. Given the outcome of this PFRD, I disagree with the

NMBBE Defendants' characterization of Plaintiff and recommend the Court decline the request

to dismiss the individual NMBBE Defendants with prejudice.

b. Count I: Title II of the ADA

Count I of Plaintiff's proposed fourth amended complaint alleges that the NMBBE

violated Title II of the ADA. Doc. 157-1 at 18. The NMBBE Defendants, incorporating the

arguments in their previous motion to dismiss, argue that this claim is futile because the NMBBE

is entitled to Eleventh Amendment sovereign immunity as an arm of the state. Doc. 158 at 8-9.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. The Eleventh Amendment grants states—and arms of the state—sovereign

immunity from suit, unless one of a few exceptions apply. *See Will v. Michigan Dep't of State

Police*, 491 U.S. 58, 66 (1989); *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th

Cir. 1996). I, therefore, will first examine whether the NMBBE is an arm of the state (finding

that it is), and then address whether Eleventh Amendment immunity applies in this instance (it

does and NMBBE is entitled to immunity).

i.  *Arm of the State*

State protections under the Eleventh Amendment extend to non-state governmental

entities that function as "arms of the state"—entities that are "created by state governments" and

"operate as alter egos or instrumentalities of the states." *Watson*, 75 F.3d at 574 (citations

omitted). However, not all public or governmental entities are arms of the state. For example,

political subdivisions, such as counties or municipalities, are not "arms of the state." *Elam*

*Const., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1345 (10th Cir. 1997). "Whether a local

entity is an arm of the state under the Eleventh Amendment is a question of federal law.

However, that federal question can be answered only after considering the provisions of state law

that define the agency's character." *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 975 (10th Cir.

1997) (internal quotation marks and citations omitted).

In her proposed fourth amended complaint, Plaintiff alleges that the NMBBE is a "public

entity" and an "agent of the Supreme Court of New Mexico." Doc. 157-1 ¶¶ 2, 105. Indeed, the

NMBBE is an arm of the Judicial Department of the State of New Mexico, i.e., an arm of the

Supreme Court of New Mexico. *See* Rule 15-401(A) NMRA (setting the makeup of the Board:

"The members of the board shall be appointed by the New Mexico Supreme Court"); Rule 15-

401(A)(3) (setting the duties of the Board, including "making recommendations to the Supreme

Court with respect to reinstatement or readmission to practice of lawyers who have for any

reason withdrawn from the state bar of New Mexico"). And the New Mexico Supreme Court is

an arm of the state. *See* N.M. Const. art. VI, § 1 ("The judicial power of the state shall be vested

in the senate when sitting as a court of impeachment, a supreme court, a court of appeals, district

courts; probate courts, magistrate courts and such other courts inferior to the district courts as

may be established by law from time to time in any district, county or municipality of the state."). As such, I recommend finding that the NMBBE is an arm of the state.

In briefing the motion to amend, Plaintiff asserts that "this Honorable Court could find that Defendant has not met its burden to provide it is an arm-of-the-state, which would negate Defendant's qualified immunity defense in its entirety." Doc. 161 at 8. Plaintiff thus "renews her request to conduct Limited Discovery on the issue of qualified immunity." *Id.* The NMBBE Defendants, however, are not asserting that the NMBBE is entitled to qualified immunity, but Eleventh Amendment sovereign immunity, which is different. *See* Doc. 158 at 8. Discovery on qualified immunity would thus not relate to the present dispute.

To the extent Plaintiff is requesting discovery as to the issue of sovereign immunity, she made a similar request in the pending Motion for Leave to Conduct Discovery Limited to the Issue of Jurisdiction. Doc. 135; *see also* Doc. 137 (response); Doc. 138 (reply). In that motion, Plaintiff explains that she seeks discovery for the following purposes:

> Restricted Discovery, in this case, is expected to ascertain jurisdiction by clarifying the (1) status of the Defense as a business entity in New Mexico, (2) relevance or irrelevance of the business entity status by expressed laws, (3) whether any type of immunity is present under expressed contract laws, and (4) rationales indicating how those facts or data acquired determine jurisdiction.

Doc. 135 at 7. This explanation, however, fails to address how the discovery requested would impact the analysis and outcome related to Eleventh Amendment immunity and whether the NMBBE is an arm of the state. Further, Plaintiff herself avers in her proposed fourth amended complaint that the NMBBE is an "agent of the state of New Mexico." Doc. 157-1 ¶¶ 105; *see also id.* ¶ 2. NMBBE does not dispute that it is an agent of the state of New Mexico. Given that the parties agree that NMBEE is an agent of the state of New Mexico, discovery on the issue of

whether New Mexico is an agent of the state is unnecessary. Thus, I recommend denying

Plaintiff's request for limited discovery and finding that the NMBBE is an arm of the state.

    ii.  *Sovereign Immunity*

Turning next to immunity itself, the Eleventh Amendment grants states, and arms of the

state, sovereign immunity from suit unless the state waives its immunity, Congress has

overridden state immunity under § 5 of the Fourteenth Amendment, or a state official is sued for

injunctive relief in place of the state. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66

(1989); *Ex parte Young*, 209 U.S. 123 (1908); *see also Osage Nation v. Oklahoma ex. rel.*

*Oklahoma Tax Comm'n*, 260 F. App'x 13, 17 (10th Cir. 2007) ("The Supreme Court has

recognized three exceptions to a state's sovereign immunity. First, a party may sue a state in

federal court notwithstanding the Eleventh Amendment if the state consents to suit. Second, a

party may sue a state if Congress has abrogated the state's sovereign immunity in a clear and

unequivocal manner pursuant to a valid exercise of its power. Finally, under *Ex parte Young,* 209

U.S. 123 (1908), a party may sue individual state officers in federal court in their official

capacity for prospective injunctive relief. . . .") (internal citations omitted). Accordingly, unless

one of the above exceptions applies, suits for damages against an arm of the state is not

permitted.

I begin with the easiest of the three exceptions—one and three. Looking at the first

exception, there is no indication that the State has waived its immunity as to Plaintiff's Title II

claim. In briefing the motion to amend, Plaintiff argues, without citation to authority, that the

NMBBE waived its immunity by offering ADA accommodations. That is, Plaintiff argues that

state law does not require the NMBBE to offer accommodations to disabled test takers but,

because it offers accommodations, it has "chosen to make itself subject to the ADA." Doc. 161 at

6. Plaintiff's argument is nonsensical. Plaintiff does not explain how, if NMBBE is not subject to the ADA, providing accommodations it is not legally required to provide under state law makes it subject to the ADA. Plaintiff cites no legal authority, and the Court is aware of none, to support the notion that, by providing individual accommodations it is not legally required to provide under state law, a state entity waives any Eleventh Amendment immunity defense it has to suit under federal law (here, the ADA). I recommend rejecting this unsupported, nonsensical argument.

Plaintiff also argues that "courts in this circuit have held that Title II does not provide immunity in the context of accommodation requests made pursuant to the ADA." Doc. 161 at 6. Plaintiff, however, fails to follow this representation with citation to any case from this circuit, or any other circuit. Therefore, I recommend that the Court also reject this unsupported argument.

Moving to the third exception from *Ex parte Young*, the "Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself." *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007). Plaintiff's proposed fourth amended complaint brings a claim for violation of Title II of the ADA against only the NMBBE, not state officers acting in their official capacities. *See* Doc. 157-1 at 18. Therefore, the third exception does not apply.

### iii.  Sovereign Immunity- Abrogation Exception

The second exception from *Ex parte Young* requires a more extensive analysis. This exception arises where Congress has explicitly overridden state immunity and does so through the valid exercise of its power under § 5 of the Fourteenth Amendment. *Guttman v. Khalsa*, 669 F.3d 1101, 1111 (10th Cir. 2012) ("Congress may ... abrogate [state sovereign] immunity in

federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment.") ("*Guttman IV*") (quoting *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 726 (2003)). The Congressional statute at issue here is Title II of the ADA, which "forbids discrimination against the disabled in public services, programs, and activities." *Guttman IV*, 669 F.3d at 1112. "Under the Supreme Court's decisions in *Lane* and *Georgia,* Title II [of the ADA] validly abrogates sovereign immunity as to (1) actual violations of the Constitution and (2) at least some classes of conduct that do not facially violate the Constitution but are prohibited to 'prevent and deter unconstitutional conduct.'" *Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006) ("*Guttman II*") (quoting *Tennessee v. Lane*, 541 U.S. 509, 518 (2004)). To evaluate the question of abrogation, the district court must determine, "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Guttman II*, 446 F.3d at 1035 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

Thus, step one of the abrogation exception is to look at a plaintiff's Title II allegations for damages against the state and determine if the plaintiff stated a valid claim under Title II. *See Guttman II*, 446 F.3d at 1036 ("Before a court can determine whether Title II abrogated sovereign immunity as applied to a specific suit, it must know the specifics of the claim at issue."). "Title II specifies that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity." *Guttman IV*, 669 F.3d at 1112 (quoting 42 U.S.C. § 12132). A Title II claims requires three factors:

> (i) that he or she is a qualified individual with a disability; (ii) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (iii) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright,* 186 F.3d 1216, 1219 (10th Cir. 1999).

Plaintiff's proposed fourth amended complaint alleges that she is permanently disabled with physical impairments including legal blindness, severe extrinsic asthma with anemia, cardiovascular disease, chronic migraines, chronic urticaria, and hypersensitivities. Doc. 157-1 ¶¶ 1, 103. The proposed complaint alleges that the NMBBE discriminated against Plaintiff by failing to provide her reasonable accommodations for her sitting of the bar exam. Doc. 157-1 ¶¶ 107-09. It did so by placing her in a substandard testing room at the Uptown Tower. Doc. 157-1 ¶¶ 72, 78-81, 84-86. Given these allegations, I recommend finding that Plaintiff has stated a valid claim under Title II.

Next, I must examine to what extent such misconduct also violated the Fourteenth Amendment—question two of the abrogation exception. If Plaintiff's claims "allege actual constitutional violations, then New Mexico cannot raise a sovereign immunity defense because 'insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.'" *Guttman IV*, 669 F.3d at 1113 (quoting *Georgia,* 546 U.S. at 159) (emphasis in original). Plaintiff's proposed fourth amendment complaint alleges that the NMBBE's failure to accommodate her also subjected her to disparate treatment as she was placed in a substandard testing room while non-disabled test takers were placed in a "state-of-the-art facility" at the

Albuquerque Convention Center. Doc. 157-1 ¶¶ 76-77, 108-09. In other words, Plaintiff's Title

II claim also potentially raises a claim for violation of the Equal Protection Clause of the

Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *Guttman IV*,

669 F.3d at 1116 (quoting *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439

(1985)). "Unless a legislative classification or distinction burdens a fundamental right or targets a

suspect class, courts will uphold it if it is rationally related to a legitimate end." *Tonkovich v.*

*Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). Disabled persons do not constitute a

suspect class for the purpose of the equal protection analysis. *Davoll v. Webb*, 194 F.3d 1116,

1145 (10th Cir. 1999). Likewise, Plaintiff does not allege that a fundamental right is at issue. The

Court therefore should "apply the rational basis test, upholding the policy if there is any

reasonably conceivable state of facts that could provide a rational basis for the classification."

*Davoll*, 194 F.3d at 1145.

> In the context of a motion to dismiss under 12(b)(6), this court accepts all of the
> allegations in the complaint as true and then considers these facts according to the
> deferential rational basis standard. To survive a motion to dismiss for failure to
> state a claim, a plaintiff must allege facts sufficient to overcome the presumption
> of rationality that applies to government classification.

*Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (internal quotation marks and citations

omitted).

Here, accepting the facts in the complaint as true for this futility analysis, Plaintiff was

placed in a substandard room at the Uptown Tower while non-disabled test takers were placed at

the much nicer Albuquerque Convention Center. Doc. 157-1 ¶¶ 108-09. In other words, the

NMBBE classified Plaintiff separate from non-disabled test takers. Plaintiff, however, has not stated facts to show it was irrational for NMBBE to classify disabled test takers differently from non-disabled test takers.

But Plaintiff's allegation is not just that the NMBBE put disabled and non-disabled test takers into different groups. Beyond this, she complains, the NMBBE allowed one group to take the test at a better location than the other group. If strict scrutiny applied to this disparate treatment, Plaintiff would likely state a plausible equal protection violation. Rational basis, however, sets a much lower bar. *See Davoll*, 194 F.3d at 1145. And Plaintiff neither acknowledges this low bar nor presents any argument or factual allegation capable of supporting her position that the NMBBE had no rational basis for having the test takers take their exams at the designated locations. She does not argue or present factual allegations that other, better, accommodations were available for disabled test takers, does not argue or present factual allegations that the NMBBE intended to place disabled test takers in a less-desirable location, and does not argue or present factual allegation as to how, in the absence of discriminatory intent, the NMBBE violated the equal protection clause. In short, Plaintiff fails to allege facts to overcome the presumption that NMBBE had a rational basis to place the two groups of test takers where it did. Accordingly, Plaintiff's proposed fourth amended complaint fails to sufficiently allege a violation of the Equal Protection Clause of the Fourteenth Amendment.[15]

Because I find that Plaintiff's Title II claim fails to allege a violation of the Fourteenth Amendment, I turn to step three of the abrogation exception because "a state may [still] be

---

[15] In briefing the motion to amend, Plaintiff summarily argues that the NMBBE violated her due process rights. Doc. 1161 at 5. She provides no other information and her proposed fourth amendment complaint makes no mention of a due process claim. I therefore recommend the Court not consider this argument.

subject to a statutory suit under Title II of the ADA, even if there is no allegation of an actual Fourteenth Amendment violation." *Guttman IV*, 669 F.3d at 1116 (citing *Lane*, 541 U.S. at 523). As noted above, "The Supreme Court has held Congress may abrogate state sovereign immunity if Congress (1) unequivocally indicates its intent to abrogate state sovereign immunity, and (2) acts pursuant to a valid grant of constitutional authority under § 5 [of the Fourteenth Amendment]." *Guttman IV*, 669 F.3d 1117. In *Guttman IV*, the Tenth Circuit examined these two questions, holding first that "there is no question Congress intended Title II to abrogate state sovereign immunity. The ADA specifically provides: 'A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.'" 669 F.3d at 1117 (quoting 42 U.S.C. § 12202).

As to the second question—whether Congress acted pursuant to a valid grant of constitutional authority under § 5—the Tenth Circuit started by defining the right at issue. *Guttman IV*, 669 F.3d at 1118. In that case, the plaintiff alleged that the state violated the ADA when it suspended and then revoked his medical license. *Id.* at 1106-07. The Tenth Circuit defined the right at issue as "a disabled individual's right to practice in his chosen profession." *Id.* at 1118. As applied to that right, the Tenth Circuit held that Congress's intent to abrogate state sovereign immunity was not a valid exercise of its enforcement powers under § 5. *Id.* at 1117-25 (arriving at this answer by examining "(1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is congruent and proportional to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations"). After considering these

factors, the Tenth Circuit concluded that "Title II does not validly abrogate New Mexico's sovereign immunity in the context of professional licensing." *Id.* at 1125.

Here too, Plaintiff's Title II claim involves her right to practice in a chosen profession. That is, "as a direct result of the Defendants' discrimination, Plaintiff . . . has been unable to pursue her career as a licensed attorney." Doc. 157-1 ¶ 113. Thus, following *Guttman IV*, I recommend finding that Title II does not abrogate the NMBBE's sovereign immunity in the context of Plaintiff's claims that the NMBBE's discrimination prevented her right to practice in a chosen profession. *See also Turner v. Nat'l Council of State Boards of Nursing, Inc.*, 561 F. App'x 661, 668 (10th Cir. 2014) (similarly applying the *Guttman IV* reasoning to alleged discrimination in a professional licensing examination).

Plaintiff disputes that *Guttman IV* applies, arguing that "this case is not about whether there is a right to engage in the profession of the practice of law as was the case in *Guttman* but rather the right to higher education, which Courts have held is a valid basis for abrogation of immunity." Doc. 161 at 4. She argues that, unlike the medical board at issue in *Guttman*, the NMBBE does not have the authority to issue licenses and its purpose is to further legal education. *Id.* at 3-4.

I disagree with Plaintiff's characterizations of the NMBBE. First, Plaintiff provides no authority for her statement that the "NMBBE helps shape the education of law students and influences how law school curricula are designed." Doc. 161 at 4. Instead, she cites NMRA 15-402(C)[16] which provides the qualifications for a bar examiner, including that "[a] bar examiner shall be conscientious, studious, thorough, and diligent in learning the methods, problems, and

---

[16] Plaintiff actually cites "NMSA 1978, Section 15.402(C)." Doc. 161 at 4. There is no NMSA § 15.402 and the rules governing the NMBBE are contained in the New Mexico rules (NMRA) not the New Mexico statutes (NMSA), so I assume she intended to cites NMRA 15-402(c).

progress of legal education, in preparing bar examinations, and in seeking to improve the examination, its administration, and requirements for admission to the bar." The fact that bar examiners must be diligent in following the progress of legal education does not transform the purpose of the NMBBE to that of legal education when, by rule, its purpose is to investigate applicants for admission to the New Mexico bar, administer the bar exam, make recommendations to the New Mexico Supreme Court regarding reinstatement or readmission to the New Mexico bar, and discuss with bar applicants the policies and procedures of the bar exam. NMRA 15-401(A). The NMBBE's mission is clearly focused on deciding the standards for admission to the New Mexico bar rather than on how those seeking admission are educated.

In *Turner v. National Council of State Boards of Nursing, Inc.*, the Tenth Circuit rejected an argument similar to Plaintiff's, finding that the plaintiff's claims regarding an alleged failure to accommodate for a nursing license exam was not "more about education than professional licensing," but instead involved the right to practice in a chosen profession (as in *Guttman*). 561 F. App'x 661, 664, 667-68 (10th Cir. 2014). Lastly, nowhere in her proposed fourth amended complaint does Plaintiff allege that she was denied access to higher education. Instead, she alleges that, by failing to accommodate her, the NMBBE has prevented her from pursuing a career as a licensed attorney. Doc. 157-1 ¶¶ 128, 143.

In sum, I recommend finding that the NMBBE's Eleventh Amendment immunity is not validly abrogated in this case. Thus, because the NMBBE is entitled to Eleventh Amendment immunity on Plaintiff's Title II claim, count I of her proposed fourth amended complaint is futile.

c.   Count II: Section 504 of the Rehabilitation Act

Count II of Plaintiff's proposed fourth amended complaint alleges that the NMBBE

violated Plaintiff's rights under Section 504 of the Rehabilitation Act. Doc. 157-1 at 20. The

NMBBE Defendants argue that Plaintiff's Rehabilitation Act claim in the proposed fourth

amended complaint is substantially the same as the Rehabilitation Act claim in her operative

third amended complaint. Doc. 158 at 9. Thus, the NMBBE Defendants argue, if the Court

dismisses on summary judgment the Rehabilitation Act claim contained in Plaintiff's third

amended complaint, the claim in her proposed fourth amended complaint is rendered futile. *Id.*

(citing Doc. 100, motion for summary judgment). I agree that the claims are substantially the

same and, as I discuss in the summary judgment section below, I recommend granting the

NMBBE Defendants' motion for summary judgment. I thus recommend finding that Plaintiff's

claim under the Rehabilitation Act in her proposed fourth amended complaint is futile.

d.   Count III: Title III of the ADA

Plaintiff's third cause of action in her proposed fourth amended complaint alleges that the

NMBBE violated Title III of the ADA.[17] Doc. 157-1 at 21. The NMBBE Defendants,

incorporating the arguments in their previous motion to dismiss, argue that this claim is futile

because Title III only applies to private businesses.[18] Doc. 158 at 9.

---

[17] The proposed fourth amended complaint also brings this count against the NCBE, but as
discussed above, I recommend finding the complaint is futile as to the NCBE because this Court
lacks personal jurisdiction over it.

[18] The NMBBE Defendants do not argue that the NMBBE is entitled to Eleventh Amendment
immunity as to Plaintiff's claims under Title III as they do with her claim under Title II. Thus,
for the purposes of this motion, I do not examine whether the NMBBE is entitled to Eleventh
Amendment immunity as to Plaintiff's Title III claim.

In contrast to Title II of the ADA, which applies to public entities, *see* 42 U.S.C. § 12132, Title III makes discrimination against individuals with disabilities in the full enjoyment of any place of "public accommodations" by any person who operates a place of "public accommodation" unlawful, 42 U.S.C. § 12182(a). The ADA defines "public accommodations" as including a variety of "private entities." 42 U.S.C. § 12181(7). "Private entities" include "any entity other than a public entity (as defined in section 12131(1) of [the ADA] )." 42 U.S.C. § 12181(6) (emphasis added). Public entities, in turn, are defined in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). In other words, "Title III applies to public accommodations and services operated by private entities." *Turner v. Nat'l Council of State Boards of Nursing, Inc.*, 561 F. App'x 661, 669 (10th Cir. 2014).

As discussed above, I recommend finding that the NMBBE is an arm of the state—i.e., an arm of the New Mexico Supreme Court. *See* Rule 15-401 NMRA. Thus, the NMBBE falls under the definition of a public entity and not a public accommodation (or private entity). The face of Plaintiff's proposed fourth amended complaint indicates the same, stating that the NMBBE is "an agent of the Supreme Court of New Mexico." Doc. 157-1 ¶ 2; *see also id.* ¶ 105 ("Defendant NMBBE is a public entity and an agent of the state of New Mexico."). And nowhere in Plaintiff's proposed fourth amended complaint does she state that the NMBBE is a private entity or the owner, lessee, or operator of a place of public accommodation. Thus, this path to stating a Title III ADA violation is closed to Plaintiff.

There is, however, another potential path to a Title III ADA violation that the parties do not address in their briefing. The proposed fourth amended complaint specifically alleges a violation of Section 12189 of Title III. Doc. 157-1 ¶ 133. That section provides that "*[a]ny*

*person* that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189 (emphasis added). In contrast to Section 12182 of Title III, which applies to public accommodations, Section 12189 specifically refers to discrimination by "any person," not just a public accommodation/private entity.[19]

Neither party briefs this issue—i.e., whether Section 12189 applies to public entities when the rest of Title III applies to private entities/public accommodations—and I am unaware

---

[19] The regulations implementing Title III state, on the other hand, that "[a]ny *private entity* that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 28 C.F.R. § 36.309 (emphasis added). The Department of Justice has clarified that:

> Because section 309 of the ADA 42 U.S.C. 12189, reaches "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post secondary education, professional, or trade purposes," public entities also are covered by this section of the ADA. Indeed, the requirements contained in title II (including the general prohibitions against discrimination, the program access requirements, the reasonable modifications requirements, and the communications requirements) apply to courses and examinations administered by public entities that meet the requirements of section 309. While the Department considers these requirements to be sufficient to ensure that examinations and courses administered by public entities meet the section 309 requirements, the Department acknowledges that the title III regulation, because it addresses examinations in some detail, is useful as a guide for determining what constitutes discriminatory conduct by a public entity in testing situations.

Nondiscrimination on the Basis of Disability in State and Local Government Services, 75 FR 56164-01, 2010 WL 3561889 (Sept. 15, 2010).

of any clear answer. No clear answer is to be found in a search for the definition of "person" as

used in Title III. This is because Title III does not define "person." *See* 42 U.S.C. § 12181.[20]

Case law also provides little guidance. Few courts have addressed this issue directly and

those that have are split. *See D'Amico v. New York State Bd. Of L. Examiners*, 813 F. Supp. 217,

221 (W.D.N.Y. 1993) (applying the requirements of Section 12189 to the New York State Board

of Law Examiners without addressing whether it is a public or private entity); *Pazer v. New York*

*State Bd. Of L. Examiners*, 849 F. Supp. 284, 286–87 (S.D.N.Y. 1994) ("Although the express of

language of [28 C.F.R. § 36.309] refers to 'a private entity,' since the [42 U.S.C. § 12189]

defines 'person' to include governments and government agencies, the regulation must be

interpreted to apply to the [New York Board of Law Examiners]."); *but see Varad v. Barshak*,

261 F. Supp. 2d 47, 55 (D. Mass. 2003), *aff'd*, 93 F. App'x 255 (1st Cir. 2004) ("Since the

[Massachusetts Board of Bar Examiners] is a public, not a private, entity, Title III of the ADA is

simply inapplicable, and the plaintiff's claim under that part of the statute must fail.").

Within the Tenth Circuit, the District Court for the District of Wyoming held in *Ware v.*

*Wyoming Board of Law Examiners*, without much analysis, that Section 12189 applies to

governmental agencies such as the Wyoming Board since the statute uses the word "person." 973

F. Supp. 1339, 1353 (D. Wyo. 1997). The court, however, ultimately held that the plaintiff's

claim for fines and penalties under Sections 12182 and 12188 of Title III failed because Section

12182 only applies to private entities. *Id.* at 1356. The court did not address the potential conflict

between Section 12189 and the rest of Title III and neither did the Tenth Circuit on appeal. *See*

*Ware v. Wyoming Bd. Of L. Examiners*, 161 F.3d 19 (10th Cir. 1998) (table decision) ("Based on

---

[20] In contrast, Title I of the ADA does define persons and includes "governmental agencies." 42 U.S.C. § 12111(7) (citing 42 U.S.C. § 2000e(a)). But Title I's definition specifically only applies to Title I.

our review of the record, we discern no error in the district court's judgment. We therefore affirm

for substantially the reasons stated by the district court in its order of August 5, 1997."). Thus,

*Ware* provides little guidance.

Given the absence of clear legal guidance and of briefing on the topic, I recommend the

Court decline to resolve whether "person" as used in Section 12189 includes public entities. That

is, the NMBBE Defendants have not sufficiently presented the issue for the Court's review and

the answer to the question is not obvious. Because the issue of whether Section 12189 applies to

public entities such as the NMBBE is unresolved, the NMBBE Defendants fail to show that

Plaintiff's Title III claim is futile for failure to state a claim. *Cf. Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991) (a court may dismiss on grounds not raised by motion to dismiss when it is

"patently obvious" that the plaintiff could not prevail on the facts alleged). Thus, I recommend

that the Court find only the argument the NMBBE Defendants sufficiently presented to be well-

taken: the NMBBE is a public entity for purposes of Title III's accommodation provision and,

therefore, except for the possibility of stating a claim under Section 12189 as set forth above,

Plaintiff cannot state a Title III ADA claim.

e.   Count IV: Section 1983

Count IV of Plaintiff's proposed fourth amended complaint alleges a claim against

Defendant Martin under Section 1983 for violations of the ADA and Rehabilitation Act.[21] Doc.

---

[21] Plaintiff does not bring this claim against the NMBBE. Doc. 157-1 at 23. Plaintiff also does
not state whether the claim against Defendant Martin is alleged against her in her official or
individual capacity. *See id.* ¶ 2. I assume, however, that Plaintiff is suing Martin in her individual
capacity. I do so because an official capacity claim would just be "another way of pleading an
action against an entity of which an officer is an agent," i.e., the NMBBE. *Kentucky v. Graham*,
473 U.S. 159, 165 (1985). And Plaintiff makes no *Monell* allegations against the NMBBE. *See
Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978) ("Local governing
bodies (and local officials sued in their official capacities) can . . . be sued directly under § 1983

157-1 at 23. Defendant Martin argues that this claim is futile, Doc. 158 at 10-11, and Plaintiff

does not address or dispute their arguments in her reply. Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "This statute is not an independent source of substantive rights, but rather a

mechanism for enforcing federal rights conferred elsewhere." *Barr-Rhoderick as Next Friend of*

*May v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. CV 04-0327 MCA/ACT, 2005 WL 8164366,

at *2 (D.N.M. Jan. 28, 2005) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).

　　　Here, the rights Plaintiff seeks to enforce are those found in the ADA and Section 504.

Doc. 157-1 ¶ 146 ("Defendant Martin engaged in activities that violated the ADA and Section

504, which resulted in discrimination against the Plaintiff."). However, because the ADA and the

Rehabilitation Act provide a comprehensive remedial scheme, a plaintiff cannot bring a Section

1983 action against individual capacity defendants predicated upon Title II of the ADA and

Section 504 of the Rehabilitation Act violations. *See Vinson v. Thomas*, 288 F.3d 1145, 1156

(9th Cir. 2002); *Barr-Rhoderick as Next Friend of May*, 2005 WL 8164366, at *9 ("Plaintiffs

also may not use 42 U.S.C. § 1983 as a mechanism for asserting claims against the individual

Defendants for violating Section 504 of the Rehabilitation Act or Title II of the ADA.").

　　　These cases do not specifically address Title III of the ADA, but I recommend finding

that the same reasoning applies to the extent Plaintiff's Section 1983 claim against Defendant

_____

for monetary, declaratory, and injunctive relief in those situations where . . . the action that is
alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,
or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to
represent official policy.").

Martin is predicated upon a Title III violation. That is, "[a]n alleged violation of federal law may not be vindicated under § 1983" where "Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." *Vinson*, 288 F.3d at 1155; *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (holding that when a law provides a comprehensive remedial scheme, "Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive"). As with Title II and Section 504, Title III contains its own comprehensive remedial scheme, *see* 42 U.S.C. §§ 12182-12184, 12188, and so Plaintiff cannot bring a Section 1983 claim against Martin based on a Title III violation, *see Anderson v. City of Columbus, Georgia*, 374 F. Supp. 2d 1240, 1252-53 (M.D. Ga. 2005) (reaching the same conclusion).

For these reasons, I recommend finding that Plaintiff's Section 1983 claim against Defendant Martin is futile as it would be subject to a motion to dismiss.

### f.   Count V: Intentional Infliction of Emotional Distress

Count V of Plaintiff's proposed fourth amended complaint alleges, for the first time, a claim for intentional infliction of emotional distress under the New Mexico Tort Claims Act ("NMTCA") against both the NMBBE and Defendant Martin.[22] Doc. 157-1 at 23-24. The NMBBE Defendants argue that this claim is futile because New Mexico case law holds that there is no waiver of sovereign immunity under the New Mexico Tort Claims Act for intentional infliction of emotional distress as against governmental entities or public employees. Doc. 158 at 11. Plaintiff does not dispute this argument in her reply.

---

[22] It also alleges this count against the NCBE, but as discussed above, I recommend finding that such a claim is futile because the Court lacks personal jurisdiction over the NCBE.

Under the NMTCA, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived. . . ." NMSA § 41-4-4(A). As discussed above, the NMBBE is a governmental entity, as an arm of the New Mexico Supreme Court. For her part, Defendant Martin was, at the time of the events giving rise to this lawsuit, a public employee of the NMBBE and Plaintiff's proposed fourth amended complaint never alleges that she was acting outside the scope of her duty. *See* Doc. 157-1 ¶ 3 ("Defendant Sophie Martin is an individual who resides in New Mexico and at all relevant times worked for and under the direction of the NMBBE.").

The proposed fourth amended complaint does not allege that Plaintiff's claim falls within one of the NMTCA waivers. I likewise find that none of the waivers of immunity apply because all provisions but one waive immunity only for "liability for damages resulting from bodily injury, wrongful death or property damage." NMSA § 41-4-5 to -11. And "[b]y its plain meaning, 'bodily injury' constitutes injury to the physical body rather than mental and emotional injuries." *Gonzales v. Allstate Ins. Co.*, 1996-NMSC-041, ¶ 16, 921 P.2d 944, 947. The one waiver that applies to general liability for "personal injury" applies specifically to damages caused by law enforcement officers, NMSA § 41-4-12, which is not applicable in this case. Thus, Plaintiff's claims for emotional distress do not fall within a waiver of immunity under the NMTCA.

For these reasons, I recommend finding that count V of Plaintiff's proposed fourth amended complaint is futile.

> g.  Conclusion

In sum, I recommend finding that Plaintiff's proposed fourth amended complaint is futile as to count I (Title II of the ADA against the NMBBE), count II (Section 504 of the

Rehabilitation Act), count IV (Section 1983 against Martin), and count V (intentional infliction of emotional distress against the NMBBE and Martin). However, because whether Plaintiff can proceed under section 12189 of Title III of the ADA remains unresolved, I recommend finding that count III (Title III of the ADA against the NMBBE) is not futile. I thus recommend granting in part and denying in part Plaintiff's Motion for Leave to File Fourth Amended Complaint (Doc. 157) such that Plaintiff be allowed to file her proposed fourth amended complaint (Doc. 157-1) without counts I, II, IV, and V.

### 4. Sanctions

In response to the motion to amend, the NMBBE Defendants request a sanction of attorney's fees against Plaintiff's counsel under 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Whether to award sanctions is within the Court's discretion. *See Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006).

I recommend denying this request for sanctions. As a starting point, at the time Plaintiff filed her motion to amend, the Court had not yet ruled on the NMBBE Defendants' various motions to dismiss. As such, this case is not one where the Court dismissed certain claims against the NMBBE Defendants only for the plaintiff to move to amend to assert those already-dismissed claims. Additionally, for the reasons discussed in this PFRD, I do not find the entirety of Plaintiff's proposed fourth amended complaint to be futile and therefore do not find that her motion to amend unreasonably or vexatiously multiplied proceedings in this case.

**NMBBE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Lastly, as mentioned above, Plaintiff's second cause of action in both her operative third amended complaint and the proposed fourth amended complaint alleges that the NMBBE violated Section 504 of the Rehabilitation Act. Doc. 38 at 25; Doc. 157-1 at 20. The NMBBE Defendants move for summary judgment on this claim. Before addressing the arguments related to Plaintiff's motion for summary judgment, however, I address Plaintiff's motion to file a surreply and Plaintiff's request for discovery. I recommend that the Court deny both motions. I then recommend granting the NMBBE Defendants' motion for summary judgment on Plaintiff's Rehabilitation Act claim, as the undisputed material facts establish that the NMBBE does not receive federal financial assistance. As discussed above, this decision would also have the effect of rendering futile the same proposed claim in count II of Plaintiff's proposed fourth amended complaint.

### 1. Motion for Surreply

After the parties finished briefing the motion for summary judgment, Plaintiff filed a "Response to Defendant NMBBE's Reply in Support of Motion by NMBBE-Related Defendants' Motion for Summary Judgment as to Second Cause of Action." Doc. 121. The NMBBE Defendants object to this "response." Doc. 122. This Court's local rules do not contemplate a response to a reply. *See* D.N.M. LR-Civ. 7.1. Plaintiff's "response" is in essence a surreply and "[t]he filing of a surreply requires leave of the Court." D.N.M. LR-Civ. 7.4(b). Plaintiff did not seek leave of the Court before filing her response/surreply, and so I recommend the Court strike it. *See Miller v. Monumental Life Ins. Co.*, 761 F. Supp. 2d 1123, 1143 (D.N.M. 2009) (holding that motions to strike are limited to challenges of pleadings, but "the exception to

this principle is that a Court may choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court") (internal quotation marks and citations omitted).

Thereafter, Plaintiff filed a Motion for Leave to File Surreply (Doc. 124) which includes her proposed surreply (Doc. 124 at 4-15); *see also* Doc. 126 (response); Doc. 127 (reply). This proposed surreply is the same as the "response" she previously filed without Court permission. *Compare* Doc. 121 *with* Doc. 124 at 4-15. "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." *Navajo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell*, 110 F. Supp 3d. 1140, 1180 (D.N.M. 2015).

In her motion for surreply, Plaintiff points to four "new arguments" she asserts the NMBBE Defendants raised in their reply that warrant a surreply: (1) "The Defense asserts one affidavit contrary to the Complaint facts for the first time in this legal matter"; (2) "The Defense argued for the first time that ADA laws and contexts of the Rehabilitation Act, among additional Federal Statutes, are not existent"; (3) "The Defendants made new assertions that the Plaintiff violated proceedings"; and (4) "For the first time, the Board argued that the Plaintiff did not obtain federal funding to finance bar exams." Doc. 124 at 2. But, when listing these "new" arguments, Plaintiff cites the original motion, not the reply. Plaintiff had the opportunity to respond to any arguments raised in the motion in her response brief and she has failed to show that the NMBBE Defendants raised any new arguments in their reply that warrant a surreply. Likewise, in her reply to her motion for leave to file a surreply, Plaintiff fails to point to any new argument the NMBBE Defendants raised in their reply. Doc. 127. Instead, she argues the merits of the summary judgment motion. *Id*.

I therefore recommend denying her motion for leave to file a surreply (Doc. 124). I likewise recommend that the Court deny Plaintiff's requests for "the Court to assess costs on this

current filing, and those tantamount, against the Defendants." Doc. 127 at 4. If the presiding judge disagrees with this recommendation and considers Plaintiff's proposed surreply (Doc. 124 at 4-15), I have reviewed that document and it does not change my recommendations regarding the motion for summary judgment.

### 2. Plaintiff's Discovery Request

The next threshold question for the Court to address is whether, before deciding the NMBBE Defendant's motion for summary judgment, it should allow Plaintiff to conduct discovery related to that motion. This discovery issue comes to the Court via Plaintiff's response to the NMBBE Defendants' motion for summary judgment and via her reply to her motion to amend. Specifically, in her response, Plaintiff argues that the NMBBE Defendants' motion for summary judgment is premature because discovery has not yet been conducted. Doc. 110 at 9 ("Whether the Defendants are or are not an arm of the state receiving federal funding is immaterial until there is a process of discovery to prove the Defendants' fiscal standing."). Similarly, in her reply to the motion to amend, when discussing her claim under Section 504 of the Rehabilitation Act, Plaintiff states that she "asked for Limited Discovery on [the issue of federal funding] but was denied."[23] Doc. 161 at 9; *see also* Doc. 157-1 ¶ 116 n.7 (proposed fourth amended complaint requesting discovery in response to the NMBBE Defendants' affidavit attached to their motion for summary judgment).

---

[23] Plaintiff's assertion in her reply to the motion to amend that the Court has previously denied her request for limited discovery on the issue of federal funding is incorrect. Plaintiff made no request for discovery regarding the NMBBE's funding before the request she made in her response to the NMBBE Defendants' motion for summary judgment—the request which I am now addressing.

Federal Rule of Civil Procedure 56(d), formerly Rule 56(f), provides a mechanism for a party to obtain discovery of facts essential to oppose a motion for summary judgment. In arguing that it would be premature for the Court to rule on the NMBEE Defendants' motion for summary judgment until discovery is completed, Plaintiff does not actually reference Rule 56(d). Nonetheless, because Rule 56(d) provides the mechanism for a nonmoving party to obtain facts essential to justify its opposition, I will consider Plaintiff's argument as a motion for Rule 56(d) discovery.[24]

Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order.

The non-movant has the burden to show that additional discovery is necessary. *Martin v. Cty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015). A Rule 56(d) declaration must meet four requirements. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010). First, the declaration must identify "the probable facts not available." *Id.* (citation omitted). Second, the declaration must state "why those facts cannot be presented currently." *Id.* Third, the declaration must specify "what steps have been taken to obtain these facts." *Id.* (citation omitted). And fourth, the declaration must explain "how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Id.* "A party may not invoke Fed. R. Civ. P. 56[(d)] by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party must

---

[24] If the Court does not consider the argument Plaintiff makes on page 9 of her response as a request for Rule 56(d) discovery, the Court should summarily reject, as having no legal basis, Plaintiff's argument that the Court should delay ruling on the summary judgment motion until she completes more discovery.

demonstrate precisely how additional discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein, & Co., Inc., v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000). Lastly, "[t]here is no requirement in Rule 56, that summary judgment not be entered until discovery is complete." *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985).

Here, Plaintiff includes no affidavit or declaration with her request for discovery. She does describe the "probable facts not available": NMBBE's fiscal status and whether it or the New Mexico judiciary receives federal funds. Doc. 110 at 9; Doc. 161 at 9-10. However, she fails to state why those facts currently cannot be presented and describes no steps taken to obtain those facts. Even more significantly, she fails to assert how additional time will enable her to obtain these facts and how the facts would rebut the motion for summary judgment. Indeed, in the same breath as stating that discovery is needed on the NMBBE's fiscal standing, she also states that "whether the Board received federal funding is not relevant to proceed with this legal matter because federal funding is not a material issue as a matter of law. . . . regardless of how the Board is funded, the Board is still liable for violations of the ADA under Section 504 of the Rehabilitation Act of 1973." Doc. 110 at 10. Because Plaintiff fails to meet the requirements of Rule 56(d), I recommend denying her request for discovery.

### 3. Undisputed Material Facts

Having considered the threshold issues of whether Plaintiff should be allowed to file a surreply or to conduct Rule 56(d) discovery, I turn to the NMBBE Defendants' motion for summary judgment, beginning with the undisputed material facts. And, I review the undisputed material facts with a few rules in mind:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). To that end, under this Court's Local Rules, a response to a motion for summary judgment "must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be **numbered**, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the **number** of the movant's fact that is disputed." D.N.M. LR-Civ. 56.1(b) (emphasis in original). Facts not specifically controverted will be deemed undisputed. *See* D.N.M. LR-Civ. 56.1(b). In their motion for summary judgment, the NMBBE Defendants set forth four undisputed material facts, with citations to an affidavit of Victoria Garcia, a former member and current executive director (at the time of the affidavit in December 2021) of the NMBBE. *See* Doc. 100 at 2-3, Doc. 100-1. In her response, Plaintiff does not specifically controvert these facts and does not supply any additional undisputed material facts. *See generally* Doc. 110.

Plaintiff does, however, dispute the validity of the cited affidavit, arguing that "[a] mere affidavit does not meet the burden set forth in Federal Rule 56." Doc. 110 at 6. This is contrary to the plain language of Rule 56(c), which instructs a party asserting that a fact cannot be genuinely disputed to support that assertion by citations to materials in the record, including "affidavits." Plaintiff also argues that the affidavit is improper under Federal Rule of Civil Procedure 56(c)(4), which provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Plaintiff

argues that the Court should not consider the affidavit because Ms. Garcia is a defendant in this case (as named in the operative third amended complaint) and relying on her "self-serving" affidavit would be "illogical." Doc. 110 at 7.

She also asserts that the affidavit is not well-supported, as Ms. Garcia failed to explain her investigations or include any further evidence to support the statements in her affidavit. Doc. 110 at 7-8. But Ms. Garcia states that the information in the affidavit is "based on [her] personal knowledge" and "based on [her] investigation into the funding sources of the NMBBE." Doc. 100-1 ¶¶ 3, 5. Plaintiff's conclusory statements that the Court should disregard the affidavit fail to demonstrate that Ms. Garcia's affidavit is not based on her personal knowledge, that it sets out inadmissible facts, or that Ms. Garcia is not competent to testify on the matters stated.

Thus, I recommend rejecting Plaintiff's arguments and accepting the undisputed material facts as follows. The Supreme Court of the State of New Mexico created the NMBBE, consisting of twelve members appointed by the Supreme Court, to assist the Court regarding admission of applicants to the bar. Undisputed Material Fact ("UMF") No. 1, Doc. 100 at 2. Members of the NMBBE do not receive a salary. UMF No. 2. The NMBBE is funded entirely from the fees paid by applicants to take the New Mexico bar exam. UMF No. 3. The NMBBE does not receive any federal financial assistance. UMF No. 3. The NMBBE also does not receive vouchers issued by other agencies on behalf of disabled, handicapped, or other applicants to pay their bar exam fees. UMF No. 4.

### 4.  Legal Standard

The Court must next apply the correct legal standard to these undisputed material facts. That is, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).[25] A dispute about a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way," and it is material "if

under the substantive law it is essential to the proper disposition of the claim." *Becker v.

Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing

a motion for summary judgment, the Court views the evidence and all reasonable inferences

therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d

1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking

summary judgment has the burden of showing that there is no genuine dispute as to any material

fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the

moving party meets its burden, the non-moving party must show that genuine issues remain for

trial. *Id.*

### 5. Analysis

The undisputed material facts establish that the NMBBE does not receive federal

financial assistance. Because Plaintiff fails to provide evidence in support of an element that she

has the burden to prove, I recommend granting the NMBBE Defendants' motion for summary

judgment on Plaintiff's claims under Section 504 of the Rehabilitation Act.

Section 504 provides that

> No otherwise qualified individual with a disability in the United States . . . . shall,
> solely by reason of her or his disability, be excluded from participation in, be
> denied the benefits of, or be subjected to discrimination under any program or

---

[25] In her response brief, Plaintiff cites New Mexico Rule 1-056(C). Doc. 110 at 2. But, in this case, arising under the Court's federal question jurisdiction, the Federal Rules of Civil Procedure apply, not New Mexico's rules of civil procedure.

activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds."[26] *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986).

"To state a claim under Section 504, a plaintiff must prove (1) that he is a handicapped individual under the Act, (2) that he is otherwise qualified for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question received federal financial assistance." *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (internal quotation marks omitted). "Program or activity" is defined as "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b).

Here, the focus of the NMBBE Defendants' motion for summary judgment is on element four—that the program or activity in question received federal financial assistance. The NMBBE Defendants concede that, under the definition of program or activity, it is an "agency . . . or other instrumentality" of the State of New Mexico.[27] Doc. 100 at 3. But, they argue that the undisputed

---

[26] A state that accepts federal financial assistance waives sovereign immunity as to claims under the Rehabilitation Act. *Arbogast v. Kansas, Dep't of Lab.*, 789 F.3d 1174, 1182 (10th Cir. 2015) (cleaned up); 42 U.S.C. § 2000d-7(a).

[27] In her response, Plaintiff cites *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87 (2d Cir. 2021) for the proposition that "the Board of Bar Examiners *was not immune from being liable* for ADA discrimination for not properly accommodating a disabled test candidate because the Board is part of New York's Unified Court System." Doc. 110 at 5 (emphasis in original). In the next sentence of her brief, Plaintiff then asserts, "The Board of Bar Examiners in New

material facts show that the NMBBE does not receive federal financial assistance and is entirely

funded from fees paid by applicants for the bar exam. *Id.* at 4-5; *see also* UMF No. 3. Indeed,

Plaintiff does not dispute this fact but instead, incorrectly, argues that the NMBBE is liable for a

Section 504 violation, "regardless of having federal funding." Doc. 110 at 4.

Plaintiff summarily argues that "[f]ees for bar examinations may be from the exam

applicants' federal funding obtained, such [as] Federal Direct Unsubsidized Loan and Federal

Direct Graduate Plus Loans in addition to private loans." Doc. 110 at 6. To the extent Plaintiff is

arguing that a genuine issue of material fact exists regarding whether the NMBBE receives

federal financial assistance because it is funded by applicant fees, and applicants may pay those

fees from funds obtained by federal loans, I recommend rejecting this argument. Plaintiff

presents no authority for such an argument. And, even if Plaintiff's argument were backed by

legal support, it would still lack factual support. Rather than presenting evidence that applicant

fees came from federal funds, Plaintiff speculates about how applicants "may" pay their fees.

Speculation is not evidence and is insufficient to create a genuine dispute of material fact about

an element Plaintiff must prove. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving

party "entitled to a judgment as a matter of law because the nonmoving party has failed to make

---

Mexico and New York operate under the direction of the NCBE . . . ." *Id*. One could, perhaps, broadly construe Plaintiff's citation to *T.W.* as an argument that, even if the NMBBE does not receive federal funding itself, it might be a subunit of a different entity that does receive federal funding. The only entity Plaintiff argues the NMBBE operates under, however, is the NCBE. And, even assuming the NMBBE must follow certain NCBE guidelines, Plaintiff fails to present evidence that NMBBE is a subunit of NCBE. Further, even if the NMBBE were a subunit of the NCBE, Plaintiff provides no evidence that NCBE receives federal funds. Nor does Plaintiff provide any argument or evidence that the NMBBE is a subunit of some other entity that receives federal funds. *See Arbogast v. Kansas, Department of Labor*, 789 F.3d 1174, 1185 (10th Cir. 2015) ("acceptance of federal funds for one division within a larger department may effectuate a waiver of Eleventh Amendment immunity [under the Rehabilitation Act] for the entirety of the larger department, including divisions that accept no federal funds").

a sufficient showing on an essential element of her case with respect to which she has the burden of proof") (internal quotation marks omitted).

Plaintiff makes other arguments in response to the NMBBE Defendants' motion for summary judgment, but they all involve Title II of the ADA, which is not at issue here. *See* Doc. 110 at 3-6. For example, she argues that "Title II extends the prohibition on discrimination established by section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, to all activities of the State and local governments regardless of whether these entities receive Federal financial assistance." Doc. 110 at 4 (citing "42 U.S.C. 12131B65"[28]). But an argument that Title II of the ADA extends to state and local government activities whether or not those entities receive federal financial assistance does not address whether the NMBBE receives federal financial assistance for the purpose of claims brought under Section 504.

For these reasons, I recommend finding that the undisputed material facts show that the NMBBE does not receive federal funding, an element of a Section 504 claim, and the NMBBE is thus entitled to judgment as a matter of law on Plaintiff's Section 504 claim.

---

[28] It is unclear what this cite is intended to reference because, as written, this cite does not lead to anything. My best guess is that Plaintiff is citing the Appendix for "Guidance on ADA Regulations on Nondiscrimination on the Basis of Disability in State and Local Government Services Originally Published July 26, 1991," which states that "Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), which prohibits discrimination on the basis of handicap in federally assisted programs and activities, already covers those programs and activities of public entities that receive Federal financial assistance. Title II of the ADA extends this prohibition of discrimination to include all services, programs, and activities provided or made available by State and local governments or any of their instrumentalities or agencies, regardless of the receipt of Federal financial assistance." 28 C.F.R, Pt. 35, App. B § 35.102 (Eff. Mar. 15, 2011).

## RECOMMENDATIONS

For the reasons discussed above, I recommend the Court rule as follows:

- DENY Plaintiff's Motion to Strike Defendant's NCBE's Opposition to Motion to Amend and For Sanctions (Doc. 163);

- GRANT IN PART AND DENY IN PART Plaintiff's Motion for Leave to File Fourth Amended Complaint (Doc. 157);

- STRIKE Plaintiff's Response to Defendant NMBBE's Reply in Support of Motion by NMBBE-Related Defendants' Motion for Summary Judgment as to Second Cause of Action (Doc. 121);

- DENY Plaintiff's Motion for Leave to File Surreply (Doc. 124); and

- GRANT Motion by the NMBBE-Related Defendants for Summary Judgment as to Second Cause of Action (Doc. 100).

I recommend that the Court allow Plaintiff to file her fourth amended complaint (Doc. 157) WITHOUT the following claims:

- Any and all claims against Defendant National Conference of Bar Examiners;

- Count I: Violation of the Americans with Disabilities Act Title II against Defendant NMBBE;

- Count II: Violation of Section 504 against Defendant NMBBE;

- Count IV: Violation of § 1983 against Sophie Martin; and

- Count V: Intentional Infliction of Emotional Distress against all Defendants.

Thus, I recommend that Plaintiff be allowed to file her fourth amended complaint with only count III (violation of ADA Title III) against the NMBBE.[29]

Lastly, because I recommend allowing Plaintiff to file a fourth amended complaint, I recommend denying as moot the pending motions to dismiss and related motions directed at the operative third amended complaint. *See, e.g.*, *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1323–24 (D. Colo. 2019) ("It is well-established that an amended complaint supersedes the original complaint and renders the original complaint of no legal effect. Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot.") (cleaned up).[30] I thus recommend DENYING AS MOOT the following motions:

- The NMBBE Defendants' Motion to Dismiss Third Amended Complaint Based in Part on Qualified Immunity (Doc. 86);

- Plaintiff's Motion to Strike the Motion to Dismiss Third Amended Complaint Based in Part on Qualified Immunity (Doc. 95);

- Motion by NMBBE-Related Defendants to Dismiss with Prejudice ADA Claims (Doc. 129);

---

[29] As discussed above, the viability of Plaintiff's Title III claims depends on whether 42 U.S.C. § 12189 applies to the NMBBE, an issue that neither party briefed in the present motion to amend. If the Court allows Plaintiff to file the proposed fourth amended complaint with the Title III claim, the NMBBE will have a chance to respond to that complaint, including filing a further motion to dismiss or other motion.

[30] As discussed above, this mootness analysis does not apply to the NMBBE Defendants' motion for summary judgment because, unlike a motion to dismiss which requires the Court to accept the factual allegations in the complaint as true, *see Khalik*, 671 F.3d at 1190, and thus is dependent on the operative complaint, a motion for summary judgment relies on evidence in the record to reach undisputed material facts, *see* Fed. R. Civ. P. 56(c).

- Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Reply in Support of (Second) Motion to Dismiss with Prejudice ADA Claims (Doc. 133-1); and

- Plaintiff's Motion for Leave to Conduct Discovery Limited to the Issue of Jurisdiction (Doc. 135).

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**