# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DR. PERRY SPANN,

     Plaintiff,

v.                                   No. 1:21-CV-00709-MIS-SCY

THE NEW MEXICO BOARD OF
BAR EXAMINERS,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Perry Spann originally brought this lawsuit against the New Mexico Board of Bar Examiners ("NMBBE"), and its individual members, and the National Conference of Bar Examiners ("NCBE"), and its individual members, alleging discrimination related to conditions that existed when she took the New Mexico bar exam. Following numerous motions and orders from the Court, the only remaining claim in Plaintiff's operative fourth amended complaint is that the NMBBE violated Title III of the ADA. Doc. 174. The NMBBE now moves to dismiss this remaining claim (Doc. 177) and Plaintiff moves to amend her complaint (Doc. 181). The Honorable Margaret Strickland referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 128. Plaintiff fails to provide an adequate justification for her undue delay in seeking this fifth amendment of her complaint. Further, Plaintiff is not credible in asserting that her intent in filing a fifth amended complaint is to correct minor errors rather than to make substantive alterations to the operative complaint. Finally, Plaintiff's proposed amendments would be futile, as the NMBBE's motion to dismiss Plaintiff's remaining claim would have merit even if applied to Plaintiff's proposed fifth amended complaint. Therefore, I recommend that the Court deny

Plaintiff's request to amend and, because the NMBBE is entitled to Eleventh Amendment immunity on Plaintiff's remaining claim, grant the NMBBE's motion to dismiss.

## PROCEDURAL BACKGROUND

Plaintiff filed her original complaint on July 30, 2021, naming the NMBBE, and its individual members, and the NCBE, and its individual members, as defendants. Doc. 1. On August 17, 2021, before any defendant entered the case, Plaintiff filed her first amended complaint. Doc. 15. On August 28, 2021, similarly before any defendant entered the case, Plaintiff filed a motion for leave to file her second amended complaint. Docs. 21, 25. The Court granted this motion (Doc. 26) and, on September 30, 2021, Plaintiff filed her second amended complaint (Doc. 34). On October 7, 2021, before any defendant entered the case, Plaintiff filed a motion for leave to file her third amended complaint. Docs. 36, 38. The Court granted her motion to amend and accepted her third amended complaint (Doc. 38) as properly filed on the docket.[1] Doc. 39. Thereafter, all Defendants entered the case. Docs. 84, 88.

The NCBE Defendants filed a motion to dismiss for lack of personal jurisdiction (Doc. 109) and, on August 10, 2022, I entered a Proposed Finding and Recommended Disposition ("PFRD") recommending the Court grant that motion (Doc. 141). Over Plaintiff's objections, the Court adopted the PFRD and dismissed, without prejudice, the NCBE Defendants for lack of personal jurisdiction. Doc. 145.

On June 22, 2023, I entered a second PFRD as to Plaintiff's motion for leave to file a fourth amended complaint, and as to the NMBBE Defendants' related dispositive motions. Doc. 166. In that PFRD, I recommended that the Court deny the motion to amend as to the NCBE

---

[1] At the direction of the Court, Plaintiff refiled her third amended complaint, using her real name instead of a pseudonym. Doc. 103. Other than adding her name, the later filing does not change the third amended complaint.

Defendants because Plaintiff "failed to show that the allegations in her proposed fourth amended complaint that bear on personal jurisdiction are timely and, even if they were, [she] failed to show those untimely allegations would not be futile for lack of personal jurisdiction over the NCBE." *Id.* at 18. As to the NMBBE Defendants, I recommended finding that Plaintiff's proposed fourth amended complaint was futile as to count I (Title II of the ADA), count II (Section 504 of the Rehabilitation Act), count IV (Section 1983 against Defendant Martin), and count V (intentional infliction of emotional distress). *Id.* at 20. I also recommended, however, that the Court allow Plaintiff to file the proposed fourth amended complaint with only count III (violation of Title III of the ADA) against the NMBBE.[2] *Id.* Both sides filed objections to the PFRD. Docs. 167, 168. The Court overruled these objections, but noted that the NMBBE could reraise its arguments in a motion to dismiss the fourth amended complaint. Doc. 174. Thus, the Court adopted the PFRD, allowing Plaintiff to file her fourth amended complaint containing only count III against Defendant NMBBE. *Id.*

On October 2, 2023, Plaintiff filed her fourth amended complaint. Doc. 175. In response, the NMBBE filed a motion to dismiss. Doc. 177; *see also* Doc. 182 (response); Doc. 186 (reply). In that motion, the NMBBE makes two arguments: (1) that Title III of the ADA does not apply to it as a public entity and (2) even if it does, that the NMBBE, as an arm of the state, is entitled to Eleventh Amendment immunity. Doc. 177. Plaintiff then moved for leave to file a fifth

---

[2] The proposed fourth amended complaint dropped as defendants all individuals associated with the NMBBE, except Sophie Martin, and I found the single claim alleged against Defendant Martin (count IV- Section 1983) to be futile. Doc. 166 at 24-25, 41-43.

3

amended complaint.[3] Doc. 181; *see also* Doc. 188 (response); Doc. 189 (reply). I will first address Plaintiff's motion to amend before turning to the motion to dismiss.

## ANALYSIS

### 1. Motion to Amend

A plaintiff may amend her complaint once as a matter of course, after which she must seek consent from the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* The motivation underlying this rule is to "provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted). However, a court may deny leave based on reasons such as undue delay, bad faith, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (internal citation omitted).[4]

In her motion to amend, Plaintiff argues that her fourth amended complaint contains "Scrivener's Errors and other Omissions," including footnotes inadvertently deleted, that she seeks to fix with the proposed fifth amended complaint. Doc. 181 ¶¶ 5, 7 (capitalizations in

---

[3] Plaintiff's motion is titled "Motion for Leave to File a Fourth Amended Complaint," Doc. 181, but as the operative complaint in the case is already the fourth amended complaint, Plaintiff is actually seeking leave to file the next iteration of her complaint, the fifth amended complaint.

[4] Discovery in this case has thus far been stayed. Docs. 112, 179. Consequently, there is no operative deadline to amend the pleadings, and it is not necessary to consider whether Plaintiff has established good cause to amend such a deadline. *Cf. Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014) (a party seeking to amend the pleadings after the scheduling-order deadline must both demonstrate good cause to amend the scheduling order as required by Federal Rule of Civil Procedure 16(b) and satisfy the requirements for amendment under Federal Rule of Civil Procedure 15(a)).

original). First, I find Plaintiff's representation that she simply needs to fix "scrivener's errors" to be disingenuous. True, the proposed fifth amended complaint fixes a few typos from the fourth amended complaint. *Compare* Doc. 181-2 ¶¶ 32, 47, 69, *with* Doc. 174 ¶¶ 32, 47, 69 (fixing typos such as adding a missing apostrophe, changing the word "and" to "any", changing words from plural to singular or from singular to plural, and adding a comma). Plaintiff, however, goes beyond fixing typos to making an edit that changes the substance of the complaint. Specifically, in her proposed fifth amended complaint, Plaintiff deletes the allegation that the NMBBE "is an agent of the Supreme Court of New Mexico." *Compare* Doc. 181-2 ¶ 2, *with* Doc. 175 ¶ 2. And she does so without ever explaining, or drawing attention to, this deletion in her motion to amend.

In all prior versions of her complaint, Plaintiff asserted, in some fashion, that the NMBBE is an arm of the state or, specifically, an agent of the New Mexico Supreme Court. *See* Doc. 1 ¶¶ 5, 78 (original complaint, alleging that "Defendant, NMBBE, is a Municipal Corporation and political subdivision of the State of New Mexico and is organized under the laws of the State of New Mexico," and that "[t]he NMBBE is a public State Agency"); Doc. 15 ¶¶ 5, 78 (first amended complaint, alleging the same); Doc. 34 ¶¶ 5, 78 (second amended complaint, alleging the same); Doc. 38 ¶¶ 5, 100 (third amended complaint, alleging the same); Doc. 157-1 ¶¶ 2, 105 (proposed fourth amended complaint, alleging that "Defendant New Mexico Board of Bar Examiners (hereinafter 'NMBBE') is an agent of the Supreme Court of New Mexico" and that "Defendant NMBBE is a public entity and an agent of the state of New Mexico"). But now, after the NMBBE argues that because it is an arm of the state it is entitled to Eleventh Amendment immunity as to Plaintiff's remaining claim (Doc. 177 at 8), Plaintiff

attempts to delete her concession that the NMBBE is an agent of the New Mexico Supreme Court. This proposed amendment amounts to much more than fixing a "scrivener's error."

I also find Plaintiff's representation that she needs to fix footnote omissions that were "inadvertently deleted" to be disingenuous. Doc. 181 ¶ 7. The bulk of the edits to the proposed fifth amended complaint are new, lengthy footnotes, which add citations to legal authority— some of which address topics the NMBBE raises in its present motion to dismiss. Doc. 181-2 ¶¶ 27 n.1, 29 n.2, 34 n.3, 72 n.7 (citing regulation regarding Section 12189 of Title III of the ADA and its application to both public and private entities), 75 n.8, 78 n.9 (citing Title III regulations and asserting that Plaintiff was treated differently than non-disabled test takers), 79 n.10, 80 n.11. These footnotes do not appear in the proposed fourth amended complaint and so it is unclear how they were "inadvertently deleted." That is, when Plaintiff moved for leave to file her fourth amended complaint, she also filed her proposed fourth amended complaint, as required by local rule. Doc. 157-1. In granting Plaintiff leave to file the fourth amended complaint, the Court did so with the requirement that she omit from the proposed draft all counts and defendants, except count III against the NMBBE. Thus, had the footnotes appeared in the proposed fourth amended complaint (Doc. 157-1), but not the later-filed fourth amended complaint (Doc. 175), Plaintiff's explanation that they were inadvertently deleted, presumably when information as to the futile counts was deleted, would be plausible. Indeed, Plaintiff asserts that the errors "were the result of Counsels' attempt to follow the Court's Orders." Doc. 181 ¶ 7. The problem with Plaintiff's explanation is that the "inadvertently deleted" footnotes never appeared in the proposed fourth amended complaint and thus could not have been inadvertently deleted.

The Court therefore rejects Plaintiff's argument that, in the proposed fifth amended complaint, she is simply resurrecting footnotes that she inadvertently deleted from the proposed

fourth amended complaint. Instead, it is clear that Plaintiff is attempting to add information to her proposed fifth amended complaint that she never intended to include in her fourth amended complaint. Indeed, some of the footnotes Plaintiff attempts to add address arguments in the NMBBE's recently filed motion to dismiss. This fact is evidence that Plaintiff created at least some of the footnotes in her proposed fifth amended complaint after she filed her proposed fourth amended complaint and after Defendant NMBBE filed its motion to dismiss.

Thus, I reject as disingenuous Plaintiff's stated reasons supporting her motion to amend. Further, although the Court must freely give leave to amend when justice so requires (to provide litigants the maximum opportunity for each claim to be decided on its merits), at some point, a case must move forward. Plaintiff filed her original complaint on July 30, 2021, Doc. 1, followed by three more iterations of the complaint, Docs. 15, 34, 38. Later that year, the NMBBE Defendants filed several dispositive motions. Docs. 86, 100. Plaintiff responded by filing a motion to amend, seeking leave to file the fourth amended complaint to include new facts and fix alleged deficiencies. Doc. 157. I then addressed the NMBBE Defendants' motions, simultaneously addressing whether the proposed fourth amended complaint resolved issues Defendants raised in their motions. Doc. 166. In doing so, I recommended allowing Plaintiff to file a fourth amended complaint that only included the portion of her case that was not futile given the dispositive motions, a recommendation with which the Court agreed. Docs. 166, 174. After the NMBBE filed the present motion to dismiss directed at this remaining portion of her complaint, Plaintiff has now moved to amend her complaint to again address deficiencies about which she should have already been aware. These proposed amendments come too late. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that reasons such as "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed" can justify denying leave to amend).

Further, Plaintiff has failed to justify the delay in her latest motion to amend. *See Frank*

*v. U.S. West,* 3 F.3d 1357, 1365–66 (10th Cir.1993) ("We have held that denial of leave to amend

is appropriate when the party filing the motion has no adequate explanation for the delay."

(internal quotation marks and citation omitted)). Plaintiff's timeline of events simply does not

support her request to amend. Plaintiff explains that "when the errors were discovered" her

counsel Lisa Cleveland "was unable to meaningfully participate in amending the Fourth

Complaint" due to a family emergency. Doc. 181 ¶ 6. In her reply, Plaintiff elaborates that on

October 2, 2023, the same day Plaintiff filed her fourth amended complaint (after receiving leave

from the Court to do so), an attorney Ms. Cleveland was of-counsel with unexpectedly passed

away, which was "personally and professionally devastating" to Ms. Cleveland. Doc. 189 at 2.

Then, on October 10, 2023, Ms. Cleveland was forced to make a last-minute trip to Amsterdam

due to a medical emergency her son was having. *Id.* She thus did not file the present motion to

amend until October 26, 2023. Doc. 181. I do not doubt that these events happened or that they

impacted Ms. Cleveland's ability to work meaningfully.

Plaintiff's fourth amended complaint, however, was drafted nearly a year before

Plaintiff's counsel's troubles began. That is, Plaintiff filed her proposed fourth amended

complaint on November 30, 2022 (Doc. 157-1) and Plaintiff's troubles began on October 2,

2023—the same day she filed her fourth amended complaint. As set forth above, the proposed

fourth amended complaint Plaintiff filed on November 30, 2022 contained the same "errors"

Plaintiff now seeks to fix (the "scrivener's error" that the NMBBE is an agent of the New

Mexico Supreme Court and the absence of the recently added footnotes). Although Plaintiff had

8

almost a year before the October 2023 events to review the proposed fourth amended complaint and to fix these errors before eventually filing her fourth amended complaint on October 2, 2023, she offers no explanation to account for that time.

Relatedly, on November 30, 2022, when Plaintiff filed her motion for leave to file the fourth amended complaint, she explained that "on November 16, 2022, Plaintiff retained a new attorney, Laurel J. Francoeur, to represent her pro bono in this case. Plaintiff's current counsel, Lisa Cleveland, is unable to continue to actively prosecute the case as lead attorney due to irreconcilable conflicts in proceeding with the case." Doc. 157 at 1. Ms. Francoeur entered her appearance in the case on November 30, 2022. Doc. 156. Thus, it is unclear how emergencies facing Ms. Cleveland almost a year after she stopped working on the case would prevent Plaintiff's new lead counsel from correcting errors in the proposed fourth amended complaint during the year after Plaintiff retained her. After the NMBBE pointed this out, Plaintiff responded that "Lisa Cleveland still contributes to the case and completes litigation responsibilities regardless of irreconcilable conflicts with the case due to personal and other professional obligations. The only change to her role was relinquishing the position of lead counsel. She was and is still an active, responsive, responsible, and ethical counsel as lawfully required." Doc. 189 at 5. But this statement fails to explain how emergencies impacting an attorney who is not lead counsel would impact lead counsel in correcting errors.

For these reasons, I recommend that the Court deny Plaintiff' motion to amend. If the Court disagrees with this recommendation, however, I also recommend denying leave to amend on alternative grounds—futility. That is, even if Plaintiff is allowed to file her proposed fifth amended complaint, it would not change my analysis below on Eleventh Amendment immunity.

## 2. Motion to Dismiss

An analysis of the present motion to dismiss requires some review of previous decisions made in this case. In her proposed fourth amended complaint, Plaintiff alleged claims against the NMBBE under both Title II and Title III of the ADA. Doc. 157-1. The NMBBE Defendants argued that both claims were futile, Doc. 158, and in my June 22, 2023 PFRD I agreed with them as to the Title II claim, finding that the NMBBE is entitled to Eleventh Amendment immunity, Doc. 166 at 25-36. The NMBBE Defendants' futility argument related to the Title III claim, however, was not based on immunity and so I did not address application of Eleventh Amendment immunity as to that claim. Doc. 166 at 37 n.18 ("The NMBBE Defendants do not argue that the NMBBE is entitled to Eleventh Amendment immunity as to Plaintiff's claims under Title III as they do with her claim under Title II. Thus, for the purposes of this motion, I do not examine whether the NMBBE is entitled to Eleventh Amendment immunity as to Plaintiff's Title III claim.").

Instead, I addressed the futility argument the NMBBE Defendants did raise—whether Title III applies to the NMBBE as a public entity—and found the issue unresolved. Doc. 166 at 38-41 (finding the Plaintiff alleged her Title III claim under Section 12189, which applies by its plain language to "any person", and finding that the parties did not brief whether Section 12189 applies to public entities (such as the NMBBE) and that I was unaware of any clear answer). Because that issue was unresolved, I recommended finding that the NMBBE Defendants had failed to show that Plaintiff's Title III claim is futile and, as such, I recommended that Plaintiff be allowed to file her fourth amended complaint containing the Title III count against the NMBBE. *Id.* at 41. After the Court adopted that recommendation, Doc. 174, Plaintiff filed her fourth amended complaint, alleging the NMBBE violated Section 12189 of Title III of the

ADA.[5] Doc. 174. The NMBBE now moves to dismiss this remaining count against it, arguing that Title III does not apply to it and, even if it does, that it is entitled to Eleventh Amendment immunity. Doc. 177.

As it did previously, the NMBBE first argues that Title III of the ADA, including Section 12189, does not apply to public entities such as the NMBBE. *Id.* at 5-7. As before, however, and as the NMBBE acknowledges (Doc. 186 at 3), there is no clear guidance from the Tenth Circuit or any other court as to whether the reference to "any person" in Section 12189 makes that section applicable to public entities when the rest of Title III applies to private entities/public accommodations.[6] Thus, as before, I decline to resolve whether "person" as used in Section 12189 includes public entities. Instead, I will turn to the NMBBE's second argument—that even if Title III does apply to it, it is entitled to Eleventh Amendment immunity.

In my prior PFRD, I found that the NMBBE is entitled to Eleventh Amendment immunity as to Plaintiff's claims under Title II of the ADA. Doc. 166 at 25-36. The NMBBE now argues that "the precise same analysis, reasoning and case law supports the conclusion that

---

[5] Section 12189 reads in its entirety: "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

[6] The NMBBE basis its argument that Section 12189 does not apply to public entities on the plain language of Title III, arguing that had Congress intended "any person" in Section 12189 to include public entities it would have said so because "Congress obviously knows how to define the word 'person' so as to unambiguously include public entities when it intends to make such entities subject to other parts of the ADA, as Congress did in Title I." Doc. 186 at 1-2 (citing 42 U.S.C. § 2000e(a), which defines "person" for the purpose of Title I). But the opposite could also be argued. That is, had Congress intended Section 12189 to apply to only private entities (i.e., public accommodations) it would have said so because Congress obviously knows how to define the word "person" so as to unambiguously include only private entities, as it did in other parts of Title III. *See* 42 U.S.C. § 12182 (prohibiting discrimination by any "person who owns, leases (or leases to), or operates a place of public accommodation").

as to Plaintiff's related claim under Title III of the ADA (applicable on its face to 'private entities'), the Board is also immune from suit." Doc. 177 at 12. The Eleventh Amendment grants states—and arms of the state—sovereign immunity from suit, unless one of a few exceptions apply. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996). State protection under the Eleventh Amendment extends to non-state governmental entities that function as "arms of the state"— entities that are "created by state governments" and "operate as alter egos or instrumentalities of the states." *Watson*, 75 F.3d at 574 (citations omitted). "Whether a local entity is an arm of the state under the Eleventh Amendment is a question of federal law. However, that federal question can be answered only after considering the provisions of state law that define the agency's character." *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 975 (10th Cir. 1997) (internal quotation marks and citations omitted).

As I held in my prior PFRD (and as adopted by the Court), the NMBBE is an arm of the state because it is an arm of the Judicial Department of the State of New Mexico, i.e., an arm of the Supreme Court of New Mexico, and the New Mexico Supreme Court is an arm of the state. Doc. 166 at 26-28; *see also* Rule 15-401(A) NMRA (setting the makeup of the Board: "The members of the board shall be appointed by the New Mexico Supreme Court"); Rule 15-401(A)(3) (setting the duties of the Board, including "making recommendations to the Supreme Court with respect to reinstatement or readmission to practice of lawyers who have for any reason withdrawn from the state bar of New Mexico"); N.M. Const. art. VI, § 1 ("The judicial power of the state shall be vested in the senate when sitting as a court of impeachment, a supreme court, a court of appeals, district courts; probate courts, magistrate courts and such other courts inferior to the district courts as may be established by law from time to time in any

district, county or municipality of the state."). Indeed, in her operative fourth amended

complaint, Plaintiff alleges that the NMBBE is an "agent of the Supreme Court of New

Mexico."[7] Doc. 157-1 ¶ 2.

Turning next to immunity itself, the Eleventh Amendment grants states, and arms of the

state, sovereign immunity from suit unless the state waives its immunity, Congress has

overridden state immunity under § 5 of the Fourteenth Amendment, or a state official is sued for

injunctive relief in place of the state. *See Will*, 491 U.S. at 66; *Ex parte Young*, 209 U.S. 123

(1908); *see also Osage Nation v. Oklahoma ex. rel. Oklahoma Tax Comm'n*, 260 F. App'x 13, 17

(10th Cir. 2007) ("The Supreme Court has recognized three exceptions to a state's sovereign

immunity. First, a party may sue a state in federal court notwithstanding the Eleventh

Amendment if the state consents to suit. Second, a party may sue a state if Congress has

abrogated the state's sovereign immunity in a clear and unequivocal manner pursuant to a valid

exercise of its power. Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a party may sue

individual state officers in federal court in their official capacity for prospective injunctive relief.

. . .") (internal citations omitted). Accordingly, unless one of the above exceptions applies, suits

for damages against an arm of the state is not permitted.

Looking at the first exception, there is no indication that the State has waived its

immunity as to Plaintiff's Title III claim. The third exception is also easily dismissed as the

"Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only

declaratory and injunctive relief rather than monetary damages for alleged violations of federal

law, and (ii) are aimed against state officers acting in their official capacities, rather than against

---

[7] To the extent Plaintiff seeks to remove this allegation, as discussed above, it does not change
my analysis, based on state law, that the NMBBE is an arm of the state.

the State itself." *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007). Plaintiff's fourth amended complaint brings a claim for violation of Title III of the ADA against only the NMBBE, not state officers acting in their official capacities. Doc. 174 at 12-14 Therefore, the third exception does not apply.

The second exception is not so easily dealt with. It arises where Congress has explicitly overridden state immunity and does so through the valid exercise of its power under § 5 of the Fourteenth Amendment. *Guttman v. Khalsa*, 669 F.3d 1101, 1111 (10th Cir. 2012) ("*Guttman IV*") ("Congress may . . . abrogate [state sovereign] immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment.") (quoting *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 726 (2003)). In the ADA (as applicable to both Title II and Title III), Congress did explicitly override state sovereign immunity. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). Thus, the remaining question is whether it did so pursuant to a valid exercise of its powers under Section 5 of the Fourteenth Amendment.

As to Title II, "[u]nder the Supreme Court's decisions in *Lane* and *Georgia,* Title II validly abrogates sovereign immunity as to (1) actual violations of the Constitution and (2) at least some classes of conduct that do not facially violate the Constitution but are prohibited to 'prevent and deter unconstitutional conduct.'" *Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006) ("*Guttman II*") (quoting *Tennessee v. Lane*, 541 U.S. 509, 518 (2004)). I discussed this issue extensively in the section of my June 2023 PFRD addressing Title II. There, I found that Plaintiff's Title II claims did not also raise a Fourteenth Amendment Equal Protection

14

claim.[8] Thus, under *United States v. Georgia,* 546 U.S. 151 (2006), *Lane,* 541 U.S. 509, and

*Guttman IV v. Khalsa*, 669 F.3d 1101, Title II does not validly abrogate New Mexico's sovereign

immunity in the context of professional licensing. Doc. 166 at 26-34.

Although neither the Tenth Circuit nor the Supreme Court have addressed whether Title

III validly abrogates sovereign immunity, I find that, to the extent Section 12189 of Title III

applies to public entities, the same reasoning from *Georgia*, *Lane*, and *Guttman IV* applies such

that Title III does not validly abrogate New Mexico's sovereign immunity in the context of

professional licensing.[9] *See Glueck v. Nat'l Conf. of Bar Examiners*, No. SA-17-CV-451-XR,

2017 WL 5147619, at *6 (W.D. Tex. Nov. 3, 2017) ("The Court joins other courts in concluding

that, similar to the Fifth Circuit's analysis with respect to Title II, Congress did not validly

abrogate States' sovereign immunity in enacting Title III of the ADA, to the extent that it

contains an abrogation as applied to cases implicating access to a state bar examination.");

*Simmang v. Texas Bd. of L. Examiners*, 346 F. Supp. 2d 874, 884 (W.D. Tex. 2004) ("[T]o the

extent Title III is read to contain an abrogation of the States' Eleventh Amendment immunity, as

applied to this case implicating access to the bar examination, that abrogation is not a valid

---

[8] In my prior PFRD, I held that the rational basis standard applies to any possible Equal
Protection claim in Plaintiff's complaint, finding that Plaintiff failed to allege facts to overcome
the presumption that the NMBBE had a rational basis to place the two groups of test takers
where it did. Doc. 166 at 32-33. In the present briefing, Plaintiff asserts that the strict scrutiny
standard should apply because "she was not treated the same as non-disabled test takers . . .
which implicates due process consideration." Doc. 182 at 7. Plaintiff provides no authority for
this argument and I therefore recommend rejecting it.

[9] In the present briefing, Plaintiff argues that my prior sovereign immunity analysis was "based
on the understanding that the right at issue is the right of one to practice in a chosen profession,"
when the right actually at issue "is a right to receive and possess a professional license." Doc.
183 at 6. I, however, see no meaningful difference between these characterizations of the same
right at issue. *See Turner v. Nat'l Council of State Boards of Nursing, Inc.*, 561 F. App'x 661,
667-68 (10th Cir. 2014) (finding that the plaintiff's claim regarding failure to accommodate for a
state nursing licensing exam implicated the right to practice in a chosen profession).

exercise of Congress' § 5 authority."). I therefore adopt my analysis from the June 2023 PFRD

and recommend finding that the NMBBE, to the extent it is subject to Plaintiff's Title III claim,

is entitled to Eleventh Amendment immunity and the Court thus lacks jurisdiction over this

claim. *See Reyes v. First Jud. Dist. Attorney's Off.*, 497 F. Supp. 3d 994, 999 (D.N.M. 2020)

("The Eleventh Amendment immunity divests a federal court of subject matter jurisdiction,

given 'the Constitution does not provide for federal jurisdiction over suits against nonconsenting

States.'") (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)); Fed. R. Civ. P. 12

(h)(2) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must

dismiss the action.").

## RECOMMENDATION

For these reasons, I recommend that the Court DENY Plaintiff's Motion for Leave to File

Fourth Amended Complaint (Doc. 181).[10] I also recommend that the Court GRANT the

NMBBE's Motion to Dismiss Fourth Verified Complaint (Doc. 177) and dismiss the remaining

count against the NMBBE without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d

1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice

because the court, having determined that it lacks jurisdiction over the action, is incapable of

reaching a disposition on the merits of the underlying claims.").

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

---

[10] As mentioned above, although this motion is titled motion for leave to file *fourth* amended complaint, the operative complaint is already the fourth amended complaint and so Plaintiff is actually seeking leave to file her fifth amended complaint.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**